## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| **OLUSOLA AKINMEJI,** | ) |
| | ) CASE NO. CAL 17-02286 |
| 1740 Oak Avenue, Unit 501 | ) |
| Evanston, IL 60201 | ) |
| | ) |
| *On Behalf of Himself and Others Similarly Situated* | ) **CLASS ACTION COMPLAINT** |
| | ) |
| | ) ***Jury Trial Requested*** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **JOS. A. BANK CLOTHIERS, INC** | ) |
| | ) |
| 500 Hanover Pike | |
| Hampstead, MD, 21074 | |
| | |
| Defendant. | |

Plaintiff, Olusola Akinmeji "Plaintiff", through undersigned counsel, on behalf of himself and all others similarly situated, alleges the following:

### INTRODUCTION

1. This is a class action against Jos. A. Bank Clothiers, Inc. ("JAB" or "Defendant") for its deceptive and unlawful use of so-called "sales" based on inflated, arbitrary, and false "regular" prices. In its direct marketing to consumers via in-store advertising displays, print advertising and via its website (www.josbank.com), JAB advertises false "regular" prices, false price discounts, and false free apparel promotions for its men's suits, sport coats, and dress pants.

2. On information and belief, JAB suits, sport coats, and dress pants are sold exclusively at JAB stores.[1]

3. During the "Class Period," as defined below, JAB misrepresented, and continues to misrepresent, the nature and amount of price discounts for its men's suits, sport coats, and dress pants by offering specific dollar and percentage discounts from those same inaccurate and

---

[1] Tailored Brands, Inc., *10-K* (2016) at 4 ("Jos. A Bank is a branded house whose merchandise is sold substantially under the exclusive JAB label").

1

inflated "regular" prices. These purported free apparel promotions and discount offers are false because the referenced "regular" price is, in each instance, fabricated and inflated for its men's suits and other apparel. To the contrary, only a miniscule percentage of consumers pay JAB's "regular" prices for JAB suits—meaning they are not "regular" at all.

4. JAB's "buy one get one [or more] free" suit offers and other similar promotions require consumers to buy one "regular" price suit to get one or more free item of JAB men's apparel; but the "regular" prices are a sham.

5. Upon information and belief, JAB does not sell any meaningful quantity of suits, and it had no intention of selling any meaningful quantity of such products, at the "regular" retail prices employed in their advertising and marketing materials. Instead, these purportedly "regular" prices are constructed from whole cloth by JAB to deceive consumers into believing they are getting a good deal.

6. The Federal Trade Commission (FTC) described false regular pricing schemes, similar to JAB's scheme in all material respects, as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonable substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the usual value he expects.

16 C.F.R. 233.1(a)

> A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial price of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. 233.1(b).

2

7. JAB artificially sets the false reference prices to deliberately create false impressions among customers regarding the products' value and the bargains that customers will receive if they purchase the products. These false reference prices increase the demand for the products, which also increases the prices that JAB charges for the products.

8. Thousands of consumers have been victims of JAB's deceptive, misleading, and unlawful pricing scheme, which has been disseminated to consumers via in-store display advertising, internet advertising, and print advertising. JAB's false advertising focuses reasonable purchasers' attention on fictitious bargains and price discounts. As a result, purchasers, including Plaintiff and class members, have reasonably perceived that they are receiving valuable price reductions or bargains regarding their purchase of men's suits, sport coats, or dress pants. This perception has induced reasonable purchasers, including Plaintiff, to buy such products from JAB at prices set by JAB and to refrain from shopping for the same or similar products from competitors of JAB.

9. Plaintiff and the Class members did not get the actual discounts and savings that JAB promised them, they did not receive products which had the value JAB promised those products would have, they were deprived of the benefit of their bargained-for exchanges, and they would not have made the purchases at issue, or paid the amount they paid, had they known the truth about JAB's "regular" prices. As a result, they suffered damages in an amount to be determined at trial.

10. JAB knows or reasonably should know that its comparative price advertising is false, deceptive, misleading, and unlawful.

11. The facts that JAB misrepresented or failed to disclose are facts that a reasonable person would have considered material, *i.e.*, facts that would contribute to a reasonable person's decision to purchase men's suits, sport coats, or dress pants at the prices set by JAB. JAB's false representations regarding "regular" prices and false representations of purported savings, discounts, and bargains are objectively material to the reasonable consumer and therefore

reliance upon such representations may be presumed as a matter of law. Prices, including purported "regular" prices, matter significantly to consumers.

12. At all relevant times, JAB has been under a duty to Plaintiff and others similarly situated to disclose the truth about its "regular" prices.

13. Plaintiff relied upon false representations of "regular" price, purported savings, and discounts in connection with JAB's "regular" prices when purchasing men's suits, sport coats, and dress pants from JAB.

14. Plaintiff reasonably and justifiably acted and relied to his detriment on JAB's failure to disclose and concealment of, the truth about JAB's false "regular" price advertising scheme in purchasing JAB men's suits, sport coats, and dress pants.

15. JAB intentionally concealed and failed to disclose the truth about its misrepresentations and false "regular" price advertising scheme for the purpose of inducing Plaintiff and others similarly situated to purchase JAB men's suits, sport coats, and dress pants.

16. The claims and issues asserted herein are governed by Maryland state law. The state of Maryland has the greatest interest in policing corporate conduct occurring within the state that affects the rights and interests of its citizens.

17. Plaintiff, individually, and on behalf of all others similarly situated, seeks restitution and injunctive relief.

18. For reasons made clear below, a class action lawsuit is the most efficient way to remedy the harm done by JAB's deceptive sales practices and to make whole the consumers JAB has systematically deceived and misled.

## THE PARTIES

19. Plaintiff, Olusola Akinmeji, is a resident of Evanston, Illinois.[2] In or around June 22, 2015, Plaintiff viewed a JAB pop-up ad online, which advertised a "buy one suit at "regular" price get 3 suits free" promotion. On June 29, 2015, in reliance on Defendant's false and deceptive advertising, marketing and pricing schemes, Plaintiff purchased four suits, suit joseph

---

[2] On the date of Plaintiff's JAB purchases, he was a resident of Greenbelt, Maryland residing at 7628 Mandan Road, Greenbelt, MD 20770.

2 btn slim fit pln (30100/169), suit trvlr 2 btn slim fit plai (29166/005), suit joseph 2 btn slim fit pln (29181/045), and suit joseph sl (19443/001) from JAB's online store (http://www.josbank.com/menswear/shop/Home_11001_10050). *See* Exhibit 1, attached hereto. Plaintiff would not have otherwise purchased these suits, or would not have purchased these suits for the price he did, absent JAB's false "regular" price advertising and was damaged thereby.

20. Similarly, all members of the putative Class as described below are Maryland residents who purchased JAB merchandise.

21. Defendant Jos. A Bank, Inc. is a Delaware corporation with its principal place of business in Hampstead, Maryland.

22. Most of the documentary evidence relevant to this Complaint is located at JAB's headquarters in Maryland, including the relevant policies and communications.

23. JAB operates a national chain of retail clothing stores, with over 600 stores nationwide, and numerous stores in Maryland alone.

24. When in this Complaint reference is made to any act of "JAB" or "Defendant," such shall be deemed to mean the officers, directors, agents, employees or representatives of JAB committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct its employees while engaged in the management, direction, operation or control of the affairs of JAB and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over the subject matter and all parties pursuant to §§ 1-501 and 6102 through 6-103 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code ("C.J.P.").[3]

26. Venue is proper in this Court pursuant to C.J.P. §6-201, because all material events occurred in Prince George's County, Maryland.

---

[3] Plaintiff was a resident of Prince George's County, Maryland at all times relevant to this action.

5

## FACTUAL ALLEGATIONS

27. "Consumers paying of a product or service set up a mental account in which the negative value of the prices paid, the so-called 'pain of payment,' is associated (coupled) with the positive value of the opportunity to consume the product or service."[4]

28. At the same time, perceptions of savings also impact consumers' willingness to purchase an item. For consumers, both the dollar and percentage amount of the deal positively influence their perception of their savings.[5] Likewise, the presence of a "regular" price as an external reference price increases perceptions of objective value, thereby raising the consumer's desire to purchase the product.[6]

29. Empirical marketing studies demonstrate that reference pricing actually creates an impression of higher value:

> Comparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings... [A] comparative price advertisement can be construed as deceptive if it makes any representation, ... or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, Journal of Public Policy & Marketing, Vol. 11, No. 1, at 52 (Spring 1992).

Furthermore,

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product... Thus, the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55–56.

---

[4] Joseph W. Alba (editor), Dilip Soman (contributor), *Effects of Transaction Structure on Price Perceptions and Consumption*, Consumer Insights: Finding from Behavioral Research (2011) at 2, *available at* http://www.msi.org/uploads/files/ConsumerInsights-Chap7.pdf.

[5] Joseph W. Alba (editor), Aradhana Krishna (contributor), *Perceptions of Price Deals*, Consumer Insights: Finding from Behavioral Research (2011) at 2, *available at* http://www.msi.org/uploads/files/ConsumerInsights-Chap7.pdf.

[6] *Id.*

30.     To take advantage of these two marketing principles, JAB provides a "regular" price on the tag, giving the consumer the perception that this is the value of the item. Then JAB offers a steep discount off of (*e.g.* 75% off) or free items for (*e.g.* buy one get three free) the "regular" price, thus giving the perception of savings, while lowering the pain of payment per item.

31.     Upon information and belief, during the last several years, and on a near continuous basis, JAB advertised various offers for suits, all of which expressly or impliedly were based on false "regular" prices, including the following: "Buy 1 (suit at "regular" price) get 2 (suits) FREE!"; "OVER 65% OFF ALL SUITS!"; "Buy a Suit, Get 2 Suits, 2 Dress Shirts, 2 Silk Ties FREE!"; "ENTIRE STORE!, Buy Any 1, GET 2 FREE!"; "Buy Any Suit, Get 1 Suit, 2 Shirts, 2 Silk Ties FREE!"; "All Suits 60% off your 1st, 70% off your 2nd"; "THREE TIMES THE SUIT SALE! Buy 1 Suit, Get 2 FREE!"; and so on.

32.     At other times, suits were touted as being "65% OFF" and even up to "75% OFF" but were always advertised as having a "regular" price in excess of that amount. The advertisements were made both within and without the Defendant's physical stores.

33.     JAB advertised similar or identical sales with regard to sport coats and dress pants, including: "Buy one sport coat get one free!"; "Buy one sport coat get two shirts and two dress pants free!"; "60% off blazers and sport coats!"; and "50% off dress pants!" Examples of marketing materials that JAB used to tout its "sales" in the past 4 years are attached hereto as Exhibit 2.

34.     JAB also advertised "free", "% off" and similar sales via the internet, television, radio, e-mail, direct phone calls to consumers and out-of-store signage.

35.     In each case, JAB based these purported discounts on phantom "regular" prices – prices that do not reflect the true price formerly paid by consumers for their suits.

36.     The "sales," which are supposedly based on discounts from "regular" prices, are deceptive because JAB suits, sport coats, and dress pants are on "sale" nearly 100% of the time.

37. Because JAB suits, sport coats, and dress pants are sold exclusively at JAB and are on sale in near perpetuity, the items' "regular" price is not the prevailing market price.

38. In fact, when then-New York State Attorney General Eliot Spitzer investigated Jos A. Bank's sales practices in New York in 2003, he found that less than 1% of Jos A. Bank's suits, formal wear, dress pants and sport coats were sold at the purported "regular" price. *See* Exhibit 3, attached hereto.[7]

39. Nevertheless, JAB still maintains an approximately 60% gross margin on its suits, sport coats, or dress pants, even after all sales and promotions. *See* 10-K at p. 38, attached hereto as Exhibit 4. This is how JAB can afford to have a "three times the suit" sale or a "Buy 1, Get 2 free" sale while still generating significant profits.

40. JAB's deception injures and damages the consumer who is not getting the bargain they believed they were, nor products worth as much as JAB claims. Rather, they are paying a price equal to or even in excess of the true "regular" price of the merchandise. All the while, JAB reaps windfall profits by selling items it otherwise would not have sold, whose sales price is inclusive of a profit margin.

41. This practice violated and continues to violate the Maryland Consumer Protection Act §13-101 *et seq*. This also violated and continues to violate the Federal Trade Commission Act and its guidelines.

42. Per JAB's 2011 10-K, its sales practices were investigated by the Attorney General's office in both Georgia and Florida. (*See* Ex. 4) Ohio's Attorney General also served a subpoena on JAB requesting documents related to their marketing practices.

### The Consumer Transaction Between Plaintiff And JAB

43. Plaintiff purchased suits at the advertised and purported "regular" price of $875 and received 3 "free" suits from JAB's online store on June 29, 2015. The "free" suits purported to have a comparable "regular" price as the purchased suit. Plaintiff would not have otherwise

---

[7] It appears Jos A. Bank did temporarily cease to use the particular deceptive marketing practices for which the New York State Attorney General fined them in 2004 in the state of New York. They continued to use those practices, which are substantially similar to the practices alleged herein, elsewhere.

8

purchased these suits, or would not have purchased these suits for the price he did, absent JAB's false "regular" price advertising and was damaged thereby.

44. Plaintiff was induced to make his purchases because JAB's advertising led him to believe he was getting a great bargain – four suits for the price one, (plus shipping and handling). In fact, the reason Plaintiff entered into the transaction with JAB, was to receive high quality men's apparel at a price much lower than that typically charged for such merchandise.

45. However, the "regular" price JAB advertised – $875 for the particular suit Plaintiff purchased – did not reflect the true price formerly paid by consumers for that JAB suit, or in any way represent a true "regular" price. Instead, these purported "regular" prices were false and deceptive, as the prevailing retail price for a JAB men's suit of the type involved in these transactions was materially lower than $875. *See* Exhibit 5, attached hereto.[8]

46. JAB, in advertising a completely inaccurate and inflated "regular" price for the suit purchased by Plaintiff, intentionally misled him into purchasing such items and paying the prices set by JAB for such items.

47. Plaintiff relied upon the "regular" price representation, believed himself to be getting the significant bargain advertised, and would not have purchased the JAB suits or paid the prices set by JAB for such items, in the absence of JAB's "regular" price misrepresentations.

48. Despite the false regular pricing scheme used by JAB, Plaintiff would purchase JAB products in the future, if product labels and marketing promotions accurately reflect "regular" prices and discounts. Currently, however, Plaintiff and consumers have no realistic way to know which—if any—of JAB's price comparisons are not false or deceptive. If the Court were to issue an injunction prohibiting JAB's use of the deceptive practices discussed herein, Plaintiff would likely shop for JAB's products again in the near future.

---

[8] As detailed in the table and corresponding advertisements from JAB's website, months prior to Plaintiff's purchases, the items Plaintiff purchased were continually on sale for substantially lower than the "regular" $875 price.

9

49. The Class members all purchased suits, sport coats, or dress pants under substantially similar conditions.

## CLASS ALLEGATIONS

50. Plaintiff re-alleges by reference, as if fully set forth herein, all of the above paragraphs.

51. Plaintiff brings this action on behalf of himself and the following class of similarly situated individuals initially defined as:

> All persons who, in the State of Maryland and within the applicable statutory limitation (the "Class Period"), purchased a suit, dress pants or sport coats/suit jackets from JAB, where the purchase price of the item was for a percentage or discount off an advertised "regular" price, or where the purchase was for a suit, dress pants or sport coat/suit jacket based on a "regular" price in connection with an offer of at least one other "free" item of JAB apparel (the "Class").

Excluded from the Class are JAB, as well as its officers, employees, agents or affiliates and any judge, who presides over this action, as well as all past and present employees, officers and directors of JAB. Also excluded are Plaintiff's counsel and employees of those law firms. Plaintiff reserves the right to expand, limit, modify or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances or new facts obtained during discovery.

52. Numerosity: Upon information and belief, the Class is composed of hundreds of thousands of Maryland individuals, whose joinder of this action would be impracticable. The disposition of their claims through this class action will benefit Class members, the parties and the Court.

53. Existence and Predominance of Common Questions of Fact and Law: There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class members, including, but not limited to, the following:

    a.    Whether JAB falsely advertises price discounts from "regular" prices on men's suits, sport coats, and dress pants sold to Maryland residents;

    b.    Whether JAB falsely advertises and sells men's suits, sport coats, and dress pants in connection with false "free", "1/2 OFF" and "% OFF" offers, which are based on false "regular" prices;

    c.    Whether JAB engaged in unfair, unlawful or fraudulent business practices under Maryland law;

    d.    Whether JAB failed to disclose material facts about its product pricing and discounts;

    e.    Whether JAB has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions or "free" JAB apparel;

    f.    Whether JAB's conduct, as alleged herein, is intentional and knowing;

    g.    Whether Class members are entitled to damages or restitution; and, if so, what is the amount of revenues and profits JAB received or were lost by Class members as a result of the conduct alleged herein;

    h.    Whether Class members are threatened with irreparable harm or are otherwise entitled to injunctive and other equitable relief; and, if so, what is the nature of such relief;

    i.    Whether a backward-reaching injunction is required to remedy the past effects of the unlawful, unfair and fraudulent conduct alleged herein; and if so, what steps are required of JAB to correct the consequences of its past wrongful acts alleged herein; and

    j.    Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest and cost of suit(s).

54. Typicality: Plaintiff's claims are typical of and are not antagonistic to, the claims of all Class members. Plaintiff and the Class he seeks to represent have all been deceived (or

were likely to be deceived) and damaged by JAB's false "regular" price schemes, as alleged herein. Plaintiff and all Class members have similarly suffered injury, including the loss of money, arising from JAB's unfair, unlawful and deceptive conduct, as described herein.

55. Adequacy: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the Class because he is not antagonistic to the Class. Plaintiff has retained counsel who is competent and experienced in the prosecution of consumer fraud and class action litigation.

56. Superiority: A class action is superior to other available means for the fair and efficient adjudication of Plaintiff and Class members' claims. Plaintiff and members of the Class have suffered monetary harm as a result of JAB's unfair, unlawful, and fraudulent conduct. Because of the relatively modest size of individual Class members' claims, few, if any, Class members could afford to seek legal redress of the wrongs complained of herein on any individual basis. Absent the class action, Class members and the general public will likely continue to be deceived and suffer monetary losses and the violations of law described herein will continue without remedy and JAB will be permitted to retain the proceeds of its misdeeds.

57. All Class members, including Plaintiff, were exposed to one or more of JAB's misrepresentations or omissions of material fact claiming that "regular" advertised prices were in existence. Due to the scope and extent of JAB's consistent false price advertising scheme, dissemination in a massive, years-long campaign to consumers via in-store display advertising, internet advertising and print advertising, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In fact, as a matter of practice, the false "regular" prices are displayed on the sales tag of each suit purchased in store and next to each item ordered from JAB's catalog or website. It can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the material misrepresentations contained in JAB's false advertising scheme when purchasing men's suits, sport coats, and dress pants from JAB.

58.     As a matter of public policy, this consumer matter should proceed as a consumer class action that will produce several salutary byproducts, including:

   a.   A therapeutic effect upon those sellers who indulge in deceptive practices;

   b.   Aid to legitimate business enterprises by curtailing illegitimate competition; and

   c.   Avoidance to the judicial process of the burden of multiple litigation involving identical claims.

59.     The Class should be certified and each Class member should be compensated in a manner that will put the Class member in a position the member would be in had they been charged the true "regular" price of the merchandise.

## FIRST CAUSE OF ACTION
## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT
### Md.Code.Com.Law §13-101 *et seq.*

60.     Plaintiff re-alleges by reference, as if fully set forth herein, all of the above paragraphs.

61.     The MCPA declares unlawful deceptive and unfair trade practices such as, making false or misleading representations concerning price comparisons to a price of a competitor or one's own price at a past or future time.

62.     JAB has violated and continues to violate the MCPA by falsely representing that its Maryland consumers are receiving a bargain, deal or price discount in connection to a referenced "regular" price of men's suits, sport coats, or dress pants where JAB has inflated the purported "regular" prices for such products, such that the promised discount or bargain is false, misleading and deceptive.

63.     JAB has violated and continues to violate the MCPA by falsely representing that its Maryland consumers are receiving "free" JAB apparel as an incentive to purchase a suit with a purported "regular" price that is false, misleading and deceptive.

64.     These acts and practices are unfair because they are likely to cause consumers to believe falsely that JAB is offering value, discounts or bargains from the prevailing market value

or worth of the products sold that do not, in fact, exist. As a result, purchasers, including Plaintiff, have reasonably perceived that they are receiving either valuable price reductions on purchases of men's suits, sport coats, or dress pants, or valuable "free" apparel in exchange for purchasing a suit for the "regular" price at JAB. This perception has induced reasonable purchasers, including Plaintiff, to buy such products from JAB at the prices set by JAB and to refrain from shopping for the same or similar products from competitors of JAB.

65. JAB's acts and practices, as described herein, have deceived Plaintiff and are highly likely to deceive members of the consuming public. Specifically, in deciding to purchase a JAB's "regular" price suit along with 3 "free" suits, Plaintiff relied on JAB's misleading and deceptive representations regarding its "regular" price, "sale" price and "free" apparel. Each of these factors played a substantial role in Plaintiff's decision to purchase those products at JAB, and Plaintiff would not have purchased those items at JAB in the absence of JAB's misrepresentations. Accordingly, Plaintiff suffered monetary loss as a direct result of JAB's deceptive and unfair practices described herein.

66. The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications or motives of JAB for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, JAB has engaged and continues to engage, in unfair business practices within the meaning of the MCPA.

67. Through its unfair acts and practices, JAB has improperly obtained money from Plaintiff and as a result of JAB's unfair acts and practices, Plaintiff, members of the Class, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched JAB at the expense of Plaintiff and the Class. As such, Plaintiff requests that this court cause JAB to restore this money to Plaintiff and Class members, and to enjoin JAB from continuing to violate the MCPA. Otherwise, Plaintiff and Class members may be irreparably harmed and/or denied an effective complete remedy if such an order is not granted.

68. As a result of JAB's unfair acts and practices, Plaintiff, members of the Class, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched JAB at the expense of Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### Fraud and Fraud by Omission under Maryland Common Law

69. Plaintiff re-alleges by reference, as if fully set forth herein, all of the above paragraphs.

70. As detailed herein, JAB provided Plaintiff and all other Class members with false or misleading material information and failed to disclose material facts about the men's suits, sport coats, and dress pants, including, but not limited to, the claims regarding the pricing of the men's suits, sport coats, and dress pants. These misrepresentations were made with knowledge of their inaccuracies, and Defendant's omissions were made with the knowledge that, without the material information, their pricing statements would be misleading.

71. Defendant misrepresented that the "regular" price was a prevailing market price, when JAB consistently sold the men's suits, sport coats, and dress pants at significantly less than "regular" price.

72. Defendant omitted that the "regular" price lacked any objective sales data to support it, i.e., that the products were never sold at the "regular" price for a reasonable substantial period of time prior to the sale. This information was material because consumers believe that the "regular" price or list price is the price at which those goods normally sell in the marketplace.

73. The misrepresentations and omissions made by JAB, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and Class members to purchase JAB's suits, sport coats, and dress pants.

74. The fraudulent actions of JAB caused damage to Plaintiff and all other Class members, who are entitled to damages and other legal and equitable relief as a result.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

75. Plaintiff re-alleges by reference, as if fully set forth herein, all of the above paragraphs.

76. Plaintiff brings this claim individually, as well as on behalf of members of the Class, under Maryland law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which Class members will be drawn, Maryland law applies to the claims of the Class.

77. Plaintiff and the Class have conferred substantial benefits on Defendant by purchasing its JAB products, and Defendant has consciously and willingly accepted and enjoyed these benefits, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

78. Because of the deliberate fraudulent misrepresentations, and other wrongful activities described above, including but not limited to, misrepresenting that its merchandise was being offered at a significant discount inducing consumers to purchase its products, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff and Class members' monies.

79. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class, request that this Court award relief as follows:

A. Appointing Plaintiff as the representative of the Class and their counsel as Class counsel;

B. For economic and compensatory damages on behalf of Plaintiff and all Class members;

C. For treble damages, pursuant to applicable law, and all other actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D. For injunctive relief, compelling Defendant to cease their unlawful actions;

E. For reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

F. For such other and further relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: January 25, 2017

By:/s/ Beatrice O. Yakubu
Beatrice O. Yakubu
byakubu@cuneolaw.com
Charles J. LaDuca
*To be admitted Pro Hac Vice*
charles@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue N.W., Suite 200
Washington, D.C. 20016
Tel: 202.789.3960

Melissa W. Wolchansky
*To be admitted Pro Hac Vice*
wolchansky@halunenlaw.com
**HALUNEN LAW**
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 5-5402
Tel: 612.605.4098

17

*Counsel for Plaintiff and the Proposed Class*