## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

OLUSOLA AKINMEJI, *et al.*,          )
                                        )
        Plaintiffs,          )
                                          )     Civil No.: 8:17-cv-01349 PJM
v.          )
                                          )     Judge Peter J. Messitte
JOS. A. BANK CLOTHIERS, INC.,          )
                                          )
        Defendant.          )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Jos. A. Bank Clothiers, Inc. ("JAB") files this Memorandum of Law in support of its Motion to Dismiss Portions of the First Amended Class Action Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 105. The original Complaint asserted three claims on behalf of a putative class of people who purchased merchandise from JAB in Maryland (Dkt. 2, ¶ 51). In response to JAB's Motion to Dismiss (Dkt. 39), Plaintiffs filed the FAC, and changed virtually nothing about the Complaint's original three claims. Instead, the FAC attempts to add eight new counts, including a new breach of warranty claim under Maryland law. Where the FAC radically shifts course, however, is its attempt to inject seven claims based on California law, a California class representative, a putative California sub-class, and a putative nationwide class.

There is no logical nexus between California purchasers, who are protected by California law, and Maryland purchasers, who are protected by Maryland law, let alone purchasers in all 50 states with their disparate and unique consumer protection laws. Therefore, JAB is separately moving to dismiss the California and nationwide class claims on jurisdictional and procedural

grounds.  For purposes of this Motion to Dismiss, JAB presumes that the Court will grant its contemporaneous motion to dismiss.[1]

Pursuant to this Rule 12(b)(6) Motion to Dismiss, the Court should dismiss Counts I, II, X, and XI brought on behalf of the putative Maryland sub-class.  None of those claims can withstand legal scrutiny; as a result, JAB respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

## INTRODUCTION

JAB is widely recognized for its sales promotions, where it offers products at discounted rates.  One of its sales promotions allows customers to buy one and get multiple similar items free of charge (*i.e.*, buy one get 3 free).  Customers look forward to, and take advantage of, JAB's sales promotions.

Under the maxim that no good deed goes unpunished, some customers look for opportunities to challenge JAB's promotional campaigns, hoping to receive a windfall.  Courts have uniformly rejected these challenges at the pleading stage.  *See, e.g., Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014); *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014); *Waldron v. Jos. A. Bank*

---

[1] JAB's separate motion to dismiss asks the Court to (1) dismiss Counts III, IV, V, VI, VII, VIII, and IX; (2) dismiss Counts X and XI to the extent they are asserted on behalf of any putative class member who is not included in the Maryland Sub-Class, as it is defined in Paragraph 60 of the FAC; (3) dismiss Plaintiff Raychel Jackson; and (4) strike the definitions of the putative Nationwide Class and California Sub-Class in Paragraph 60 of the FAC.  Maryland lacks personal jurisdiction over JAB for any of these claims.  *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017); *see also Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016), *appeal dismissed* (July 7, 2016) (dismissing nationwide claims to the extent they do not arise out of the defendant's Illinois activities).  And courts routinely reject class actions that would require the application of numerous states' laws.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997) (class certification would violate Article III constraints and the Rules Enabling Act); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020–21 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable.").

2

*Clothiers, Inc.*, No. 12CV02060DMCJAD, 2013 WL 12131719 (D.N.J. Jan. 28, 2013).   The reason:  customers purchasing goods from JAB receive exactly what they bargained for and, as a result, are not damaged.   This case presents virtually identical allegations to those previously dismissed by numerous federal courts.  This Court should follow suit and do likewise.

### STATEMENT OF FACTS

JAB is a Delaware corporation that sells its branded suits, sport coats, dress pants, and other apparel only at its own retail stores and on its website.  (FAC ¶¶ 2, 22).[2]  JAB advertises its products and sales promotions via displays and signs, internet, television, radio, email, telephone calls, and print advertising.  (*Id.* ¶¶ 9, 34).  The price tags on JAB's goods identify each item's regular price.  (*Id.* ¶ 30).  JAB frequently offers its customers a variety of sales promotions, such as various items being discounted from the regular price and promotions in which customers who purchase an item at its regular price receive additional items free of charge.  (*Id.* ¶¶ 31-33).  During the four months preceding his June 29, 2015 purchase, the suits Plaintiff bought were included in eight to ten separate sales promotions.  (*Id.* Ex. 6).

Plaintiff currently resides in Evanston, Illinois but claims to have lived in Greenbelt, Maryland in June 2015 when he bought the suits from JAB.  (*Id.* ¶ 19).  Several days before purchasing suits, Plaintiff viewed a JAB pop-up ad online, which advertised a "buy one suit at 'regular' price get 3 suits free" sales promotion.  (*Id.*).  On June 29, 2015, Plaintiff took advantage of that promotion and purchased four suits from JAB's online store.  (*Id.*).  Plaintiff paid the $875 regular price for one suit and then received three more suits free.  (*Id.* ¶ 43).

---

[2] In considering a motion to dismiss, courts should only assume the veracity of the well-pleaded factual allegations and then determine whether those allegations give rise to a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  After disregarding the FAC's legal conclusions, speculation, and unsupported conclusory assertions, the FAC contains precious few factual allegations.  JAB disputes the FAC's few factual allegations, but will assume them as true for the limited purpose of this motion.

Plaintiff purchased the suits from JAB to receive a suit he believed was "worth" $875 and to receive high quality men's apparel for free. (*Id.* ¶ 44). Plaintiff claims he would not have purchased these suits, or would not have purchased these suits for the price he did, absent JAB's price advertising. (*Id.* ¶¶ 19, 74).

The remainder of the FAC consists of conclusory assertions and legal conclusions, including repeated assertions that JAB's regular prices are inflated, false and deceptive. But nowhere does Plaintiff explain what information supports those assertions. More importantly, Plaintiff alleges no facts showing how he suffered any actual damages caused by JAB's price advertisements. Without damages, Plaintiff cannot state a claim upon which relief may be granted, and the Court should therefore dismiss the Complaint.

## STANDARD OF REVIEW

A court should grant a motion to dismiss premised upon Rule 12(b)(6) if the complaint fails to allege facts sufficient to establish each element of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Courts should consider only the complaint, matters of public record, and exhibits attached to the complaint. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The court must accept a complaint's well-pleaded factual allegations as true; however, unsupported conclusions, unwarranted inferences, and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678; *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Naked assertions, devoid of factual enhancement, are insufficient and must be disregarded. *Iqbal,* 556 U.S. at 678

In addition, a plaintiff must plead factual allegations sufficient to raise a plaintiff's right to relief above a speculative level, such that a claim is "plausible on its face." *Twombly*, 550

4

U.S. at 547.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Id.* at 555; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("It requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of 'entitlement to relief.'") (quoting *Iqbal*, 556 U.S. at 678).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to draw on its judicial experience and common sense.  *Iqbal*, 556 U.S. at 679.

## LEGAL ARGUMENT

The question presented by this Motion is whether Plaintiff's purchase of four suits from JAB that were advertised as buy one get three free could have possibly damaged him.  The Complaint shows that Plaintiff bought one suit and received three free suits for the advertised price; in other words, he received exactly what he bargained for and never expressed dissatisfaction about the suits.  Numerous courts have evaluated this exact question and uniformly held that these sales promotions cannot cause damage as a matter of law.

**A.      The Court Should Dismiss Count I, which Alleges a Violation of the MCPA, Because Plaintiff has Alleged No Facts Showing He Suffered Any Actual Damages.**

Plaintiff bases this entire lawsuit on his conclusory assertions and assumptions about JAB's regular prices.  Despite the absence of factual support, Plaintiff theorizes that the regular prices are not legitimate because JAB offers frequent sales promotions.  Plaintiff thus hypothesizes that only a small percentage of customers pay the regular price for JAB's goods.  Based on these conclusions and beliefs, Plaintiff claims that JAB's sales promotions are unfair or deceptive in violation of the Maryland Consumer Protection Act ("MCPA").

The MCPA permits a private claim to recover for "injury or loss" sustained as a result of a prohibited practice.  Md. Code Ann. § 13-408.  To establish a violation of the MCPA, private

5

clamant must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015). Even assuming Plaintiff's conclusory assertions and assumptions are true, Plaintiff cannot prove actual injury as a matter of law.

### 1.      Courts have repeatedly rejected similar claims for lack of "damages."

Virtually every state has a statute similar to the MCPA, patterned after one of several uniform acts. These equivalent statutes usually require a private plaintiff to plead and prove an actual injury in order to recover. *See, e.g.,* 815 Ill. Comp. Stat. Ann. 505/10a; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Thus, while there are no decisions applying Maryland law that involve allegations of "price misrepresentations" akin to Plaintiff's claims, "price misrepresentation" lawsuits in other jurisdictions provide this Court with substantial guidance. Several courts have been asked to determine whether JAB's advertisements violate other states' consumer protection statutes and have repeatedly rejected these claims at the motion to dismiss stage, finding that class plaintiffs cannot prove damages.

The leading case is *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 735 (7th Cir. 2014), issued by the Seventh Circuit three years ago. There, the plaintiff purchased shirts during a "buy one shirt, get two shirts free" sales promotion. After making the purchase, Camasta claimed that he learned that the JAB sale was not actually a reduced price, but instead a pattern and practice of advertising normal retail prices as temporary price reductions. *Id.* Just like Plaintiff here, Camasta asserted (without factual support) that he suffered damages because "but for his belief that the advertised sale was a limited time offer, he would not have purchased the six shirts and could have purchased the shirts for a lower price at another store, or could have

shopped around to obtain a better price elsewhere." *Id.*  Camasta therefore filed a class action complaint alleging violations of Illinois's consumer protection statutes. *Id.*

After JAB successfully moved to dismiss the complaint and Camasta amended his complaint, the district court granted JAB's motion to dismiss the amended complaint with prejudice.  Camasta appealed, and the Seventh Circuit unanimously affirmed.

Like private claims under the MCPA, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") requires a private plaintiff to plead and prove that the alleged violation caused actual damage. *Id.* at 739.  The Seventh Circuit held that the complaint lacked factual allegations to support Camasta's speculative and conclusory damages claims. *Id.* at 739-40.  The Court dismissed because Camasta did not plead factual allegations showing that he suffered damages, e.g., paid more than the actual value of the merchandise he received.  Specifically, the Court held that:

> Central to Camasta's argument is the claim that the advertised "sale prices" were in fact just the normal or regular retail prices being promoted as temporary price reductions. Camasta claims that this sales technique encourages a sense of urgency and makes customers feel "pressure" to make purchases before an expected deadline. However, *Camasta failed to provide any evidence that he paid more than the actual value of the merchandise he received.*
> Without factual support or justification, Camasta asserts that he could have shopped around and found the same shirts for a lower price. Yet, he fails to assert that he did, in fact, shop around and find the same shirts for a lower price. The district court found Camasta's statement to be "speculative and conclusory" and insufficient to prove actual damages. We agree.

*Id.* (emphasis added).  Plaintiff here makes no factual allegations showing that the suits he purchased were worth less than the amount he paid.  Likewise, Plaintiff does not claim he shopped around, let alone that he found the same shirts for a lower price.

*Camasta* does not stand alone.  In a putative class action filed in Ohio, the plaintiffs alleged similar claims premised on nearly identical allegations. *Johnson v. Jos. A. Bank*

*Clothiers, Inc.*, No. 2:13-CV-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014).  The plaintiffs in *Johnson* claimed that they purchased one suit at its regular price of $795 and received three additional suits free of charge.  *Id.* at *1.  Like Plaintiff, the *Johnson* plaintiffs alleged that the suits' $795 regular price was "vastly inflated" and "illusory" because JAB's suits are frequently on sale and almost never sold at the regular price.  *Id.* at *1-2.  And like Plaintiff, the Johnson plaintiffs did "not allege that they did not receive four suits in exchange for their payment of $795, nor [did] they allege that the four suits actually received by them were worth, collectively, less than $795 or that they could have obtained four suits of similar quality elsewhere for less than $795."  *Id.* at *1.

The plaintiffs alleged multiple violations of the Ohio Consumer Sales Practices Act ("OCSPA").  *Id.*  Like the MCPA, the OCSPA prohibits unfair or deceptive practices in connection with a consumer transaction.  *Id.* at *3.  And like the MCPA, the OCSPA requires a private plaintiff asserting a class action to allege facts showing the plaintiff suffered "actual damages" as a result of the defendant's deceptive act.  *Id.* at *4.  The court dismissed the complaint, holding that the plaintiffs had failed to allege actual damages because (1) they did not allege that they did not receive the four suits in exchange for the $795 payment; and (2) they did not allege that the four suits were worth, collectively, less than $795 or were available for purchase elsewhere for less than that amount.  *Id.*

The District Court of New Jersey reached the same conclusions in *Waldron v. Jos. A. Bank Clothiers, Inc.*, No. 12CV02060DMCJAD, 2013 WL 12131719 (D.N.J. Jan. 28, 2013).  The plaintiffs in *Waldron* alleged that the majority of JAB's merchandise had been continually on sale for the past several years, deceiving consumers into believing they must make a purchase before the sale ends and the merchandise returns to the regular prices.  *Id.* at *1.  Because the

claims were premised on alleged violations of the New Jersey Consumer Fraud Act, the plaintiffs needed to allege facts showing they suffered ascertainable loss, the equivalent of the MCPA's actual damages requirement.  *Id.* at \*4; *see, e.g.*, *Dugan v. TGI Fridays, Inc.*, 135 A.3d 1003, 1011 (N.J. Super. Ct. App. Div. 2016) ("A consumer may establish an ascertainable loss if he or she suffers an out-of-pocket loss.").  In granting JAB's motion to dismiss, the court held that the plaintiffs had not alleged any facts showing they suffered an ascertainable loss, e.g., that the products were defective, that the promised discounts were denied, or that the plaintiffs were dissatisfied with product but denied a refund.  *Id.* at \*4.

Courts have likewise dismissed claims against other retailers.  In  *Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010), the plaintiffs claimed that Carter's Inc. violated the ICFA by listing "suggested prices" on its clothing price tags but frequently advertising percentage discounts off those "suggested prices."  *Id.* at 363.  Like Plaintiff, the *Carter's Inc.* plaintiffs claimed that the "suggested prices" were false and misled consumers into believing they were getting a great deal.  *Id.*  Just as in *Camasta,* the Seventh Circuit affirmed the trial court's dismissal because the plaintiffs suffered no damages.  *Id.* at 365-66.  The plaintiffs agreed at the register to pay the quoted price for the merchandise they selected.  *Id.* at 364.  They alleged no facts showing the merchandise was defective or worth less than what they actually paid, and alleged no facts showing that comparable merchandise was available at a lower price in the marketplace.  *Id.* at 365.[3]

---

[3] Plaintiff's Complaint also references the fact that JAB entered into an Assurance of Discontinuance with the New York Attorney General in 2004.  (FAC, Ex. 4).  In that negotiated resolution, the New York Attorney General took the position that less than 1% of all sales of JAB's suits, formal wear, trousers, and blazers were made at the "regular price" in New York during 2003.  (*Id.* ¶ 38; Ex. 4 at ¶ 4).  This fact has no bearing on any aspect of this case, let alone this Motion.  In two of the prior referenced lawsuits against JAB, plaintiffs attempted to buttress their claims by citing to the New York Assurance of Discontinuance.  In dismissing

The First Circuit just reached the same conclusions in *Shaulis v. Nordstrom, Inc.*, No. 15-2354, 2017 WL 3167619, at *1 (1st Cir. July 26, 2017).  After buying a sweater, the plaintiff claimed she was deceived by Nordstrom's price tag showing a sale price and a much higher "compare at" price that she claimed no one ever pays.  *Id.*  Like Plaintiff, she claimed that she was wrongfully enticed by the idea of paying significantly less than the "Compare At" price and that but for Nordstrom's deception, she would not have bought the sweater.  *Id.* The First Circuit held that the plaintiff failed to state a claim because she suffered no legally cognizable injury.  *Id.* at *6.  The plaintiff identified "no objective injury traceable to the purchased item itself," e.g., poor quality or materials.  *Id.*  The court rejected the theory that enticing a plaintiff to make a purchase (the deception) can also constitute a cognizable injury.  *Id.*

Nothing in the Complaint distinguishes Plaintiff's purported "damages" from the nearly identical damage allegations previously rejected by numerous other courts.  The Court should dismiss the Complaint because Plaintiff has alleged no facts showing he suffered actual damages sufficient to support an MCPA claim.

### 2. *To establish an MCPA violation, Maryland courts require Plaintiff to prove actual damages.*

Just as in other states, in Maryland a private plaintiff alleging an MCPA claim must plead

---

those lawsuits with prejudice, those courts found JAB's 2003 alleged conduct in New York completely irrelevant to whether the plaintiffs had been damaged.  *See Camasta*, 761 F.3d at 738–39 ("The 2004 Assurance of Discontinuation that JAB entered into does not affect the outcome of this case); *Waldron*, No. 12CV02060DMCJAD, 2013 WL 12131719, at *3 ("Plaintiffs allege no facts linking the Assurance with the instant matter[.]").  Moreover, in the Assurance of Discontinuance JAB denied it had engaged in any illegal, deceptive, fraudulent or inappropriate business practices, and it entered into the agreement without admitting to any violation of law.  (Ex. 4 at ¶¶ 11-12).

Plaintiff also claims that the Attorneys General in Georgia, Florida and Ohio requested documents from JAB related to its advertising and promotions practices.  (FAC ¶ 40).  Nothing from these investigations has any bearing on whether Plaintiff was damaged by his 2015 purchase in Maryland.

and prove actual damages. *See, e.g.*, *Citaramanis v. Hallowell*, 328 Md. 142, 151, 613 A.2d 964, 968 (1992) ("It is manifest from the language employed in § 13–408(a) that the General Assembly intended that a plaintiff pursuing a private action under the CPA prove actual 'injury or loss sustained.'"); *Gardner v. GMAC, Inc.*, 796 F.3d 390, 398 (4th Cir. 2015) (MCPA claimants must show they were actually injured by the defendant's conduct); *see also Frazier v. Castle Ford, Ltd.*, 200 Md. App. 285, 296, 27 A.3d 583, 589 (2011) (nominal damages are not available in a deceptive trade practice claim under the MCPA). The failure to establish an actual injury or loss that the consumer allegedly sustained as a result of the prohibited practice is fatal to a private cause of action under the MCPA. *McGraw v. Loyola Ford, Inc.*, 124 Md. App. 560, 581, 723 A.2d 502, 512 (1999). "A 'conjectural or potential injury' will not do." *Gardner*, 796 F.3d at 398.

In *Citaramanis*, the plaintiffs entered into a one year lease for the defendants' residential property. 328 Md. at 144, 613 A.2d at 965. During that year, the condition of the property was acceptable to the plaintiffs, and the defendants performed repairs as needed. *Citaramanis*, 328 Md. at 145, 613 A.2d at 965. When the lease ended, the parties agreed to continue month to month at an increased rental amount. *Id.* Approximately six months later, the plaintiffs gave notice of their intent to vacate the property. *Id.*

Shortly before moving out, the plaintiffs learned that the defendants had not secured a rental property license required by the local county government. *Id.* After moving out, the plaintiffs sued for MCPA violations, alleging that the defendants' failure to disclose their lack of a license constituted an unfair and deceptive trade practice. *Id.* The trial court granted summary judgment in favor of the plaintiffs, and as damages refunded all the rent they paid during the tenancy. *Citaramanis*, 328 Md. at 146, 613 A.2d at 966.

On appeal, both the Court of Special Appeals and the Maryland Court of Appeals disagreed, reversing and holding that the plaintiffs failed to state MCPA claims because they suffered no actual damages. *Citaramanis*, 328 Md. at 164, 613 A.2d at 974-75. The plaintiffs did not allege that the rental property was "unclean, unsafe, uninhabitable or unsuitable in any regard." *Citaramanis*, 328 Md. at 149, 613 A.2d at 967. Even though the defendants lacked a license and failed to disclose that fact, the plaintiffs alleged no facts showing how the absence of a license had reduced the rental value of the property. *Citaramanis*, 328 Md. at 147, 613 A.2d at 966. Because the plaintiffs suffered no damages, the trial court's award was punitive in nature. *Citaramanis*, 328 Md. at 153-54, 613 A.2d at 969. Such a punitive award is contrary to the plain language and intent of Section 13-408, i.e., to compensate for injury and loss. *Id.; Golt v. Phillips*, 308 Md. 1, 12, 517 A.2d 328, 333 (1986) ("This private remedy is purely compensatory; it contains no punitive component.").[4]

Like the plaintiffs in *Citaramanis*, Plaintiff alleges no facts showing how JAB's advertisements or sales promotions caused him to suffer any actual damages. The United States Supreme Court encourages district courts deciding motions to dismiss to employ judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Common sense dictates that Plaintiff is a rational person who would not have purchased four suits if he had not examined them sufficiently to satisfy himself that they were collectively worth the $875 it would cost to acquire them. Similarly, a rational person would have further examined the suits when they arrived in the mail to ensure that they fit properly and otherwise met his expectations. If he

---

[4] Plaintiff's prayer requests treble damages, even though the Complaint's only statutory claim is for violations of the MCPA, which does not provide for a punitive award. (FAC p. 36). At a minimum, the Court should strike this requested relief.

was not satisfied or believed the suits were not worth the amount he voluntarily agreed to pay, he could have returned them to JAB for a refund.

Nowhere in his Complaint does Plaintiff allege facts showing that the suits were defective or contrary to his expectations.  Plaintiff does not allege that the suits' quality and material was deficient or that he was asked to pay more than the advertised price he expected to pay.  Nor does Plaintiff allege that the suits were not worth at least the amount that he paid.  A consumer who voluntarily purchases goods during a sales promotion cannot claim he was damaged if the retailer honors the sales promotion's terms, the consumer receives the goods he chose, the goods were not defective, and the goods were worth at least what the consumer paid. Because Plaintiff received the exact suits that he wanted at the price he expected to pay, he suffered no actual damages.

### 3. Plaintiff's conclusory "damages" allegations do not show he suffered any actual damages as required to support an MCPA claim.

Plaintiff generically alleges that he suffered damages, but none of the allegations could possibly constitute the actual injury or loss necessary to support an MCPA claim.  Instead, Plaintiff baldly asserts a variety of alleged harms that either contradict his factual allegations or constitute nothing more than conjectural, speculative, and/or psychological affronts.

Plaintiff claims he "did not get the discounts or savings that JAB promised" him and that he was "deprived of the benefit of [his] bargained-for exchanges[.]"  (FAC ¶ 9).  But the FAC plainly contradicts these assertions.  Plaintiff alleges he saw an advertisement for a "buy one suit at 'regular' price get 3 suits free" promotion, and then later offered to buy one suit at its regular price of $875 and receive three additional suits without paying anything more.  (*Id.* ¶ 19).[5]  That

_____

[5] Price quotes and advertisements are not deemed offers to sell but are invitations to customers to extend an offer to the seller.  *Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 259

is exactly what happened.  Plaintiff's receipt confirms that he paid $875 (plus tax and freight) and received the four suits he ordered.  (*Id.* Ex. 1).

Plaintiff also claims he "did not receive products which had the value JAB promised those products would have[.]"  (*Id.* ¶ 9).  But Plaintiff does not, and cannot, allege any facts showing that JAB promised that the suits had any particular "value."  The only representations Plaintiff relies upon for his claim are the advertisement for a "buy one suit at 'regular' price get 3 suits free" promotion and the representations about the suits' regular prices.  (*Id.* ¶ 19).  Nowhere does Plaintiff allege facts showing that JAB represented to him that the suits had any particular value.  None of the advertisements in Exhibit 3 to the FAC contain any representations about the *value* of any suit.

Moreover, the features and characteristics that might influence a suit's value (e.g., material, workmanship, design) exist without regard to the suit's advertised regular price.  If a merchant changed the price on a suit from $500 to $5,000, nothing about the suit itself would change.  Plaintiff received the exact suits he ordered for the price he expected to pay.

Finally, Plaintiff claims he was damaged because he "would not have made the purchases at issue, or paid the amount [he] paid, had [he] known the truth about JAB's 'regular' prices."  (*Id.* ¶ 9).  But, just as in the cases cited above, this allegation cannot support a claim of damages under an MCPA claim.  Moreover, this assertion is implausible and defies common sense, as it asks the Court to believe that Plaintiff spent $875 on suits because he simply found JAB's sales promotion irresistible.  Again, assuming that Plaintiff is rational, he would not have offered to

---

(4th Cir. 2000); Restatement (Second) of Contracts § 26 (1981) ("Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell.").

pay $875 to acquire the suits, and kept them after they were shipped, if he was not satisfied that they were worth at least that amount.

A plaintiff who suffered no actual damages cannot manufacture a damages theory by merely alleging that he would not have done business with the defendant if he knew that MCPA violations were occurring.  Using Plaintiff's logic, the plaintiffs in *Citaramanis* would have prevailed if they had simply alleged that they would not have leased the rental property if they had known that the defendants did not have the required license.

In *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575 (D. Md. 2014), the plaintiff filed a class action complaint against a car dealership that sold vehicles without disclosing that they had previously been used as short-term rental vehicles.  After buying such a vehicle, the plaintiff sued and asserted, among other things, claims for violations of the MCPA.  The plaintiff claimed she suffered actual damages because "she was overcharged and paid significantly more for the vehicle than it was worth."  *Id.* at 621.  She also claimed she was damaged because she "was denied the opportunity to decline to purchase vehicles known to have been used previously for short-term rentals."  *Id.*

The defendant dealership moved to dismiss, arguing that the plaintiff had not alleged facts showing she suffered any actual damages, because the complaint did not allege (a) that plaintiff sold the vehicle and realized any loss; (b) that she had spent any money on repairs; or (c) that she been unable to use the vehicle at any time during her ownership.  *Id.*  The district court agreed and dismissed the claim, holding that the plaintiff had not adequately pled injury to support an MCPA claim.  *Id.*  An example of actual damages would be an objectively identifiable amount of money that the plaintiff should be paid to remedy an actual loss caused by the alleged MCPA violation.  *Id.*  The desire for a hypothetical, retroactive price concession or

retroactive refund cannot constitute evidence of actual damages as a matter of law. *Id.* at 621-22. The court noted comparison cases where the plaintiffs did suffer actual damages and therefore stated viable MCPA claims. *Id.* at 622 (citing *Barry v. EMC Mortg. Corp.,* No. DKC 10–3120, 2012 WL 3595153, at *8 (D.Md. Aug. 17, 2012) (plaintiff sufficiently pled damages under the MCPA when he incurred penalties, lost credit opportunities, and emotional distress as a result of the defendant's MCPA violations); *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 149, 916 A.2d 257 (2007) (as a result of the MCPA violation, plaintiffs suffered actual damages that could be "measured by the amount it will cost them to repair the defective seatbacks.")).

*     *     *     *

The Court should dismiss Count I because Plaintiff did not suffer actual damages sufficient to support an MCPA claim. The Complaint shows that Plaintiff's alleged harm was, at most, his defeated expectations regarding the extent to which his suits had been discounted. Regardless of what information later caused Plaintiff to believe that JAB's regular prices were false, that information could not possibly change anything about *the suits themselves*. Thus, there is no set of facts Plaintiff could allege that could justify a MCPA violation, and the Court should dismiss with prejudice.

**B.    The Court Should Dismiss Plaintiff's Fraud Claims Set Forth in Count II Because, Once Again, Plaintiff Cannot Prove Damages, an Essential Element of Fraud.**

Count II of the Complaint alleges fraud and fraud by omission. (FAC ¶¶ 78-83). Under Maryland law, to establish fraud, the plaintiff must plead and prove "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered

16

compensable injury resulting from the misrepresentation." *Ellerin v. Fairfax Sav.*, F.S.B., 652 A.2d 1117, 1123 (1995); *Hooper v. Gill*, 79 Md. App. 437, 445, 557 A.2d 1349, 1353 (1989) ("Proof of compensatory damage directly resulting from an act is a necessary element of a cause of action grounded in fraud.").

Maryland cases refer to fraud by omission as fraudulent concealment and require pleading and proof that "[(1)] the defendant owed a duty to plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Castle v. Capital One, N.A.*, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014).

For both claims, the fifth element requires a plaintiff to show he has suffered actual damages. *Schwartzbeck v. Loving Chevrolet, Inc.*, 339 A.2d 700, 705 (1975).  As discussed above, the Complaint fails to allege—indeed cannot allege—facts showing Plaintiff suffered actual damages.  Moreover, Plaintiff does not and cannot allege that JAB had any duty to disclose any additional information. *Maryland Envtl. Tr. v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002) ("Except in a few special types of transactions not implicated in this case, Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party.").  Thus, the Court should also dismiss Count II with prejudice for the same reason as Count I.

**C.     The Court Should Dismiss Count X Because Plaintiff Was Not Damaged and No Express Warranties Were Created or Breached.**

Recognizing that the Court should dismiss his original Complaint—just as courts in New Jersey, Illinois, and Ohio have done—Plaintiff gamely attempts to rebrand his ill-conceived

theory of liability as one for breach of express warranty.  (FAC ¶¶ 133-140).[6]  But changing labels cannot remedy the fundamental flaw permeating Plaintiff's lawsuit.

As a threshold matter, the breach of express warranty claims fails for the same reason as the MCPA and fraud claims fail:  Plaintiff suffered no damages.   A plaintiff alleging breach of express warranty must plead and prove that "1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002) (*citing Fischbach & Moore Int'l Corp. v. Crane Barge R–14,* 632 F.2d 1123, 1125 (4th Cir.1980)).   As discussed *supra*, nothing in the FAC shows that Plaintiff suffered any cognizable damages.

Like his fraud claim, Plaintiff's breach of express warranty claim is premised on the notion that he inferred certain information about the suits from JAB's price advertisements.  At least one court has previously rejected a similar claim alleging that a seller's price advertisements created an express warranty and damaged the buyer.  *Ice v. Hobby Lobby Stores, Inc.*, No. 1:14CV744, 2015 WL 5731290 (N.D. Ohio Sept. 29, 2015).  The plaintiff claimed he paid $13.49 for a photo frame that the defendant advertised as "always 50% off the marked price." *Id.* at *1.  The receipt read "50% off (26.99-13.50)." *Id.*  Like Plaintiff, the *Ice* plaintiff alleged that these advertisements violated Ohio's consumer protection statutes and sought to represent a putative class of consumers who purchased from the defendant. *Id.*

---

[6]  Plaintiffs bring this claim on behalf of the putative nationwide class, which the Court should strike for the reasons discussed in JAB's contemporaneously-filed Motion to Dismiss.  Given that the nationwide class cannot survive as a matter of law, JAB presumes that the Court will consider this claim as one brought on behalf of the putative Maryland Sub-Class.  When a nationwide class cannot survive, the law allows the Court to consider a state wide class in lieu. *Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016), *appeal dismissed* (July 7, 2016) (dismissing nationwide claims to the extent they do not arise out of the defendant's Illinois activities).

The *Ice* court cited two of the prior lawsuits against JAB in holding that the plaintiff's statutory consumer protection claims fail for lack of statutory damages. *Id.*at *6-7 (citing and discussing the *Johnson* (Ohio) and *Camasta* (Illinois) decisions). The court then rejected the breach of express warranty claim for several reasons, including that the plaintiff received exactly what had been advertised. *Id.* at *8. The Court's primary reason was that a price advertisement is not a representation about "the quality of the goods in question." *Id.* The court also noted that to the extent the plaintiff might have equated a price advertisement as a representation of a good's value, the Ohio express warranty statute disclaims that any representation about value could create a warranty. *Id.*

Maryland law dictates the same outcome. The express warranty statutes in Ohio and Maryland are identical, as both are adopted from the Uniform Commercial Code § 2-313. Express warranties can only be created by objective representations from the seller about "***the goods***" or a "description ***of the goods***." Md. Code Ann., Com. Law § 2-313(1) (emphasis added). Warranties that JAB could have created that relate to or describe a suit would include that "the suit is made of wool," that "the suit is stain resistant," that "the suit has extra stitching," or that "the suit is size 42 long." If a buyer relied on such a warranty and it proved false, the buyer could state a breach of express warranty claim. That is far from the facts Plaintiff alleges.

Here, Plaintiff's claim rests on two alleged warranties: (1) that the "regular prices" on the tags were "actual prices;" and (2) that Plaintiff "was receiving a price reduction." (FAC ¶ 134). Regardless of whether JAB actually made either statement, neither could possibly constitute an affirmation that relates to or describes *the suits themselves*. The suits are the same without regard to what prices JAB advertised for the suits in the past, present, or future. These statements relate to or describe JAB's marketing and pricing, not the suits. This is precisely why

the UCC disclaims the notion that a seller statement about the value of a good does not create a warranty.  Md. Code Ann., Com. Law § 2-313(2) ("an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.").[7]

Plaintiff's other alleged "warranty"—that Plaintiff "was receiving a price reduction"—simply does not fit with his facts and theory.  Plaintiff alleges that his purchase involved buying a suit at the "regular price," not a reduced price.  Plaintiff's claim is not premised on a sale involving a price reduction, e.g., 70% off suits.  JAB created no warranty concerning price reductions but if it did, it would not have anything to do with Plaintiff's purchase.

Plaintiff's theory that price representations can create express warranties is also not supported by the law.  In *Fields v. Melrose Ltd. P'ship*, .  312 S.C. 102, 104, 439 S.E.2d 283 (Ct. App. 1993), a South Carolina court of appeals affirmed the dismissal of a claim alleging that a seller's representation about a product's future price created an express warranty.  *Id.* at 284. The plaintiffs paid $50,000 for interests in land known as Melrose Club, based in part on representations that such interests would sell for $100,000 in the future.  *Id.*  The court held that the alleged representations about the future price of such interests "did not constitute an affirmation as to the individual interests sold to the Fieldses," nor were they "statements as to the value, quality of title, or other characteristics of the interests the Fieldses purchased."  *Id.* at 285.

Like the alleged affirmations in *Fields*, JAB's alleged affirmations about the "regular prices" of its suits cannot create express warranties.  Neither of the two alleged "warranties"

---

[7] Plaintiff also theorizes that regular prices are not "actual prices" if the suits "were never sold or intended to be sold" at the regular prices.  (FAC ¶ 136).  But in Exhibit 6, which Plaintiff attaches to allegedly show the suits were "continually on sale," there are significant gaps between sales, confirming that the suits were sold and intended to be sold at the regular prices. (FAC ¶ 45, n.8; Exhibit 6) (e.g., 21 day gap between sales starting on March 25, 2015 and April 15, 2015; 44 day gap between sales starting on May 10, 2015 and June 23, 2015).

Plaintiff identifies relates to or describes the suits.  And because Plaintiff was not damaged and the alleged "warranties" were not breached, the Court should dismiss Count X.

**D.    The Court Should Also Dismiss Count XI Because Under the Facts of this Case, Plaintiff Cannot State a Claim for Unjust Enrichment.**

Count XI of the Complaint contains a claim for unjust enrichment.  (FAC ¶¶141-146).  In Maryland, unjust enrichment has three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 766 (D. Md. 2012).  The available remedy is restitution, which is designed to force the defendant to disgorge benefits it would be unjust for it to keep.  *Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 383–84, 726 A.2d 702, 726 (1999).

*1.    Under the circumstances of Plaintiff's knowing and voluntary transaction, there is nothing inequitable about JAB retaining Plaintiff's payment.*

The logic underlying why Plaintiff suffered no actual damages (Section A) also explains why Count XI fails to state a claim for unjust enrichment.  It is difficult to understand how JAB could have been unjustly enriched when Plaintiff knowingly and voluntarily offered to pay $875 for the suits, JAB delivered the exact suits he expected to receive, and Plaintiff had no complaints about the suits and chose to keep them instead of returning them.

This was the conclusion in *Todd v. Xoom Energy Maryland, LLC*, 2016 WL 727108 (D. Md. Feb. 22, 2016), one of the few Maryland decisions involving an unjust enrichment claim premised on allegedly deceptive marketing.  The plaintiffs claimed that defendants advertised that their energy prices were much lower than the local utility company.  *Id.* at *1-2.  But after the plaintiffs switched services, the defendants actually charged them much higher prices.  *Id.*

The court dismissed the unjust enrichment claim because the complaint alleged no facts showing that the defendants did not supply the plaintiffs with the energy for which they had contracted. *Id.* at *8 (even if the charges for the energy breached the parties' contract, any payments plaintiff made to XOOM Energy do not constitute unjust enrichment); *see also Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012) (defendant bank was not unjustly enriched by its retention of mortgage payments, which plaintiff conferred in exchange for possession of his home).

In *Todd*, the Maryland court also cited with approval a New Jersey decision that applied the same reasoning. *Id.* (citing *Slack v. Suburban Propane Partners, L.P.*, 2010 WL 3810870 (D.N.J. Sept. 21, 2010)). In *Slack*, the plaintiffs alleged that a propane seller falsely and deceptively advertised that its prices were "competitive" with those charged by other companies, even though they were generally higher. *Slack*, 2010 WL 3810870 at *1. The district court dismissed the unjust enrichment claim, because the plaintiffs admitted that they received the propane they contracted for and they had not expected any additional remuneration from the defendants at the time they paid for the propane. *Id.* at *6.

There is nothing unjust or inequitable about JAB retaining the $875 that Plaintiff voluntarily offered to pay in exchange for the four suits that he wanted, received and kept. Because JAB was not unjustly enriched, the Court should dismiss Count III.

> **2.      Plaintiff cannot state a claim for unjust enrichment because the parties' sale contract governs the transaction.**

Maryland cases hold that quasi-contract claims like unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists. *See e.g.*, *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100–01, 747 A.2d 600, 610 (2000); *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) ("It

is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). The parties' sale contract governs the transaction, and among other things, afforded Plaintiff the right to return the suits for a refund.  *Cty. Comm'rs of Caroline Cty.*, 358 Md. at 94, 747 A.2d at 606 (defining an express contract as "an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.").  The existence of that contract negates the viability of Plaintiff's unjust enrichment claim.

### E.      Plaintiff Has Neither Standing Nor a Legal Basis to Seek Injunctive Relief.

Plaintiff's prayer includes a request for injunctive relief.  (FAC p. 36).  The MCPA provides for injunctive relief, but only authorizes the Maryland Attorney General to seek injunctions.  Md. Code Ann., Com. Law § 13-406(a) ("The Attorney General may seek an injunction to prohibit a person who has engaged or is engaging in a violation of this title from continuing or engaging in the violation."); *Winemiller v. Worldwide Asset Purchasing, LLC*, No. 1:09-CV-02487, 2011 WL 1457749, at *7 (D. Md. Apr. 15, 2011) ("As this Court and other courts in this jurisdiction have stated, 'declaratory and injunctive relief is not available under the . . . MCPA.'").  But even if Plaintiff had a legal basis to seek injunctive relief, he would not have standing under Article III of the U.S. Constitution.

A plaintiff seeking injunctive relief must allege facts showing a real and immediate threat of similar harm in the future.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  To establish standing, the injunction must be necessary to protect Plaintiff, not his putative class.  *Beck v. McDonald*, 848 F.3d 262, 277–78 (4th Cir. 2017); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223–24 (3d Cir. 2012).  Plaintiff has obviously formulated his opinions and beliefs about JAB's regular prices, so much so that he

filed a class action complaint against JAB.  Thus, there is no real and immediate threat that Plaintiff will suffer similar "harm" in the future.  *McNair*, 672 F.3d at 224 (potential for future exposure to a defendant's advertising is insufficient to confer standing for injunctive relief).

Plaintiff attempts to overcome his lack of standing by claiming that he would purchase JAB products in the future if his concerns about JAB's "regular prices" were addressed.  (FAC ¶ 54).  But "the law accords people the dignity of assuming that they act rationally, in light of the information they possess."  *McNair*, 672 F.3d at 225 (the plaintiffs could only suffer a similar injury in the future if they ignored their past dealings with the defendants).  Because Plaintiff is of the opinion that JAB's regular prices are not legitimate, he can protect himself from suffering future harm.  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 735 (7th Cir. 2014) ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."); *Robinson v. Hornell Brewing Co.*, CIV. 11-2183 JBS-JS, 2012 WL 1232188 at *6 (D.N.J. Apr. 11, 2012) (plaintiff can control the risk of injury by merely refraining from buying defendant's product); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 918 (N.D. Ill.  2013) (armed with the knowledge of the alleged defect in defendant's product, plaintiff can avoid future injury)*; Greisz v. Household Bank (Illinois)*, 8 F. Supp. 2d 1031, 1044 (N.D. Ill. 1998) (no likelihood of future harm because plaintiff is fully aware of defendant's allegedly inadequate disclosures).

Plaintiff has filed a class action complaint against JAB alleging that he was deceived by its sales promotions and regular prices.  However dubious his claims may be, Plaintiff is now armed with the knowledge that he believes JAB's regular prices are not legitimate and can simply assign no significance to them.  Or Plaintiff can just purchase suits from other retailers.  Even though a federal injunction is a drastic and extraordinary remedy, Plaintiff essentially asks

this Court to issue one to facilitate his individual interest in potentially shopping for JAB's products again in the future.  (FAC ¶ 54); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 142 (2010) ("an injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course").  This is plainly unreasonable, especially since Plaintiff now resides in Evanston, Illinois and would derive no benefit from injunctive relief in Maryland.  (FAC ¶ 19).

## CONCLUSION

For the reasons set forth above, Defendant Jos. A. Bank Clothiers, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.


Dated: August 1, 2017.                    Respectfully submitted,

                                          MARCUSBONSIB, LLC

                                          _____/s/_____
                                          BRUCE L. MARCUS, ESQ.
                                          Bar No. 06341


                                          _____/s/_____
                                          JOSEPH A. COMPOFELICE, JR., ESQ.
                                          Bar No. 26718
                                          6411 Ivy Lane, Suite 116
                                          Greenbelt, Maryland 20770
                                          (301) 441-3000
                                          (301) 441-3003 (facsimile)
                                          bmarcus@marcusbosib.com
                                          compofelice@marcusbonsib.com
                                          (signed by Joseph A. Compofelice, Jr. with permission of
                                          Bruce L. Marcus)


                                          ARMSTRONG TEASDALE LLP

                                          _____/s/_____
                                          CHARLES W. STEESE, ESQ. (*pro hac vice*)

                                          _____/s/_____
                                          CINDY N. PHAM, ESQ. (*pro hac vice*)

4643 South Ulster, Suite 800
Denver, Colorado 80237
(720) 200-0677
(720) 200-0679 (facsimile)
csteese@armstrongteasdale.com
cpham@armstrongteasdale.com
(signed by Joseph A. Compofelice, Jr. with permission of
Charles W. Steese and Cindy N. Pham)


_____/s/_____
ERIC M. WALTER, ESQ. (*pro hac vice*)
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
(314) 621-5065 (facsimile)
ewalter@armstrongteasdale.com
(signed by Joseph A. Compofelice, Jr. with permission of
Eric M. Walter)

*Counsel for Defendant Jos. A. Bank Clothiers, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2017, a copy of the foregoing was filed and served upon the following parties and counsel though the CM/ECF System for the United States District Court for the District of Maryland, unless otherwise indicated:

Beatrice O. Yakubu, Esq.
Charles J. LaDuca, Esq.
Cuneo, Gilbert & LaDuca, LLP
4725 Wisconsin Avenue, N.W., Suite 200
Washington, D.C. 20016
byakubu@cuneolaw.com
charles@cuneolaw.com

Melissa W. Wolchansky, Esq.
Halunen Law
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
wolchansky@halunenlaw.com

*Counsel for Plaintiff*

                    ___/s/  Joseph A. Compofelice, Jr._____