## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OLUSOLA AKINMEJI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil No.: 8:17-cv-01349 PJM |
| | ) |
| JOS. A. BANK CLOTHIERS, INC., | ) Judge Peter J. Messitte |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Plaintiffs respectfully submit this Memorandum of Law in opposition to Defendant Jos. A. Bank's (JAB) Motion to Dismiss Portions of the First Amended Class Action Complaint (Dkt. 49.) At its core, JAB's motion boils down to a contention that Plaintiffs cannot prove they were injured – i.e., that the suffered any "actual damages" – as a result of conduct that JAB admits (at least for purposes here) was deceptive in violation of both state consumer protection statutes and common law. As the discussion that follows will demonstrate, however, the courts – including those that rendered the decisions JAB cites in its brief – have consistently recognized that a consumer who contends a product he received was not worth the price he paid has sufficiently alleged the existence of "actual damages," and has thus stated a viable claim for relief. For this reason, and the others explained herein, JAB's motion should be denied in its entirety.

**STATEMENT OF FACTS**

Defendant JAB is a clothing retailer that peddles suits, sport coats, slacks, ties, etc., to a nationwide customer base via the internet and its 600 brick and mortar stores. (Dkt. 45, First Amended Class Action Complaint (FAC) ¶22-23.) To the detriment, damage, and injury of Plaintiffs Olusola Akinmeji and Raychel Jackson,[1] as well as the other putative Class members and the consuming public at large, JAB sells its products using pricing tactics that courts, commentators, and the federal government have all decried as deceptive. Specifically, JAB utilizes a tactic known as "reference pricing," whereby it assigns each item a "regular price," which consumers believe to be the true value (or worth) of that particular item. (FAC ¶30.) Having set that expectation, JAB then purports to offer consumers a steep discount off the regular price (e.g., 75% off), or to promise them "free" additional items (e.g., buy one suit get three free), thus giving the perception of savings. (FAC ¶¶31-34.)

It is important to note, as Akinmeji explains in his FAC, that empirical marketing studies confirm the fact reference pricing creates an impression of higher value. (FAC ¶29.) Indeed, it "offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings. (FAC ¶29, quoting Dhruv Grewal and Larry D. Compeau, *Comparative Price Advertising: Informative of Deceptive?*, Journal of Public Policy and Marketing, Vol. 11, No. 1 at 52 (Spring 1992).) By "creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy

---

[1] JAB has limited its instant motion to seeking dismissal of Counts I, II, X and XI, all of which are brought on behalf of the putative Maryland sub-class represented by Plaintiff Akinmeji. Given that fact, Akinmeji will limit his response to a discussion of those particular claims.

the product." (*Id.*) Thus, if "the reference price is not truthful" – which JAB's are not – "a consumer

may be encouraged to purchase as a result of a false sense of value." (*Id.*)

Ultimately, any "savings" JAB purports to provide are illusory (and, in fact, entirely

nonexistent) because JAB's "'regular' price is, in each instance, fabricated and inflated," as JAB

does not sell, and has no intention of selling, its products at the "regular" retail prices set forth in

its advertising and marketing materials.[2] (FAC at ¶4.) Indeed, a recent investigation conducted by

then New York Attorney General Elliot Spitzer revealed that *less than 1%* of JAB's suits, formal

wear, dress pants and sport coats were ever sold at the "regular" price.[3] (FAC ¶5, 39 (emphasis

added); *see also* Dkt. 45, FAC Ex. 4 at pg. 134, ¶4, 9.)

Any claim by JAB that its foregoing predatory pricing practices are not deceptive is refuted

the Federal Trade Commission (FTC), which has concluded to the contrary, explaining that:

> One of the most commonly used forms of bargain advertising is to offer a reduction
> from the advertiser's own former price for an article. If the former price is the
> actual, bona fide price at which the article was offered to the public on a regular
> basis for a reasonable substantial period of time, it provides a legitimate basis for
> the advertising of a price comparison. Where the former price is genuine, the
> bargain being advertised is a true one. *If, on the other hand, the former price being
> advertised is not bona fide but fictitious* – for example where an artificial price,
> inflated price was established for the purpose of enabling the subsequent offer of a
> large reduction – the "bargain" being advertised is a false one; *the purchaser is not
> receiving the usual value he expects.*

(FAC ¶6, quoting 16 C.F.R. § 233.1(a) (emphasis added).)[4]

---

[2] Additionally, "[b]ecause JAB suits, sport coats, and dress pants are sold exclusively at JAB and
are on sale in near perpetuity, the items' 'regular' price is not the prevailing market price." (FAC
¶37.)

[3] JAB's practices were also the subject of investigation by the Florida and Ohio Attorneys General.
(FAC ¶40.)

[4] The former New York attorney general agrees, noting that JAB's conduct "is misleading and
deceptive and has the capacity to mislead consumers," and concluding that JAB has "engaged in
repeated fraudulent and illegal acts. . ." (Dkt. 45-4, FAC Ex. 4 ¶¶9-10.)

Akinmeji fell victim to JAB's pricing scam in June 2015, when he saw one of its online ads touting a "buy one suit at 'regular' price get three suits free" promotion. (FAC ¶ 19.) In reliance on JAB's representations, Akinmeji selected a suit – a Slim Fit 2 Button Plain Front Wool Suit (item # 30200/169 38 SHT) – which, per JAB's advertising and marketing materials, was worth $875 – and then selected three additional "free" suits, which JAB purports to sell at comparable regular prices when not offered as part of a sale or promotion. (FAC ¶¶ 19, 43; *see also* Dkt. 45-1, FAC Ex. 1 at pg. 20.) As explained in the FAC, Akinmeji "was induced to make his purchase because JAB's advertising led him to believe he was getting a suit. . . worth $875." (FAC ¶44.) Contrary to JAB's assurances, however, the $875 Akinmeji paid for the Slim Fit 2 Button Suit ***was not*** the "bona fide price at which the article was offered to the public on a regular basis for a reasonable substantial period of time,"[5] and it "did not reflect the true price formerly paid by consumers for that JAB suit." (FAC ¶ 45.) Indeed, in and around the time of Akinmeji's purchase, JAB regularly sold the same Slim Fit 2 Button Suit for as little as $157. (*Id.*)

In short, JAB "artificially sets the false reference prices to deliberately create false impressions among consumers regarding the products' value," and as a result of those deceptive pricing practices, Akinmeji (and the other members of the Class) did "not get the actual discounts and savings that JAB promised them," nor did they "receive products which had the value JAB promised those products would have." (FAC ¶9.) In other words, they paid more for JAB's merchandise than it was worth, thereby sustaining "actual damages," and mandating the denial of JAB's motion.

---

[5] 16 C.F.R. § 233.1(a).

**STANDARD OF REVIEW**

The purpose of Rule 12(b)(6) motions is merely "to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, in considering such motions, the Court "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses,"[6] and to survive such a motion, the complaint need set forth "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, Akinmeji's complaint is sufficient if its factual allegations are specific enough "to raise a right to relief above the speculative level."[7] *Twombly*, 550 U.S. at 556.

Per the United States Supreme Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Critically, "[t]he plausibility standard is not akin to a 'probability requirement,'" but instead merely "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (Citation omitted.) Thus, it is only when the complaint contains nothing more than "naked assertions" or "conclusory statements" that it is subject to dismissal under Rule 12(b)(6). *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). In short, the issue "is not whether a plaintiff will ultimately prevail," but simply whether he "is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The task of determining facial plausibility is a "context-specific" one "that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

---

[6] *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[7] This, of course, does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

That "experience and common sense," however, should be informed by the following well-settled principles: (1) "Rule 12(b)(6) is a liberal pleading standard;"[8] (2) in considering a 12(b)(6) motion "[t]he factual allegations in Plaintiff[s'] complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff[s];"[9] (3) the Court must "draw[] all reasonable inferences in favor of the plaintiff;"[10] and (4) a complaint may not be dismissed pursuant to Rule 12(b)(6) unless "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Alexander*, 2010 U.S. Dist. LEXIS 63772, at *5 (citation omitted).

In apparent recognition of the foregoing principles, the Unites States Supreme Court has instructed that "a well-pleaded complaint may survive a motion to dismiss even where 'it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). The Fourth Circuit has held similarly, explaining that:

> The fact that a plaintiff's claim does "not fall within the four corners of our prior case law . . . does not justify dismissal under Rule 12(b)(6). On the contrary, Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." (Citation omitted.) "Indeed, as the law firms up in unsettled areas, it may be more feasible to dismiss weaker cases on the pleadings; otherwise, plaintiffs should be given an opportunity to develop evidence before the merits are resolved." (Citation omitted.)

*Trujillo v. Landmark Media Enters., LLC*, No. 16-1264, 2017 U.S. App. LEXIS 8361, at *5 (4th Cir. May 11, 2017); *see also* 5B Charles Alan Wright & Arthur R. Miller et al., Federal Practice

---

[8] *Alexander v. Hancock*, No. PJM 09-1977, 2010 U.S. Dist. LEXIS 63772, at *6 (D. Md. June 25, 2010).

[9] *Porreca v. Mitchell l. Morgan Mgmt.*, No. JMF 08-1924, 2009 U.S. Dist. LEXIS 11878, at *4 (D. Md. Feb. 13, 2009).

[10] *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724 (D. Md.2008).

& Procedure § 1357 (3d ed. 2015) (noting that courts should "be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability" is "novel" and thus should be "explored").

## LEGAL ARGUMENT

I. **AKINMEJI HAS PLED A VIABLE CLIAM UNDER THE MARYLAND CONSUMER PROTECTION ACT (COUNT I).**

A. **The MCPA is a remedial statute that must be construed liberally to effectuate its protective purposes.**

The Maryland General Assembly has recognized: (1) that "consumer protection is one of the major issues which confronts all levels of government;"[11] (2) that "there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise;"[12] (3) that "public confidence in merchants offering goods, services, realty and credit is being undermined;"[13] and (4) that existing consumer protection laws are "inadequate, poorly coordinated and not widely known or adequately enforced." Md. Code Ann. § 13-102(a)(2). Guided by these principles, and its corresponding "recognition that the doctrine of caveat emptor had outlived its social utility,"[14] the General Assembly took "strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices,"[15] and "to equalize the balance of power between consumers and providers of consumer goods and

---

[11] Md. Code Ann. § 13-102(a)(1).

[12] Md. Code Ann. § 13-102(a)(1).

[13] Md. Code Ann. § 13-102(b)(2).

[14] *Hallowell v. Citaramanis*, 594 A.2d 591, 593 (Md. Ct. Spec. App. 1990) aff'd by *Citaramanis v. Hallowell*, 613 A.2d 964 (Md. Ct. App. 1991).

[15] Md. Code Ann. § 13-102(b)(3).

services." *Hallowell v. Citaramanis*, 594 A.2d 591, 593 (Md. Ct. Spec. App. 1990) aff'd by

*Citaramanis v. Hallowell*, 613 A.2d 964 (Md. Ct. App. 1991). Specifically, it enacted the Maryland

Consumer Protection Act (MCPA) "to set certain minimum statewide standards for the protection

of consumers across the state." Md. Code Ann. § 13-102(b)(1).

Importantly, when promulgating the MCPA, the General Assembly mandated that it "be

construed and applied liberally to promote its purpose;"[16] i.e., "to provide a broad remedy for

consumers who are fraudulently induced into sale or lease transactions." *White v. Kennedy Krieger*

*Inst.*, 110 A.3d 724, 755 (Md. Ct. Spec. App. 2015); *see also Brooks v. Mortg. Investors Corp.*,

No. WDQ-13-1566, 2014 U.S. Dist. LEXIS 2126, at *22 (D. Md. Jan 8, 2014) (confirming that

"[t]he MCPA must be 'liberally construed in order to achieve its consumer protection objectives'")

(citation omitted).

Generally speaking, the MCPA prohibits the use of any "unfair or deceptive trade practice,"

in connection with the sale or offer for sale of "any consumer goods, consumer realty, or consumer

services." Md. Code. Ann. § 13-303(1)-(2). Per Md. Code § 13-302, such "unfair or deceptive

trade practices" include any:

> (1)     False, falsely disparaging, or misleading oral or written statement, visual
>            depiction, or other representation of any kind which has the capacity,
>            tendency, or effect of deceiving or misleading consumers;
>
> (2)     Failure to state a material fact if the failure deceives or tends to deceive;
> ***
> (6)     False or misleading representation of fact which concerns:
>
>            (i)      The reason for or the existence or amount of a price reduction; or

---

[16] Md. Code Ann. § 13-105; *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d
452, 465, (D. Md. 2013) (holding that "[t]he MCPA is intended to be liberally construed in order to
achieve its consumer protection objectives"); *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*,
822 F. Supp. 2d 505, 533 (D. Md. Nov. 3, 2011) (stating, "the Court is mindful of the MCPA's
directive for courts to construe it liberally to promote its remedial purposes").

  (ii) A price comparison to a price of a competitor or to one's own price at a past or future time;

\*\*\*

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

  (i) The promotion or sale of any consumer goods, consumer realty, or consumer service; . . .

To state a viable claim under the MCPA, a consumer "must allege '(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes actual injury.'" *Howes v. New York Life Ins., Co.*, No. PWG-16-2592, 2017 U.S. Dist. LEXIS at \*6-7 (D. Md. Mar. 30, 2017) (citation omitted). In moving for partial dismissal, JAB does not dispute, and thus concedes (at least for instant purposes): (1) that it utilized one or more of the above-referenced "unfair or deceptive trade practices" in violation of the MCPA; and (2) that Akinmeji relied upon those deceptive practices/misrepresentations when making his decision to purchase merchandise from JAB. Thus, the ***sole basis*** for JAB's motion relative to the MCPA claims is its (erroneous) contention that "Plaintiff has alleged no facts showing that he suffered any actual damages." (Dkt. 39-1, Def. Memo of Law at 4.)

  **B.** **Akinmeji has alleged the existence of "actual damages," and his claims thus fall comfortably within the scope of the MCPA.**

In order to recover under the MCPA, Akinmeji must allege (and later prove) that he suffered an "actual loss or injury" as a result of JAB's deceptive conduct. *See Green v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 12384, \*12 (D. Md. Jan. 31, 2014) (explaining that "a complaint will adequately plead damages under the MCPA when it contains plausible allegations that the plaintiff relied upon the defendant's false or misleading statements and suffered actual loss or injury *as a result* of that reliance") (citation omitted). This burden, however, is not nearly as

9

onerous as JAB implies.[17] Indeed, it is well-settled under Maryland law that any "objectively identifiable" injury is sufficient to support a claim under the MCPA,[18] and that such claims are subject to dismissal at the pleadings stage ***only*** where the defendant can prove the plaintiff has alleged a purely "conjectural or potential injury." *Pole v. J.P. Morgan Chase Bank*, N.A. 36 A.3d 399, 417 (Md. 2012). Thus, all Akinmeji has to do to survive JAB's instant motion is show that he has plausibly alleged "an identifiable loss" suffered by reason of its deceptive conduct.

   In its brief, JAB admits there are no decisions applying Maryland law that are directly on point, but it goes on to contend that its success in three other cases mandates dismissal here. (*See* Dkt. 49-1, Def. Memo. at 6-9, citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014), *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2014 U.S. Dist. LEXIS 115113 (S.D. Ohio Aug. 19, 2014), and *Waldron v. Jos. A. Bank Clothiers, Inc.*, No. 12-CV-02060DMCJAD (DMC) (JAD), 2013 U.S. Dist. LEXIS 189191 (D.N.J. Jan. 28, 2013).) A review of those cases, however, reveals not only that they are distinguishable, but that they actually support Akinmeji's position and mandate denial of JAB's motion.

---

[17] In considering JAB's motion, it is important to note that the MCPA's "actual injury" requirement was enacted to "prevent aggressive consumers who were not personally harmed by the prohibited conduct, or even involved in a transaction with the offending [defendant] from instituting suit as 'self-constituted attorneys general' over relatively minor statutory violations." *Citaramanis v. Hallowell*, 613 A.2d 964, 968 (Md. Ct. App. 1992) (citation omitted). These concerns are not even arguably implicated here, where Akinmeji (and the other Class members) were obviously "involved in a transaction with the offending [defendant]," having been convinced to part with their money in reliance on promises that JAB never intended to, and did not, keep.

[18] *Lloyd v. GMC*, 916 A.2d 257, 277 (Md. Ct. App. 2007).

1.    **Unlike the plaintiffs in *Camasta and Waldron*, Akinmeji has alleged that he paid more for JAB's merchandise than it was worth, thereby establishing the existence of an objectively identifiable injury, and stating a viable claim under the MCPA.**

JAB relies most heavily on the Seventh Circuit's decision in *Camasta*, a case in which the plaintiff purchased two shirts in connection with a JAB sale advertising: "buy one shirt, get two shirts free." *Camasta*, 761 F.3d at 735. Upon learning that the purported "sale" did not actually include a reduced price for the subject shirts, but was rather part of JAB's pattern and practice of "advertis[ing] normal retail prices as temporary price reductions," Camasta filed a putative class action alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). *Id*. In support of those claims, Camasata "simply argue[d] that his expectations for the discount he received were unrealized when he learned that the sale was not a temporary price reduction, but rather the normal retail price of JAB's merchandise." *Id*. After some procedural wrangling (including the filing of an amended complaint), the district court granted JAB's 12(b)(6) motion and dismissed Camasta's claims. *Id*. at 736. The Seventh Circuit affirmed, noting that Camasta "failed to provide any evidence that he paid more than the actual value of the merchandise received," and going on to explain that he:

> . . . agreed to pay a certain price for the defendant's merchandise, [and] *did not allege the merchandise was* defective or *worth less than what [he] actually paid*, and did not allege that [he] could have shopped around for a better price in the marketplace.

*Id*. at 740 (emphasis added).

Ultimately, the court concluded that "[w]ithout any facts to support his conclusory allegations," Camasta "ha[d] not sufficiently pleaded that he paid more than the actual value of the merchandise he received," and thus had failed to adequately allege he suffered actual damage as a result of JAB's deceptive conduct. *Camasta*, 761 F.3d at 740. The New Jersey federal district court

11

held likewise in *Waldron*, where it dismissed the plaintiffs' claims under the New Jersey Consumer Fraud Act because they failed to allege that "they did not receive what they were promised," thus rendering their claimed monetary loss "purely hypothetical and speculative." *Waldron*, 2013 U.S. Dist. LEXIS 189191, at *11.[19]

JAB's reliance on *Camasta* is misplaced for two reasons; one legal, one factual, and both fatal. First, despite JAB's efforts to convince this Court otherwise, the legal standard that applies to claims under the ICFA differs dramatically from that which applies to claims under the MCPA. Indeed, whereas plaintiffs seeking relief under the Illinois statute are required to allege and prove they have "suffer[ed] actual ***pecuniary*** loss,'"[20] the MCPA permits recovery for any "objectively identifiable" injury,[21] even a purely emotional one. *See Reed v. Bank of Am. Home Loans*, 2016 U.S. Dist. LEXIS 75670, *25-26 (D. Md. June 10, 2016) (holding that the "MCPA permits recovery for emotional damages, which are generally not recoverable in common law fraud actions").

Second, in stark contrast to the plaintiffs in *Camasta* (and *Waldron*), Akinmeji has unequivocally alleged: (a) that the merchandise he received from JAB "was worth less than what

---

[19] Each of the other cases JAB cites in its brief hold similarly, and thus are inapposite for the same reasons. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (dismissing plaintiffs' claims under the ICFA, explaining that "[t]he plaintiffs agreed to pay a certain price for Carter's clothing, ***which they do not allege was*** defective or ***worth less than what they actually paid***. Nor have plaintiffs alleged that, but for Carter's deception, they could have shopped around and obtained a better price in the marketplace") (emphasis added); *Shaulis v. Nordstrom, Inc.*, No. 15-2354, 2017 U.S. Dist. LEXIS 13545, at *20 (1st Cir. July 26, 2017) (dismissing plaintiffs' claims under the Massachusetts Consumer Protection Act, and emphasizing "her failure to allege that the sweater ***was 'worth less than the alleged selling price'***") (emphasis added).

[20] *Camasta*, 761 F.3d at 739; *see also Kim*, 598 F.3d at 365 (holding that "[t]he actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss'").

[21] *Lloyd*, 916 A.2d at 277.

[he] actually paid;" (b) that he "could have shopped around for a better price in the market place;"[22] and (c) that "he paid more than the actual value of the merchandise he received." *Camasta*, 761 F.3d at 740. As set forth in detail previously, Akinmeji has alleged: (a) that he paid $875 for a suit worth as little as $157; (b) that he "did not receive products which had the value JAB promised those products would have;" and (c) that he "suffered monetary loss as a direct result of JAB's deceptive and unfair practices" in violation of the MCPA. (*See* FAC ¶¶ 9, 41, 44-45, 74; *see also* Dkt. 45-6, FAC Ex. 6.)

Implicit in JAB's citation to *Camasta* and *Waldron* is its recognition of the fact that by alleging he received a suit (or any piece of merchandise) worth less than he actually paid, a plaintiff has stated a viable claim for "actual damages" – even under a statute (the ICFA) that requires proof of "actual pecuniary loss." Because Akinmeji has asserted (and supported) such allegations here, applying JAB's own logic (and the courts' holding in *Camasta* and *Waldron*) leads inevitably to the conclusion that he has stated a viable claim under the MCPA (which, as noted above, applies a more lenient standard and permits recovery for any "objectively identifiable" injury). *Lloyd*, 916 A.2d at 277. Thus, rather than supporting JAB's position, *Camasta* and *Waldron* illustrate the fallacy of its position and mandate the denial of its motion relative to Akinmeji's claims under the MCPA.

> **2.    *Johnson* is factually distinguishable and, respectfully, incorrectly reasoned.**

JAB also relies an Ohio federal district court decision; namely *Johnson v. Jos. A Bank Clothiers, Inc.*, a case in which the plaintiffs purchased suits at a purported regular price of $795 in reliance on JAB's promise that upon making that purchase they would also receive three

---

[22] (FAC ¶8.)

additional suits for free. Johnson, 2014 U.S. Dist. LEXIS 115113, at *3. The plaintiffs filed suit under the Ohio Consumer Sales Practices Act (OSPCA),[23] contending "that the 'regular price' of each purchased suit was 'vastly inflated above the true regular market price regularly paid by consumers for Jos. A Bank suits," and that this "deception proximately injures and damages the consumer in not getting the "deal" or "bargain" promised" by JAB. *Id*. at *4-5. Per the court, the *Johnson* plaintiffs "claim[ed] damages based on a theory of loss of the benefit of the advertised bargain." *Id*. at *12 (citation omitted).

> JAB filed a 12(b)(b)(6) motion to dismiss, which the district court granted, reasoning that:

> [T]he *Amended Complaint* does not allege that the suits purchased by plaintiffs were not worth, **collectively**, the amount that plaintiffs paid or that similar suits could not have been purchased elsewhere for less. Under these circumstances, and even assuming that plaintiffs are able without unreasonable speculation to assign a dollar amount to their claimed actual damages, recognition of plaintiffs' claim would leave each plaintiff with four suits that are worth, **collectively**, no less than the amount paid for them [$795]. . . It is clear to this Court that the *Amended Complaint* fails to allege actual injury or damage as a result of the alleged OCSPA violation.

*Id*. at *18-19 (italics in original, emphasis added).

> JAB's reliance on *Johnson* is misplaced for two reasons. First, unlike the plaintiffs in *Johnson*, Akinmeji **has** alleged that the suits he purchased were not worth, "collectively," the $875 that he paid. As explained in the FAC (and as illustrated by Exhibit 6 thereto), each of the four suits Akinmeji received were sold for as little as $157 at or around the time he made his purchase; resulting in a "collective" value of $628 (or $247 less than what he paid). (*See* FAC ¶45; Dkt. 45-6, FAC Ex. 6.) Thus, even under the *Johnson* court's "aggregate" approach to actual damages (which finds no support in Maryland case law), dismissal is neither warranted nor justified.

---

[23] It is significant to note that like the ICFA at issue in *Camasta*, and unlike the MPCA, the OSPCA also requires the plaintiff to establish the existence of "actual **economic** damages." O.R.C. Ann. § 1345.09(A). Accordingly, a different legal standard applies to claims under the OSPCA than that which applies to Akinmeji's claims here.

Second, by analyzing the "collective" value of all the merchandise the plaintiffs received, the *Johnson* court essentially re-wrote the deal JAB offered, thereby insulating it from all potential liability for conduct JAB concedes is deceptive. To be clear, JAB ***did not*** offer Akinmeji the chance to purchase four suits that were "collectively" worth $875. It told him that if he purchased one suit that was worth $875, it would give him three additional pieces of merchandise for "free." (ECF No. 45 at ¶43.) As a sophisticated clothing retailer that advertises pervasively to a nationwide customer base, JAB knows very well what words mean, and it chooses those words deliberately with the express goal of maximizing its sales and corresponding profits.

Per the Merriam-Webster dictionary, "free" means "not costing or charging anything." When analyzing the "collective" worth of the four suits, the *Johnson* court necessarily assumed that JAB charged something for each suit, depriving the word "free" of all meaning and rendering it nugatory. Such a result is simply not permitted under Maryland law, which has recognized for well over a century that effect must be given "to every clause and word of [an] offer." *Stockham v. Stockham*, 32 Md. 196, 205 (Md. Ct. App. 1870).[24]

In this case, JAB promised that if Akinmeji purchased a suit worth $875, it would provide him with that suit and give him three others for free. Instead, JAB provided Akinmeji with a suit worth $157 (and three additional suits of similar value). Under any iteration of the test, what JAB provided was worth less than what Akinmeji paid, and he has thus alleged an "identifiable loss" and stated a plausible claim for actual damages under the MCPA. *Lloyd*, 916 A.2d at 277.

---

[24] Equally well-settled is the notion that if the language of an offer is ambiguous any such ambiguity will be "resolved against the party who made it or caused it to be made" – here, JAB – "because that party had the better opportunity to understand and explain his meaning." *King v. Bankerd*, 492 A.2d 608, 612 (Md. Ct. App. 1985).

**C.     Even if the Court were to accept JAB's characterization of Akinmeji's allegations as simple "price premium" claims (which, as explained above, they are not), dismissal would remain inappropriate.**

"Most consumers have, at some point, purchased merchandise as being 'on sale' because the proffered discount seemed too good to pass up." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013). The reason for this is simple; consumers reasonably and rightly "value products perceived as high quality that are available at low prices." Dhruv Grewal, *et al.*, *Comparative Price Advertising: Informative or Deceptive*?, 11 J. of Pub. Pol'y & Mktg., 52, 55 (Spring 1992). Indeed, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product," and when "the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value." *Id*. at 55-56. In short, "consumers attach value to saving money." *Id*.

Likewise indisputable is the fact that sophisticated retailers like JAB are "well aware of consumers' susceptibility to a bargain." *Id*. Given that knowledge, JAB has a very real "incentive to lie to [its] customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Id*. To minimize that incentive, the Maryland General Assembly enacted the MCPA.

As noted above, JAB argues that Akinmeji's MCPA claims must fail because he does not allege "that the suits were not worth at least the amount that he paid." (ECF No. 49-1 at 13.) As also noted above, that contention is provably false. But even if it weren't, dismissal would remain inappropriate because: (a) Akinmeji alleges that he "relied upon [JAB's] 'regular' price representation," and "would not have purchased the JAB suit or paid the price set by JAB for such an item, in the absence of JAB's 'regular' price misrepresentation" (FAC ¶47); (b) JAB has

admitted its inability to cite any case in which a Maryland court held that such allegations are per se insufficient to support a claim under the MCPA; and (c) other courts have rejected the same argument JAB advances here.

Illustrative of the foregoing rejection is *Hinojos v. Kohl's Corp.*, a case in which the plaintiff filed a putative class action under California's Unfair Competition Law (UCL)[25] and Fair Advertising Law (FAL),[26] alleging, in relevant part, that he would not have purchased certain pieces of defendant's luggage and apparel "had he not been misled by advertisements stating that the merchandise was marked down from a fictitious 'original' or 'regular price.'" *Hinojos*, 718 F. 3d at 1101-02. The UCL and FAL obligate the plaintiff to "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). More specifically, a claimant under the UCL and/or FAL must prove she has "suffered injury in fact and has lost money or property" as a result of the defendant's unfair competition or false advertising. Cal Bus & Prof Code §§ 17204 (UCL) and 17535 (FAL).

Citing the foregoing requirements, Kohl's moved for dismissal, arguing there, as JAB does here, that the plaintiff could not meet his burden because he received the "benefit of the bargain," and had "acquired the merchandise he wanted at the price that was advertised, even if the advertised price was falsely represented as a 'sale.'" *Hinojos*, 718 F.3d at 1101-1102, 1107. The trial court agreed and granted the motion, but the Ninth Circuit reversed, holding that a consumer

---

[25] The UCL prohibits business practices that constitute "unfair competition," which is defined, in relevant part, as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ." Cal Bus & Prof Code § 17200.

[26] The FAL provides that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal Bus & Prof Code § 17501.

who has been induced to make a purchase she otherwise would not have made but for the seller's misrepresentation has indeed suffered an "economic injury." *Id.* at 1104. There the court explained:

> "From the original purchasing decision we know that consumer valued the product as labeled more than the money he or she parted with; from the complaints allegations, we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. ***That increment, the extra money paid, is economic injury*** and affords the consumer standing to sue."

*Id.* at 1104 (citation omitted) (emphasis added).

The *Hinojos* court also recognized that if it were to interpret the applicable consumer protection statutes "to require more than that a consumer have purchased a product that he would not have purchased absent the misleading advertisement, then it 'would bring to an end private consumer enforcement of bans on many label misrepresentations . . .'" *Hinojos*, 718 F.3d at 1107. The same is true here, where granting JAB's motion would serve only to reward it for engaging in conduct it concedes is deceptive. This result would not only be inconsistent with Maryland law (as explained above), but would be in direct derogation of MCPA's stated purpose, which is "to provide a broad remedy for consumers who are fraudulently induced into sale or lease transactions." *White*, 110 A.3d at 755. In this case, as in *Hinojos*, Akinmeji has alleged (and suffered) economic injuries caused by JAB's violation of the applicable consumer protection statute, and has thus stated a viable claim thereunder.

II.   **AKINMEJI HAS ALLEGED THE EXISTENCE OF ACTUAL DAMAGES, AND HAS THUS STATED A VIABLE CLAIM FOR FRAUD (COUNT II).**

As JAB notes in its brief, Count II of Akinmeji's Complaint alleges fraud and fraud by omission. (*See* FAC ¶¶78-83). After listing the elements of these claims (which Akinmeji does not dispute for purposes here), JAB argues that they fail, once again relying entirely on its contention that Akinmeji has not alleged facts "showing Plaintiff suffered actual damages," and concluding that "the Court should also dismiss Count II with prejudice for the same reason as Count I." (ECF No. 49-1, Def. Memo. at 17.) JAB's argument fails here for the same reasons as set forth above, and it should once again be rejected.

III.   **AKINMEJI HAS ADEQUATELY PLEADED A CLAIM FOR BREACH OF EXPRESS WARRANTY (COUNT X).**

To state a claim for breach of express warranty under Maryland law, a plaintiff must allege: "1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *SpinCycle, Inc. v. Kalender*, 186 F.Supp.2d 585, 589 (D. Md. 2002) (citations omitted).[27] JAB contends that Akinmeji's express warranty claim fails because no warranty was created and because he has not suffered any actual damages. Neither argument has merit.

In alleged support of its position JAB cites a string of legally distinguishable cases; i.e., *Ice v. Hobby Lobby Stores, Inc*. No. 1:14CV744, 2015 WL 5731290 (N.D. Ohio Sept. 29, 2015); *Johnson*, 2014 WL 64318; and *Camasta*; 761 F.3d at 732. Fatal to JAB's reliance on these cases is the fact that unlike Akinmeji, the plaintiffs in each of those cases failed to allege that the items

---

[27] The elements are the same under California law, where the plaintiff must allege "(1) the seller made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK AJWX, 2014 WL 3056026, at *8 (C.D. Cal. June 25, 2014).

they purchased were ***worth less*** than what they actually paid. *See Ice*, 2015 WL 5731290 at *7 (noting that "plaintiff fails to allege any reduced value in the frame he purchased"); *Johnson*, 2014 WL 64318 at * 7-8 (plaintiff failed to allege the suits he purchased were not worth the $795 he paid); *Camasta*, 761 F.3d at 740 (plaintiffs "did not allege the merchandise…[was] worth less than what they actually paid"). As explained at length previously, and in stark contrast to the plaintiffs in *Ice*, *Johnson*, and *Camasta*, Akinmeji has not only alleged that the JAB merchandise he purchased was worth less than what he actually paid, but he has provided actual evidence in support of those allegations.

The Maryland courts have consistently held that such allegations are sufficient to support a claim for breach of express warranty. In *SpinCycle, Inc. v. Kalendar*, for example, the court considered claims by the purchaser of a laundromat who alleged that the seller breached an express warranty to disclose accurate financial revenue information in statements he provided to the plaintiff prior to the sale. *SpinCycle, Inc.*, 186 F. Supp. 2d 585, 586-587 (D. Md. 2002). More specifically, the purchaser argued that the deceptive financial information was integral in her negotiating the sales price, and that as such it was part of the basis for her bargain, thus constituting an express warranty. *Id.* at 589. The Court agreed and held that the seller's promise to provide accurate financial information was indeed an express warranty. *Id.*

Similarly here, by JAB deceptively inflating its "regular" prices, JAB, like the defendant in *SpinCycle, Inc.*, created the illusion that the items being purchased were worth more than they actually were. And because Akinmeji, like the plaintiff in *SpinCycle*, purchased the goods in reliance on the deceptive information, that misrepresentation became part of a basis for the bargain, thus creating an express warranty.

## IV.   AKINMEJI HAS STATED A CLAIM FOR UNJUST ENRICHMENT (COUNT XI).

To state a claim for unjust enrichment, a plaintiff must allege "1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Thomas v. Artino*, 723 F. Supp. 2d 822, 835 (D. Md. 2010).[28] An unjust enrichment claim is equitable, and the right to restitution is subject to counter-equities that the recipients of the benefits may assert. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 297, 936 A.2d 343, 352 (2007) (citing Daniel B. Dobbs, Handbook on the Law of Remedies § 11.9 (1973)). A successful unjust enrichment claim deprives a defendant of "benefits that in equity and good conscience he ought not to keep, even though he may have received the benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." *Id.* at 295–96, 936 A.2d at 352 (citing *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 259, 886 A.2d 911, 921 (2005)).

JAB contends that Akinmeji's unjust enrichment claim fails, once again recycling its contention that he has not suffered any actual damages. (Dkt. 49-1, Def. Memo. at 21.)  That argument fails again here for the same reasons already discussed.[29]

---

[28] Once again, the elements of this claim are virtually the same under California law, where a plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000) (citations omitted).

[29] JAB's reliance on *Todd v. Xoom Energy Maryland, LLC*, No. GJH-15-154, 2016 WL 727108 (D. Md. Feb. 22, 2016), *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697 (D. Md. 2012), and *Slack v. Suburban Propane Partners, L.P.*, No. CIV.A. 10-2548 JLL, 2010 WL 3810870 (D.N.J. Sept. 21, 2010) is misplaced. None of these cases dealt with plaintiffs alleging that the products or services they paid for were *worth less* than what they paid. In *Todd*, the plaintiffs never alleged a defect with the actual energy service, in *Slack* the plaintiffs never alleged a defect with the propane, and in *Bowers* the plaintiff never alleged a decrease in the value of his home. Here however, Plaintiffs have alleged that because of Defendant's deceptive conduct, they purchased items that were actually *worth less* in value than what they paid. (*See, e.g.*, FAC at ¶¶ 45, 51.)

21

JAB also urges dismissal of the unjust enrichment claim as duplicative of a hypothetical contract claim, noting that because an unjust enrichment claim is quasi-contractual in nature, a plaintiff cannot recover on both a breach of contract and an unjust enrichment claim. (*Id.* at 22-23.) However, it is well-established that a plaintiff may allege an unjust enrichment claim in the alternative. *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009); *see also Chambers v. King Buick GMC*, LLC, 43 F. Supp. 3d 575, 624 (D. Md. 2014) (noting that "the Federal Rules of Civil Procedure allow parties to plead claims in the alternative"); *Weingand v. Harland Fin. Solutions, Inc.*, No. C-11-3109 EMC, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative.") (citation omitted); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (explaining that plaintiffs "are clearly permitted to plead alternative theories of recovery," and that "[c]onsequently, it would be premature at this stage of the proceedings") (citations omitted). Consistent with the Federal Rules, Plaintiffs may assert their unjust enrichment claim as an alternative theory of relief.

Here, Plaintiffs have unambiguously alleged that: (1) they conferred a substantial benefit on JAB by purchasing its products (FAC ¶144); (2) JAB consciously retained (i.e., knew of and/or appreciated) that benefit (*id.*); and (3) because of the deliberate misconduct JAB used to obtain and retain Plaintiffs' business, it would be unjust for JAB to retain such benefits. (*Id.* at ¶ 145.) Therefore, Plaintiffs have stated a viable unjust enrichment claim.

## V.       AKINMEJI HAS STANDING TO ASSERT CLAIMS FOR INJUNCTIVE RELIEF.

JAB argues that Plaintiffs lack Article III standing to assert a claim for injunctive relief

because they are now aware of JAB's deceptive conduct and are thus unlikely to be harmed by it

again. (Dkt. 49-1, Def. Memo. at 23.) This argument has been rejected by countless other courts

because it would essentially render the injunctive relief provisions of consumer protection statutes

meaningless and futile in meeting their remedial goals. Illustrative of this principle is *Le v. Kohls

Dep't. Stores, Inc.*, a case in which the court rejected the exact argument made by JAB here,

explaining that "were the Court to accept Kohls' position that [the plaintiff's] awareness 'of the

alleged deception [would] operate[] to defeat standing for an injunction, then injunctive relief

would never be available in false advertising cases [under the UCL], *a wholly unrealistic result*.'"

160 F. Supp. 3d 1096, 1110 (E.D. Wis. 2016) (quoting *Ries v. Arizona Beverages USA LLC*, 287

F.R.D. 523, 533 (N.D. Cal. 2012)) (emphasis added); *see also Henderson v. Gruma Corp.*, No.

CV 10– 04173, 2011 WL 1362188, at *7 (C.D. Cal. 2011) ("If the Court were to construe Article

III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would

be precluded from enjoining false advertising under California consumer protection laws because

a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter

('once bitten, twice shy') and would never have Article III standing."). Accordingly, JAB's

argument should be rejected.[30]

---

[30] It is significant to note that Plaintiff Jackson seeks injunctive relief (on behalf of herself and others similarly situated) under California's Business & Professions Code Section §17535. (FAC at ¶ 122.) Additionally, injunctive relief is sought for national class members in states where the consumer protection statutes provide for such relief. (*Id*. at ¶¶ 17, 62.)

## CONCLUSION

For the reasons set forth above, JAB's Motion to Dismiss Portions of the First Amended Class Action Complaint (Dkt. 49) should be denied in its entirety.

Date:   August 15, 2017

Respectfully submitted,

**HALUNEN LAW**

/s/ Melissa W. Wolchansky
Melissa Wolchansky (admitted *pro hac vice*)
*wolchansky@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

**CUNEO, GILBERT & LADUCA, LLP**
Beatrice O. Yakubu, Esq.
Charles J. LaDuca, Esq.
4725 Wisconsin Ave. N.W.
Suite 200
Washington, D.C. 20016
byakubu@cuneolaw.com
charles@cuneolaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 15, 2017, a copy of the foregoing was filed and served upon the following parties and counsel through the CM/ECF System for the United States District Court for the District of Maryland, unless otherwise indicated:

**MARCUS BONSIB, LLC**
BRUCE L. MARCUS, ESQ.
JOSEPH A. COMPOFELICE, JR., ESQ.
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
(301) 441-3000
(301) 441-3003 (facsimile)
bmarcus@marcusbonsib.com
compofelice@marcusbonsib.com

**ARMSTRONG TEASDALE LLP**
CHARLES W. STEESE, ESQ.
CINDY N. PHAM, ESQ.
4643 South Ulster, Suite 800
Denver, Colorado 80237
(720) 200-0677
(720) 200-0679 (facsimile)
csteese@armstrongteasdale.com
cpham@amrstrongteasdale.com

ERIC M WALTER, ESQ.
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
(314) 621-5065 (facsimile)
ewalter@armstrongteasdale.com

*Counsel for Defendant Jos. A. Bank Clothiers, Inc.*

/s/ Melissa W. Wolchansky
Melissa W. Wolchansky