```
                      IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
                            SOUTHERN DIVISION


- - - - - - - - - - - - - - - - x
                                 :
OLUSOLA AKINMEJI, et al.,        :
                                 :
         Plaintiffs,             :
                                 :
    v.                           :    Civil No. 17-1349-PJM
                                 :
JOSEPH A. BANK CLOTHIERS, INC., :
                                 :
         Defendant.              :
                                 :
- - - - - - - - - - - - - - - - x    July 17, 2018


                                      Greenbelt, Maryland


                       MOTIONS HEARING

          BEFORE:  THE HONORABLE PETER J. MESSITTE, Judge

APPEARANCES:                 BEATRICE YAKUBU, Esq.
                             Cunco, Gilbert & LaDuca, LLP
                             4725 Wisconsin Avenue, Suite 200
                             Washington, D.C. 20016
                               On Behalf of the Plaintiffs

                             CHARLES W. STEESE, Esq.
                             Armstrong, Teasdale, LLP
                             4643 South Ulster Street, Suite 800
                             Denver, Colorado 80237

                             JOSEPH COMPOFELICE, JR., Esq.
                             Marcus, Bonsib, LLP
                             6411 Ivy Street, Suite 116
                             Greenbelt, Maryland 20770
                               On Behalf of the Defendant


Audio Operator:              Jessica Ionetz

Transcription Company:       CompuScribe
                             5100 Forbes Boulevard
                             Suite 101
                             Lanham, Maryland 20706
                             (301)577-5882


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

I N D E X

Page

Preliminary Discussion                                              3

Discussion – Court and Counsel
     Re:  Counts 1 and 2

     By Charles Steese, Esq.
     Attorney for the Defendant                                     4

     By Beatrice Yakubu, Esq.
     Attorney for the Plaintiffs                                    7

Discussion – Court and Counsel
     Re:  Express Warranty

     By Charles Steese, Esq.                                        13

     By Beatrice Yakubu, Esq.                                       19

Discussion – Court and Counsel
     Re:  Unjust Enrichment

     By Charles Steese, Esq.                                        21

     By Beatrice Yakubu, Esq.                                       29

Discussion – Court and Counsel
     Re:  Consumer Legal Remedies Act

     By Charles Steese, Esq.                                        38

     By Beatrice Yakubu, Esq.                                       51

     Rebuttal by Charles Steese, Esq.                               56

     Rebuttal by Beatrice Yakubu, Esq.                              62

Discussion – Court and Counsel
     Re:  Counts 3, 4 and 5

     By Charles Steese, Esq.                                        65

     By Beatrice Yakubu, Esq.                                       77

Findings by Judge Peter Messitte                                    79

KEYNOTE:  "---"   Indicates inaudible in transcript.
          "*"     Indicates phonetically spelled in transcript.

dmh                                                                                    3

1                        P R O C E E D I N G S

2           (Whereupon, at 10:16 a.m., the proceedings began.)

3               THE CLERK:  All rise.  The United States District

4    Court for the District of Maryland is now in session.  The

5    Honorable Peter J. Messitte presiding.

6               THE COURT:  Ladies and gentlemen, have a seat

7    please.

8               MS. YAKUBU:  Good morning, Your Honor.

9               MR. STEESE:  Good morning, Your Honor.

10              MR. COMPOFELICE:  Good morning.

11              THE COURT:  Good morning.  Call the case, please.

12              THE CLERK:  The matter now pending before this Court

13   is Civil No. PJM-CV-1349, Akinmeji, et al., versus Joseph A.

14   Bank Clothiers, Inc. for a motions hearing.

15              THE COURT:  Would counsel identify yourself for the

16   Plaintiffs.

17              MS. YAKUBU:  May it please the Court, Beatrice

18   Yakubu, on behalf of the Plaintiffs.

19              THE COURT:  And for the Defendant?

20              MR. STEESE:  Your Honor, Chuck Steese on behalf of

21   the Defendant, Joseph A. Bank.

22              MR. COMPOFELICE:  Good morning, Your Honor, Joseph

23   Compofelice on behalf of the Defendant.

24              THE COURT:  All right.  Unless there is something

25   preliminary, I would like to take a certain approach to this

dmh                                                                    4

1   case that will help me understand where we are because there

2   is a lot of overlap argument depending on the counts involved.

3   So rather than you have launch into elaborate factual

4   developments at this point, which I think I understand from

5   your pleadings, I would like to focus on a couple of basic

6   issues.

7          And the first what I would like to do, I have kind

8   of parsed this case up according to what I call blocks.  And

9   the first block of issues that I would like to talk about,

10  block one, refer to Counts 1 and 2, Count 1 being a violation

11  of the Maryland Consumer Protection Act, Count 2 being fraud

12  and fraud by admission under Maryland Common Law.

13         And as I understand it, it is Mr. Akinmeji who is

14  seeking to the class rep in reference to those claims.

15         The essence of the defense that I understand from

16  the Defendant as to why those counts should be dismissed is

17  essentially because there has been no allegation of actual

18  damage under the two causes of action.

19         So I would like to start with just those two issues

20  first.  If you have something else to argue on those counts,

21  you can but I think that is the gist of the Defense and I

22  would like to address those first.  All right.  Mr. Steese?

23         MR. STEESE:  Your Honor, Chuck Steese on behalf of

24  Joseph A. Bank.  It is good to be back in front of Your Honor

25  and may it please the Court, Your Honor, last we were here we

1    spoke at great length about Counts 1 through 3 and the fact

2    that there were a series of cases that had been issued

3    including the Camasta case in front of the 7th Circuit.

4           That specifically focused on the exact same

5    equivalent Consumer Protection laws as exists in Maryland and

6    has found that when you look at the allegation here, which is

7    buy one suit, get some number of suits for free, that the

8    Plaintiff or Plaintiffs received exactly what they bargained

9    for.

10          They come in, they can inspect the suits.  They can

11   see the suits.  They see the price tags.  They see what is

12   there.  They make a decision and there is no theory of actual

13   damage that they can possibly make.

14          We argued that at great length last -- in November

15   and I have nothing to add to that argument other than what I

16   said then, the Camasta case, the case from Ohio, the case from

17   New Jersey all specifically found that those claims cannot

18   survive.

19          THE COURT:  Well, I have raised a slightly different

20   issue which was the lack of damages.  You are arguing I think

21   that there is not a cause of action based on the merits.  That

22   there is nothing misleading here which is a slightly different

23   argument although it goes to the same ultimate conclusion.

24          And getting into whether a claim is stated or not,

25   that seems to cut across almost every count in the complaint

1   with the exception maybe of the California Unfair Competition

2   Law.

3           But I want to focus on damages for a moment.  Are

4   you conceding that argument that they have alleged damages or

5   not?

6           MR. STEESE:  I thought I just raised that so I will

7   be more precise.

8           THE COURT:  No, I think you are saying that nobody

9   is misled.  They got what they bargained for.  Is that the

10  same thing as saying they have not suffered any damages?

11  Maybe it is.

12          MR. STEESE:  Your Honor, the whole point is all of

13  those cases, the Camasta case, the Ohio case, the New Jersey

14  case, all said because you got exactly what you bargained for,

15  there can be no damages as a matter of law.  You cannot

16  state --

17          THE COURT:  Okay.  That is the thread that I was

18  missing.

19          MR. STEESE:  You cannot state a cause of action for

20  damage when you walk into a store, get exactly what you

21  bargained for and as a result, there can be no damage.

22          THE COURT:  There is no actual injury.  That is what

23  I understood your argument to be under Maryland law that you

24  must have under the Maryland Consumer Protection Law and the

25  Common Law Fraud claim, you have to show actual damages and

1   saying I might have bought something somewhere else or

2   whatever without actual damages is simply not viable.

3           MR. STEESE:  Exactly.  And we argued this at great

4   length.  I have much to argue about Counts 3 through 11.

5           THE COURT:  All right.  Well, that we can get to but

6   I need --

7           MR. STEESE:  I have nothing to add to what I said

8   before.

9           THE COURT:  All right.

10          MR. STEESE:  And so I prefer to preserve my time for

11  those other arguments.

12          THE COURT:  No, we are going to go back and forth on

13  these different blocks.  We are not doing consecutive argument

14  by counsel.

15          Ms. Yakubu, do you want to respond to their position

16  on Counts 1 and 2?

17          MS. YAKUBU:  Good morning, Your Honor.  The

18  Defendant contend that Plaintiffs received exactly what they

19  bargained for but that is not correct.  That is not what

20  Plaintiff alleges.

21          Plaintiffs were told that they could buy one suit

22  that was worth $875 and get three suits free.  Plaintiffs

23  would not have purchased the suit for the amount that they did

24  had they known that the suit they purchased was not worth

25  $875.  So the damages is the increment, the actual money that

1     they paid was their economic injury.

2               They did not get what they bargained for.  They

3     wanted one suit for $875 and three suits for free.  That is

4     not --

5               THE COURT:  What is the damage though?  What is your

6     damage?

7               MS. YAKUBU:  The damage would be the difference

8     between how much the suit actually costs and what they paid

9     for the suit.

10              THE COURT:  But you got four suits, did you not?

11              MS. YAKUBU:  You got four suits but you were told

12    you were getting three suits for free and free means they have

13    no cost and that is what you are bargaining for.

14              You are bargaining for three free suits and if you

15    would not have purchased the $875 suit, at some point they

16    were as low as $150.  All Joseph A. Bank did was increase the

17    amount of that suit way over the regular price and then

18    mislead consumers to believe that they were --

19              THE COURT:  Well, I know what you are talking about

20    misleading and a lot of things like that.  The question is

21    what is your hard damage?  What would you want to get out of

22    this suit?  Do you want some money?  If you do, tell me how it

23    is measured.  How do you measure the damage here?

24         (Pause.)

25              MS. YAKUBU:  Your Honor, the damages would be

1  measured by the difference in the actual value of what was

2  parted with and what was received.  That would be the damages.

3          THE COURT:  Well, what would that be per suit?  Is

4  that three times -- I do not know.

5          MS. YAKUBU:  Okay.  Well, Plaintiff Akinmeji, paid

6  $875 for a suit with an actual value of as little as $157.  So

7  the difference would be $718.  That would be his damages.

8          THE COURT:  All right.  Mr. Steese, what do you say

9  about that that she is arguing that they are entitled to $700

10  plus dollars because that is really what they lost here?

11          MR. STEESE:  Let's look at the math and make the

12  math simple.  Let's assume you buy one suit for $800 and get

13  three free and what she is saying is there was an instance

14  where one of those suits was on sale for $157 and so if you

15  multiply -- well, let's $150 because I can do the math easier,

16  so that means that those four suits are really only worth $600

17  and so, therefore, my damage delta is $200.  That is the

18  argument.

19          But the problem with that argument is that means you

20  can never put an item on sale in the United States of America.

21  If you look the whole point is that if you ever put an item on

22  sale, that means that the advertised price is always

23  fraudulent and that is exactly why when you walk into a store

24  and you look and it says buy one get one free, buy one get two

25  free, three free, whatever it is, you have an opportunity to

1    look at the goods.

2         You have an opportunity to inspect the goods.  You

3    have an opportunity to make a conscience choice about whether

4    or not you are going to purchase these items of clothing.  And

5    the simple fact that items go on sale is not something

6    surprising to anyone who lives in this country.

7         And I recall last we were here Your Honor said words

8    to the effect that do you want me to start an assault on the

9    entire retail business in the United States?  Because that is

10   what the Plaintiff is asking you to do.

11        They are asking you to find that sales promotions in

12   retail stores are fraudulent and that absolutely is not the

13   case.  How many instances, Your Honor, have you walked into a

14   store and it says buy one get one free?  Is every single one

15   of those parties are they always defrauding?  Do people really

16   think that the retailer is cutting prices to the point where

17   they are losing money?

18        That is the whole reason why Camasta, Ohio, New

19   Jersey and other courts have consistently found -- with one

20   exception in California, Inayos*, that you cannot state actual

21   damages in that circumstance.  Every single court.

22        THE COURT:  All right.

23        MR. STEESE:  And we ask Your Honor to do the same.

24        THE COURT:  Do you want to respond on that precise

25   issue, Ms. Yakubu?

dmh                                                                    11

1           MS. YAKUBU:  Yes, Your Honor.  In reference to the

2    cases that Defendant cite, those cases are distinguishable

3    from this case because in this case the Plaintiffs allege that

4    the items they purchased were worth less than what they paid

5    for them.  None of those cases did that.  Waldron v. Joseph A.

6    Bank, Camasta, Ice*, Kim.

7           THE COURT:  Just as an aside, suppose they had

8    overpriced the suit by four times its value, what is illegal

9    about that?  I mean somebody can price a suit for $875 if it

10   is only worth $157 but where is the illegality to say this is

11   our regular price but you are going to get four in effect if

12   you pay the same price?  What is wrong with that?

13          MS. YAKUBU:  Well, Your Honor, it is not their

14   regular price.  They are engaging in deceptive pricing

15   practices.  A suit that they would normally sell for $157,

16   they will charge four times that amount for one suit and then

17   label three suits for free.  That is deceptive.

18          THE COURT:  And how is this different though from

19   the whole range of buy one get multiple additional product

20   free.  Are you really making an assault for the entire

21   commercial industry?

22          MS. YAKUBU:  No, Your Honor.  Every case is

23   different.  I would have to look at each case individually and

24   see --

25          THE COURT:  But there are thousands of cases.  These

1   things go on every -- I do not know how things I get in the

2   mail, buy one get one free.  And it is not just suits, it is

3   anything.

4           MS. YAKUBU:  Right.

5           THE COURT:  On TV every day.  Act now, you get three

6   free, you know, I mean I am not sure how one -- what the

7   distinguishing principle is with this case than every other

8   one and how are you damaged really?

9           MS. YAKUBU:  I agree, Your Honor.  There are many

10  advertisements and, again, each case has to be looked at

11  individually for the facts of that case.

12          As far as buy one get one free, Joseph A. Bank they

13  inflate the price of the buy one and I do not want to speak on

14  facts that I do not know but I will just give an instance of

15  an example I think like of Pizza Hut, like a sale of pizza,

16  buy one get one free.

17          To my recollection when I buy pizza and it is buy

18  one get one free, the pizza I am paying for is like the

19  regular price.  It does not double or triple so that I am

20  really paying for two pizzas under the guise of paying for

21  one.

22          You know, I cannot speak of any other things but I

23  know for like in the realm of pizza if I buy one and I get one

24  free, I do not spend more than I normally would spend on one.

25  But in this case, they inflate their price.

1          If the suit can sell for $157 one day and in a

2   matter of a short period of time it can sell for $875 and then

3   three suits free, it is deceptive marketing and people really

4   think that they are getting three free suits and if the three

5   free suits are supposed to be free but, you know, they are

6   suits so, of course, they may be worth something but that is

7   not what they are promising.

8          They are promising you free suits not, here, let's

9   --- the amount of the suit on one suit and then give you three

10  but you are really paying for the three.  That is deceptive.

11         THE COURT:  All right.  Let's pass this please.

12  Let's go on to the second block of issues that I want to talk

13  about and those are Counts 10 and 11, 10 for breach of

14  warranty and 11 for unjust enrichment.

15         Now, as I read the cases and as I understand the

16  Defendant's argument, they are basically saying no such cause

17  of action either in Maryland or California.  Mr. Steese, you

18  want to pick up on that.

19         MR. STEESE:  Your Honor, give me one moment.  I had

20  that a little later --

21         THE COURT:  This is the breach of express warranty

22  and the unjust enrichment claims.

23         MR. STEESE:  I understand exactly.  I just had it a

24  little later in my outline so I will get right to it.

25         THE COURT:  Well, I need to do it this way because

1   there is an area that -- some of these are easier issues to

2   respond to, others are a little more complicated.

3          MR. STEESE:  Right.

4          THE COURT:  Am I correct in an eye view that you are

5   arguing that there is no such cause of action either under

6   Maryland or California law as to -- frankly, either as to

7   breach of express warranty or unjust enrichment?

8          MR. STEESE:  Your Honor, that is correct and I will

9   argue breach of warranty first and I will argue unjust

10   enrichment second.

11          THE COURT:  All right.

12          MR. STEESE:  And if you look at Joseph A. Bank's

13   arguments, their argument is Counts 3 through 11, just to give

14   a brief overview, all of them fail for statute of limitations

15   reasons except for Count 10.

16          Count 10 is the one claim that when you look at it,

17   it survives scrutiny on statute of limitations in Maryland and

18   in California.  It is a four years statute of limitations and

19   those claims would have been brought timely by Plaintiff

20   Jackson.

21          And so this is the only claim which is only being

22   brought on the merits.  So, Your Honor, I put in front of Your

23   Honor a binder which has 24 tabs and I am going to refer to a

24   couple of those and you are welcome to look but I will put up

25   the key language on the Elmo so you can see.

dmh                                                                              15

1          If you look at Count 10 for breach of warranty, the

2     complaint, Paragraph 134 says, Joseph A. Bank provided the

3     class with written express warranties and those warranties

4     were that the regular price on the tags were the actual

5     prices.

6          Paragraph 136.  Defendant breached that warranty

7     because they never sold or intended to sell the items at

8     regular price.

9          Finally, Paragraph 7 of the complaint which is

10    incorporated into Count 10.  That Defendant set the prices and

11    that that impacted the "value" of the products that the

12    Defendants, excuse me, that the Plaintiffs actually received.

13         So the essence of their express warranty claim is

14    that Plaintiffs advertised suits and they received suits and

15    we just heard Plaintiffs' counsel say this, that had a value

16    that was less than what was advertised.

17         So now, Your Honor, let's look at Tab 19 and I will

18    put it right on the overhead but that way you can track with

19    me and look back at this.  Tab 19 is the language of

20    California's Uniform Commercial Code breach of warranty

21    sections.

22         Article 2 of the UCC, the same language appears in

23    Maryland and it specifically says in Section 2313(1)(2), an

24    affirmation merely of the value of the goods or a statement

25    purporting to be merely the seller's opinion or commendation

1   of the goods does not create a warranty.  Point blank it says

2   that.

3           Their argument is that the advertisement described a

4   particular value.  That is exactly what they allege.  Now

5   let's look at Tab 20 which is the Hobby Lobby case out of the

6   Northern District of Ohio.

7           I have the key language highlighted.  You can see we

8   are talking about breach of warranty and they claimed there

9   that there was an express warranty created because Hobby Lobby

10  said there is always 50 percent off the marked price but they

11  failed to deliver an actual discount of 50 percent.

12          Just a bit farther down they cite to the exact same

13  Ohio statutory provision which says a warranty cannot be

14  created by a statement of purported value.  It has to be

15  something objective.  In this case a certain thread count, an

16  item is stain resistant, something objective about the goods.

17          But here because it was a statement of value, there

18  could be no breach of express warranty claim and as a result,

19  they dismissed.  That is exactly what we have here.

20          Now, in contrast, Your Honor, they cite to what I

21  have in Tab 21 which is a case from the Northern District of

22  California, the Munning case.  And, again, I will put it in

23  front of Your Honor.

24          You see we are talking about the breach of warranty

25  claim and they are citing to California and the California

 1  requirements which I just referred to in Tab 19.  And it talks

 2  about prong 1, not prong 2 of the statute where it says any

 3  affirmation of fact about the goods can constitute a warranty.

 4         Now, Your Honor, one of the issues that has arisen

 5  in Article 2 UCC cases under breach of warranty claims is what

 6  if I have a contract and it has a statement about warranty in

 7  it?  Clearly a warranty exists.

 8         But what if there are marketing materials that a

 9  person looks at that says here is what this particular good

10  can do.  This particular good can test 10 samples in 14

11  seconds, something very objective.  Even though the words

12  warranty are not created or written there, a warranty can

13  still exist.

14         The focus of the <u>Munning</u> case is that specific

15  issue.  He focuses on a couple of cases that you can see I am

16  pointing to and he says -- he is focusing on written brochures

17  and says, warranties can emanate from written materials other

18  than your standard contract.  That is nothing new.  That has

19  been established in the law now for decades.

20         But the noticeable problem with the <u>Munning</u> case is

21  they do not look at subparagraph (2).  Again, looking at Tab

22  19, they never look at this language that says a statement

23  about the value of the goods does not create a warranty.  The

24  judge there never analyzes that particular issue.

25         And on the motion to dismiss he says with this legal

1    authority, an advertised discounted price can constitute an

2    express warranty.  So he makes this conclusion that it can be

3    an express warranty without looking at the key provision that

4    says it cannot be.

5            So from our perspective, Your Honor, that case is

6    not only non-persuasive, it is incorrect in not looking at

7    prong 2 of the statute which is the critical question that the

8    Northern District of Ohio focused on and used as the basis for

9    dismissal.

10           We are in the exact same position.  They are

11   claiming we made statements about the value of the goods.

12   These are, you know, buy one suit for $800, you get three free

13   noting a particular value.  Each suit has a value of $800 and

14   they are saying that creates a warranty.

15           Under the plain language of the UCC, whether it is

16   in Maryland for Mr. Akinmeji or in California for Ms. Jackson,

17   that cannot state a cause of action as a matter of law.  The

18   express language prohibits it.

19           THE COURT:  All right.  Let me hear from Ms. --

20           MR. STEESE:  Oh, wait.  Do you want me to go to

21   unjust enrichment first?

22           THE COURT:  Well, I do not know how brief you are

23   going to be.  I would like to sort of hear the position the

24   opposing argument.

25           MR. STEESE:  You just said you wanted both.

1          THE COURT:  We will go back and forth.  Yes, but we

2   are doing these two as a block.

3          MR. STEESE:  No problem.

4          THE COURT:  But let's parse that as well.

5   Ms. Yakubu, talk about express warranty.

6          MS. YAKUBU:  Your Honor, under the California

7   Commercial Code, any description of the value of the goods

8   which is made part of the basis of the bargain creates an

9   express warranty that goods shall conform to the description.

10          JB's false --- constituted descriptions which form

11   the basis of the bargain for Plaintiffs' purchases and in

12   doing so created express warranties.

13          In this case, Your Honor, Plaintiffs saw $875.  They

14   saw a suit that cost $875.  If they could get this suit and

15   they could get three other suits free.  Based on that

16   reliance, they purchased the suits.

17          So when Plaintiffs purchased those suits, they

18   believed that they were getting a suit worth $875.  They would

19   not know that maybe a month or two earlier that the suit was

20   $157 or $199.  They did not know that.

21          So they thought they were getting a suit worth $875.

22   The Munning case that Defendant referred to, that case did

23   mention -- that case did recognize the distinction between

24   express warranties formed under both 1(a) and 1(b) on page 24.

25          So Defendant's contention that they did not address

1    the second prong is incorrect.  It is right there in the case.

2            THE COURT:  Well, show me where they do talk about

3    the second prong.  I mean let's go back to the second prong.

4    An affirmation merely of the value of the goods or a statement

5    purporting to be merely the seller's opinion or commendation

6    does not create a warranty.

7            Now, how does the U.S. District judge interpreting

8    Ohio law deal with that?

9            MS. YAKUBU:  Can I use this?  Thank you.

10           THE COURT:  I do not see any discussion of the

11   second part.

12           MS. YAKUBU:  Okay.  Well, it states the validity of

13   this claim hinges on whether description of a discounted price

14   can constitute a basis of the bargain under 2313(b).  And then

15   it goes on further to discuss the issue and states in light of

16   this legal authority, this court agrees with the Plaintiff.

17   An advertised discounted price can constitute an express

18   warranty.

19           THE COURT:  Where does he deal with sub (2) though

20   of the California Code?  Sub (b) does say that a description

21   of the goods creates an express warranty that the goods can

22   form but (2) says but mere affirmation of value does not

23   create a warranty.  Where does it say that in the judge's

24   opinion in the Munning case?

25           Start with 2313(a), that's no problem there.  It

1    goes to 2313(b).  No problem there.  It does not say anything

2    about 2313(2).  I do not see any coming to terms with that at

3    all.  Well, all right.  Let's --

4              MS. YAKUBU:  I apologize.

5              THE COURT:  No, it is not in there.  I assure you.

6    I just do not see it.  It is simply not in there.  There is no

7    reference to sub (2) of that statute at all.

8              So, all he is saying is generically, sure, you can

9    create express warranties.  Affirmations of certain things are

10   express warranties.  This is not.  That is what the statute

11   says.  Well, you can certainly cite the case as authority for

12   your position.

13             MS. YAKUBU:  Right.

14             THE COURT:  What I am telling you is the case looks

15   a bit shaky because it does not seem to be a very thorough

16   analysis and let's be candid, District Court judges are not

17   always correct in their decision making so.

18             MS. YAKABU:  Right.

19             THE COURT:  All right.  Let's talk about unjust

20   enrichment, Mr. Steese.  And, again, I understand you to be

21   saying that there is no cause of action for that as well.

22             MR. STEESE:  And, Your Honor, very briefly, do you

23   have the binder that I provided to you?

24             THE COURT:  Yes.

25             MR. STEESE:  In the very first three pages there are

1    two charts.  If you pull those out, and it will help me to --

2    and you look at the third page, there is a page that has

3    statute of limitations.

4            THE COURT:  Okay.  I think -- well, go ahead, I will

5    let you argue limitations.

6            MR. STEESE:  I am just going to make one point very

7    briefly and then go to the merits.

8            THE COURT:  Okay.

9            MR. STEESE:  If you look at the bottom count, Count

10   11, it says unjust enrichment under both California and

11   Maryland law, there is a three year statute of limitations.

12   They brought this case three years and a half later.

13           Well, they are going to say but, wait, there is

14   tolling.  But, Your Honor, there is only tolling as to the

15   exact claims that were brought in the initial action.

16           The unjust enrichment claim was not contained in the

17   underlying Lucas case and so, therefore, there can be no

18   tolling for unjust enrichment under any circumstance.  And so

19   under both states' statutes of limitations it cannot survive

20   but on the merits it also cannot either.

21           And the reason is California does not recognize an

22   independent claim for unjust enrichment and I am going to have

23   you to turn to Tab 22 which is the In Re: Milo Dog Treats

24   case.  I had to say that just because it is a fun name.

25           And you can see here we are talking about unjust

1   enrichment and it says here it cannot be disputed that is

2   little concession on state or federal courts about whether

3   California recognizes a separate cause of action for unjust

4   enrichment.

5        They do say that and they cite to several cases that

6   say there is a cause of action and then they cite to several

7   cases that say there is no cause of action and the right here

8   and down, this particular judge says, a line of cases, a

9   lateral line of cases which is there is no cause of action,

10  strike it.  I will say it better.

11       The undersigned cases are in the lateral line of

12  cases persuasive particularly as Plaintiff has not argued that

13  the claim should go forward under a quasi-contract theory.

14       And it is evident from the allegations of the

15  complaint that the Plaintiff is seeking restitution for loss

16  of monies incurred by --- imputative classes as a result of

17  purchasing a particular good.

18       Moreover, not only does Plaintiffs' claim of unjust

19  enrichment rest on the same facts upon which her statutory

20  claims are based -- here by the way, Your Honor, what

21  statutory claims were brought?  The exact same statutory

22  claims in California as are brought here, consumer fraud

23  claims, and under those statutes they can get restitution.

24       And you can see right here they are citing to those

25  exact same statutes and says under those circumstances they

1  cannot bring a claim for unjust enrichment.

2          Your Honor, we have cited to a number of cases in

3  our papers and there is case after case that talk about there

4  is this delta, this difference of view about whether unjust

5  enrichment does or does not exist.

6          In the last -- and I am pulling this number a little

7  bit out of a hat, five or six years or so the cases have

8  consistently found that when there is statutory claims with

9  similar remedies such as you have here, there can be no claim

10  for unjust enrichment when that claim is premised upon the

11  exact same allegations.

12          That is exactly what we have here.  We have a

13  circumstance where the Plaintiff, here Plaintiff Jackson in

14  California is arguing.  There is the statutory violations but

15  there is also a violation -- I mean an unjust enrichment claim

16  for the exact same thing and that is there was this good, it

17  was claimed that it was, you know, $800.

18          Buy one at $800, get three for free and the same

19  allegations underlie the unjust enrichment.

20          Now, the Plaintiff cites to a 9th Circuit case and

21  says this is no longer good law.  Well, then I turn you to Tab

22  23 which is another case from the Central District of

23  California and this the Browning v. Unilever United States

24  case and, again, we are talking about unjust enrichment.

25          And as you can see, and I am totally joking -- there

1   we go.  As you can see, it says specifically in California

2   there is not a standalone cause of action for unjust

3   enrichments.

4          Oral arguments Plaintiffs cited an unpublished 9th

5   Circuit opinion, this Natalia v. Bruton case.  That is the

6   exact case the Plaintiffs have cited to you here but Bruton

7   seems to be relying on an insurance case.  It is not

8   persuasive here.

9          In other words, that case is (a) unpublished.  In

10  the 9th Circuit there is a specific rule that says do not cite

11  to unpublished opinions and there is all kinds of reasons why

12  the 9th Circuit says that and they cite to that case

13  nonetheless but even a court in California subject to the 9th

14  Circuit looks and specifically says that case is relegated to

15  the insurance context.  It is not applicable here and,

16  therefore, finds it unpersuasive.

17         The exact same is true here.  There is case after

18  case which does exactly what we have here where there is some

19  alleged statutory violations, which I know we will get to in a

20  moment, and there is claims for unjust enrichment.

21         In those circumstances, California courts

22  consistently say there is no cause of action for unjust

23  enrichment and we ask Your Honor to do the same.

24         THE COURT:  All right.  What about Maryland?

25         MR. STEESE:  I am sorry?

1           THE COURT:  What about Maryland.  This count, as I

2    understand it, is a count that -- I am not sure whose law they

3    are actually relying on in Count 11 it is either Maryland or

4    California or both.  It is on the basis of the nationwide

5    class and the interesting question is, well, you have these

6    nationwide claims, whose law are you relying on to make your

7    case?

8           I do not necessarily understand it to be California

9    law.  We are in Maryland.

10          MR. STEESE:  Fair enough, Your Honor.  We discussed

11   this briefly before.  I do not recall -- I did not have in my

12   mind whether Maryland recognizes a cause of action for unjust

13   enrichment.  I am going to say I am going to presume yes.

14          THE COURT:  Well, they do not when there is a sales

15   contract.  So I think we understood your argument when it was

16   briefed that there is essentially a sales contract here when

17   there is either a sales document that is involved.

18          MR. STEESE:  Understand.  Okay.  Then, Your Honor, I

19   apologize.  I was not coming prepared to address that

20   particular issue.

21          THE COURT:  Well, I mean think about the larger

22   question.  When you get these nationwide claims, whose law are

23   you relying on?  You cannot pick any state you want, can you?

24          MR. STEESE:  The answer is no.

25          THE COURT:  Okay.

1              MR. STEESE:  And this is the reason why you cannot

2    have a nationwide class and we argued this last time and that

3    is the *lex loci delicti* choice of law provisions mandated by

4    Maryland.

5              What you have is there in tort claims, which is what

6    they are claiming here, or in contract which is more of an

7    unjust enrichment, the rules work as follows:

8              Where the harm occurred is where the state law

9    occurs, one.  And in tort or, excuse me, in contract claims is

10   where the contract was executed, i.e., where the clothes were

11   purchased is where the cause of action arises.

12             In both circumstances, a Maryland purchaser is bound

13   by Maryland law.  A California purchaser is bound by

14   California law.

15             THE COURT:  Well, in California, as I understand it,

16   there was a store purchase in Maryland that was an online

17   purchase.  Is that right, by a Maryland resident, then

18   Maryland resident?  So the question would be where that -- I

19   mean I also understand there is an argument that the

20   Plaintiffs making that if Ms. Jackson gets knocked out

21   somehow, Mr. Akinmeji can step in her shoes as a California

22   plaintiff.  Maybe I am wrong on that.

23             MR. STEESE:  That is only on the California common

24   law claim, common law fraud claim.

25             THE COURT:  Of course, it is whether he has got

1    standing to make that claim though.

2              MR. STEESE:  We can discuss that separately but that

3    is exactly correct.  The whole point here is, Your Honor, in

4    our in initial motion papers, when you look at unjust

5    enrichment, the law of unjust enrichment is very much state

6    specific.

7              There is case after case where parties try and

8    certify a national class using unjust enrichment and courts

9    uniformly reject it because the law of the states is so

10   different.

11             And here with *lex loci* being the specific choice of

12   law obligation under Maryland, it is simply impossible to

13   certify a national class for unjust enrichment.

14             THE COURT:  Well, you have argued California law to

15   me now though, not Maryland law and maybe Maryland law should

16   be the one that would answer the question.

17             MR. STEESE:  The answer is no.  I was looking at the

18   complaint from Jackson's perspective.  Plaintiff Jackson seeks

19   a cause of action under California unjust enrichment.

20   Potentially, Plaintiff Akinmeji -- I can never say his name so

21   forgive me for butchering it -- states or tries to state

22   potentially a cause of action for unjust enrichment under

23   Maryland law.

24             THE COURT:  Right.

25             MR. STEESE:  And so I addressed Ms. Jackson's

1  claims.  As to Mr. Akinmeji, you are correct.  You brought my

2  memory back and that is when there is a specific sales

3  contract, here there is, the law specifically states when you

4  look at the price tag, that is an offer for sale.

5        When you go up and say I am willing to buy these

6  suits for blank dollars, that is the offer of a contract and

7  acceptance is when we take your dollars.  And the cases,

8  again, under the Uniform Commercial Code are uniform, that

9  that is what creates the binding contract.

10       And when there is a binding contract, sale, signed

11 for the good or whatever it is, then there can be no unjust

12 enrichment claim but beyond that, Your Honor, in the unjust

13 enrichment context in the Camasta case, in the Ohio case, in

14 the New Jersey case, all of them uniformly rejected claims for

15 unjust enrichment for the same problem of actual damages that

16 we discussed earlier today and I will not restate it.

17       THE COURT:  All right.  Let me hear you on unjust

18 enrichment, Ms. Yakubu.  And whose law are you arguing here?

19       MS. YAKUBU:  Maryland law.

20       THE COURT:  Okay.

21       MS. YAKUBU:  And it is in the complaint.

22       THE COURT:  Do you have any Maryland cases in your

23 binder?  Did you submit a binder?

24       MS. YAKUBU:  It is right here.  It is right here.

25       THE COURT:  Did you submit a binder for the Court is

1   what I am asking?

2            MS. YAKUBU:  Yes.

3            THE COURT:  Okay.  Do you have a binder from her?

4            THE CLERK:  No.

5            THE COURT:  Okay.  Well, do you want to submit one

6   now or -- okay.  Is it your only copy?

7            MS. YAKUBU:  No, I do have a copy here but I only

8   tabbed your copy.

9            THE COURT:  Okay.  Mr. Steese, do you have a copy of

10  her cases?

11           MR. STEESE:  I have a copy of the cases without the

12  tabs but I am perfectly fine with her providing the one with

13  the tabs to Your Honor.

14           THE COURT:  In order to -- if I follow your argument

15  under Maryland law, I would like to see your citations to

16  cases.  So hand the volume to her if you will?

17           MS. YAKUBU:  Okay.

18           THE COURT:  Thank you.  What do you propose you do,

19  pull out case by case or?

20           MS. YAKUBU:  Okay.

21           THE COURT:  No, I can take the whole binder.  That

22  is what I am asking.  Usually when we have these arguments, we

23  ask counsel to bring a binder of the cases that they are going

24  to cite so the Court will have them in front.

25           MS. YAKUBU:  Right.

1          THE COURT:  Did you do that?

2          MS. YAKUBU:  Yes, I did that, Your Honor.

3          THE COURT:  Okay.  If you just hand the whole binder

4    then to the Clerk?

5          MS. YAKUBU:  Okay.  I did not index them in the

6    beginning so I looked for the case --

7          THE COURT:  Okay.  Now, go ahead on Maryland law and

8    if you have cases to cite, I would like to see them.

9          MS. YAKUBU:  Okay.  Yes, Your Honor, unjust

10   enrichment under the Federals of Civil Procedure --- allows

11   for alternate pleadings.  In Astiana v. Hain Celestial, the

12   9th Circuit noted that allowance of alternate theories of

13   relief -- noted the allowance of alternate theories of relief

14   citing to the Federal Rules.

15          --- v. Flower Bakeries, Wineguard v. Harlin

16   Solutions*, they all allowed alternate theories of pleading.

17          THE COURT:  Well, no question about that.  Show me

18   where unjust enrichment is recognized in Maryland, under what

19   circumstances.  Go right to your case that shows me that.

20          MS. YAKUBU:  Your Honor, I apologize.  I did this --

21          THE COURT:  I understand that alternate theories are

22   possible.  That is standard pleading.

23          MS. YAKUBU:  Right.  Like I prepared today for the

24   California --

25          THE COURT:  I know I am taking you a little by

1   surprise by coming at it this way.

2            MS. YAKUBU:  Yes, so I did not put any Maryland

3   cases in there.  I was basing it on California claims.  Our

4   second opposition brief, those are the cases I put in the

5   brief.

6            THE COURT:  Well, is there a case that you have

7   cited that says a standalone cause of action is recognized for

8   unjust enrichment or are there circumstances when it is not?

9   Unjust enrichment is, I mean in my general experience,

10  recognized as an equitable remedy in Maryland but the question

11  really is are there circumstances under which it is not

12  recognized?

13           MS. YAKUBU:  I do not believe so.  To my

14  recollection -- in our first brief we probably did state that.

15  To my recollection I know that -- I believe that unjust

16  enrichment is a standalone cause of action in Maryland.  It is

17  allowed in Maryland.

18           THE COURT:  All right.  Just a second.

19           MS. YAKUBU:  But I apologize.  I do not have any

20  case law on that.

21           THE COURT:  Do you have anything more to say about

22  that then?  I mean how -- what are you relying on?  You are

23  just not prepared on the issue of whether Maryland recognizes

24  the cause of action?

25           MS. YAKUBU:  Yes, they do recognize the cause of

1   action.  I apologize, Your Honor.  I only did California -- I

2   was only prepared for the California, the second brief today.

3           THE COURT:  Well, let me ask you just as a general

4   practice, why are you only prepared for the California?  As I

5   understand it, you are seeking nationwide class recognition in

6   Count 11.  Why prepare just for California?

7           MS. YAKUBU:  I apologize.  I thought we did but,

8   first of all, our argument was on the Maryland --

9           THE COURT:  No, no, no, but think about the case for

10  a minute.  It is one of the problems in your case.  I am not

11  sure whose law -- here you are in Maryland.  You are seeking

12  nationwide certification under California law.  I mean right

13  off the bat that puzzles me.  Why are you seeking nationwide

14  certification in Maryland for a California cause of action?

15  Is that even possible?

16          One would think that at a minimum you would come in

17  prepared to talk about -- well, maybe you are not prepared but

18  whatever.  The essence of what the Court would require was at

19  least tell me under Maryland whether it is a cause of action

20  that is recognized.

21          And that is really the issue.  I do not know why you

22  jumped to California law.  Interesting to talk about

23  California law, why don't we talk about Utah law?  Why don't

24  we talk about anybody's law?  What difference does it make if

25  we are in Maryland?

1          MS. YAKUBU:  Right.

2          THE COURT:  I mean that kind of is the problem with

3     nationwide class certification.  It is just not clear.  We

4     have one Plaintiff and I am frankly -- and let's go to Count

5     11 for a minute so that I understand where you are.

6               Plaintiffs re-allege by errance* and I am not sure

7     whose those Plaintiffs are but I assume the named Plaintiffs

8     are Akinmeji and Jackson.

9          MS. YAKUBU:  Yes.

10         THE COURT:  I mean Akinmeji have standing to make a

11    claim as a class representative under California law?  I mean

12    leave aside limitations and a lot of other issues.  Can he

13    come into Maryland essentially as a Maryland -- he is an

14    Illinois resident I think now but he was a Maryland resident

15    when he made the purchase but can he assert a claim under

16    California law?  Could he assert a claim under the law of any

17    of the 50 states?

18         MS. YAKUBU:  Well, Your Honor, Defendants have

19    stated that their headquarters are in California.  Well, under

20    common law fraud claims, Plaintiff Akinmeji can assert claims

21    under California law because Defendant's headquarters is in

22    California.

23         THE COURT:  Well, I thought you argued -- well,

24    there is general jurisdiction in Maryland and California?  I

25    thought you agreed that general jurisdiction was in Maryland

1   and they have general jurisdiction in California too?

2                MS. YAKUBU:  Well, yes, now they are in California.

3   They moved to California.  They alleged that they moved to

4   California before Plaintiff Akinmeji purchased his materials

5   which was in June 2015.

6                THE COURT:  Has Akinmeji ever been to California do

7   you know?

8                MS. YAKUBU:  I don't know.  The Defendants are

9   headquartered there.

10               THE COURT:  Let's treat him as a Maryland resident I

11  guess for purposes of this suit.  Can he file a claim in

12  California based on the presence of the Defendant in

13  California there under California law?  Can he substantively

14  say I was defrauded or I am entitled to a remedy in unjust

15  enrichment under California law though I have never been there

16  and did not make my purchase there?

17               Think about that.  I mean you can go anywhere in the

18  United States and assert a claim against a corporation that

19  happens to be, I guess not headquartered there?  I thought the

20  agreement was now that they were headquartered in Maryland at

21  the time at least in this suit.

22               I mean there are some real problems jurisdictionally

23  with understanding how Mr. Akinmeji can make that claim.  I

24  just asked my law clerk to check quickly on unjust enrichment

25  law in Maryland so I can come back and see --

1          MS. YAKUBU:  Okay.

2          THE COURT:  I know you had a cite, Mr. Steese, that

3   I saw.  Let's see how quickly she comes back on this.

4          MS. YAKUBU:  Okay, Your Honor, so assuming the

5   Plaintiff does have a standalone cause of action, which we do

6   believe it is, under Federal Rules of Civil Procedure allow

7   for alternate pleadings.

8          THE COURT:  But, of course, that is true but you

9   have got to have a cause -- you can also have a theory but you

10  have got to have a theory that is recognized.  There is no

11  dispute about pleading alternative theories.

12         MS. YAKUBU:  Right.

13         THE COURT:  But you cannot just plead anything.  You

14  have got to plead two possible cause of action under the law

15  under of whosever jurisdiction you are proceeding.

16         MS. YAKUBU:  Right.

17         THE COURT:  And I am not prepared to say at this

18  moment that you do have a cause of action for unjust

19  enrichment based on your pleadings in this case.

20          The allegations are that your Plaintiff or

21  Plaintiffs, I guess, both Akinmeji and Jackson, one in

22  California and one presumably in Maryland purchased items,

23  paid for the items, saw the items, whatever they did, and now

24  they are saying unjust enrichment which is, you know, a very

25  vague term almost when there is no clear contractual

 1    understanding at all or maybe there is a mistake between the

 2    parties to allow for some remedy for or restitution to the

 3    Plaintiff.

 4           Where is there a contract, ordinarily there would

 5    not be a separate cause of action for unjust enrichment.  That

 6    is what I want to confirm very quickly.  Do you have a case,

 7    Mr. Steese?

 8           MR. STEESE:  I do.

 9           THE COURT:  All right.  Want to show it to

10    Ms. Yakubu first?

11           MR. STEESE:  Your Honor, I do not have a copy of the

12    case.  I have the case citation.

13           THE COURT:  Oh, well, all right.  Well, let me see

14    how Jenny is doing on that.  I do not want to wait

15    indefinitely for her.

16           MR. STEESE:  We cited hundreds of cases and so we

17    selected those that we thought would be the most pertinent to

18    the argument so I apologize.  I do not have it.  But the case

19    for Your Honor's benefit is Todd v. Zume Energy, 2016 Westlaw,

20    727108.

21           THE COURT:  Well, we will have to pass on this for

22    now and we will come back to this.  Let me go to the third

23    block of cases that I want to talk about and I know this is

24    not quite your style, Mr. Steese, but I do not want to talk

25    about 3211 electively.

1              My next block of cases are Counts 6, 7, 8 and 9, 6

2     being the Consumer Legal Remedies Act in California and the

3     California False Advertising Law.  Also a second count under

4     the California False Advertising Law and then fraud and fraud

5     by omission under California Common Law.

6              Now, all those are California causes of action and

7     as I understand it, only Plaintiff Jackson is suing as a class

8     plaintiff here.  Akinmeji is not.  And she is suing on behalf

9     of herself and other California residents.

10             MR. STEESE:  Correct.

11             THE COURT:  Is that a correct statement?

12             MR. STEESE:  That is.

13             THE COURT:  And I know that you are arguing as all

14    that limitations have run.

15             MR. STEESE:  Correct.

16             THE COURT:  And that is why I want to treat them

17    collectively.

18             MR. STEESE:  And perfect, Your Honor, because I in

19    my argument, just so you know, I prepared those claims first

20    and then I was going to go to claims 3 through 5 next.  So

21    this is perfect.

22             THE COURT:  Well, that is the way I want to do it.

23    Three through five is the last cluster of counts that I want

24    to talk about.

25             MR. STEESE:  So I can look at my notes and I will be

 1  able to follow so there we go.

 2          THE COURT:  All right.  Very good.

 3          MR. STEESE:  Okay.  So, if we look at -- again, I

 4  encourage Your Honor to look at the chart which we have in

 5  front of Your Honor.

 6          THE COURT:  Right.

 7          MR. STEESE:  And then there is a separate table and

 8  it is page 1 of that table and it says tab numbers and legal

 9  principle on it.  It looks like this.  Do you see which one I

10  am looking to, Your Honor?

11          THE COURT:  What page are you on?

12          MR. STEESE:  If you look at the -- if you look at my

13  table, you can see it right there.

14          THE COURT:  Right.

15          MR. STEESE:  So that is page 1 and then I am going

16  to look to this 2, this table.

17          THE COURT:  Page 2?

18          MR. STEESE:  No, not page 2.  It is the table

19  that -- it was page 3.  Page 1 and 3 of the tables.

20          THE COURT:  I am sorry.  Okay.  One page of that

21  chart.

22          MR. STEESE:  And so page 1 of that chart and page 3

23  of that chart to me having those out side by side, will help

24  Your Honor.

25          THE COURT:  All right.

1          MR. STEESE:  And we will start off by looking at the

2    one with the blue column on it called statute of limitations

3    for Plaintiffs' California claims and you can see for 6

4    through 11 whether you are in California or in Maryland, the

5    statute of limitations is three years.  That is the key point.

6          THE COURT:  Three years from when?

7          MR. STEESE:  Three years in this instance from the

8    purchase of the suit or suits which occurred you can see on

9    the bottom --

10          THE COURT:  By Plaintiff Jackson?

11          MR. STEESE:  By Plaintiff Jackson which occurred on

12    February 1, 2014 and you can see that on the bottom of that

13    table and Plaintiff Jackson first filed a complaint June 27 of

14    2017, three and a half years after her purchase.

15          So the whole point here is Plaintiff Jackson's

16    causes of action under Counts 6 through 11, are untimely under

17    the statute of limitations unless there is a means of tolling.

18          So, now let's look at the basic points of law.  To

19    me there are a few.  When I was preparing for this, Your

20    Honor, it seemed very much like a law school exam to me.  I

21    thought that a law school professor got in touch with

22    Ms. Jackson and her lawyer and said put this together for me

23    and let's actually come together and look at this.

24          So, let's look at the first principle of law and we

25    can look at it.  It is in Tab 4 and it is the Georgetown v.

1  <u>Madden</u> case.

2          And is specifically says in diversity cases, you

3  apply the conflict of laws rules from the forum state.  In

4  tort actions Maryland applies *lex loci* wherein the wrong

5  occurred.

6          So, here since it is Plaintiff Jackson, you look at

7  California substantive law.  However, in Maryland you look to

8  the procedural law of Maryland and here statute of limitations

9  is, as a general rule, procedural.

10         The next principle of law is -- and that is in Tabs

11  2 and 3, which are the <u>Fieland</u>* and <u>Wade</u> cases, one from this

12  District and one from the 4th Circuit.

13         It says in diversity cases, whatever state's statute

14  of limitations applies, the equitable tolling principle of

15  that state also applies.

16         So, here if Maryland statute of limitation law

17  applies, its tolling principle apply.  If you have California

18  statute of limitations apply, its tolling principles apply.

19         The next principle of law is statutes of limitations

20  are generally procedural.  However, when the statute of

21  limitations bars the right and not merely the remedy -- in

22  other words, if this time runs, your right is cut off all

23  together.  And, in other words, it looks like a statute of

24  repose.  Is simply cannot be tolled.  Then it is substantive.

25         So these are the general propositions that we put

1   forth in our motion to dismiss on the basis of statute of

2   limitations.  And, Your Honor, the interesting thing here is

3   it is way simpler than this for claims 6 through 11.

4            In 6 through 11, there is this general proposition

5   and that is -- remember, Plaintiffs are claiming there was a

6   class action filed in California, the Lucas case, and they are

7   claiming that that class tolled the statute of limitations to

8   bring a separate class here in Maryland.  That is called cross

9   jurisdictional tolling.

10           Courts in Maryland, and you can see this in Tabs 5

11  and 6, the Adaji* and Mastis* cases specifically say Maryland

12  does not recognize cross jurisdictional tolling.  But the

13  interesting thing is California does not either.

14           In Tab 7, which is the Clemens case, the 9th Circuit

15  specifically said that California Courts do not recognize

16  cross jurisdictional tolling either.  And so when you look at

17  the particulars given that there was a California class and

18  now there is a separate Maryland class, that three years and a

19  half between the purchase of the suit and the filing of this

20  class action is late because cross jurisdictionally does not

21  give them tolling.

22           But if there was any doubt whatsoever on the

23  subject, the United States Supreme Court killed that in one

24  fell swoop on June 11 of this year in the China Agritech case

25  which is Tab 1.  And in the China Agritech case --

1            THE COURT:  Let me get the dates clear now though

2     here.  The class action suit -- what is the base state that

3     you go for with regard to the filing of the cause of action,

4     class cause of action in California?  Is it the date of the

5     filing or the --

6            MR. STEESE:  The date of the purchase starts the

7     statute of limitations run.

8            THE COURT:  The date of the purchase by Lucas?

9            MR. STEESE:  The date of the purchase by Plaintiff

10    Jackson.  Plaintiff Jackson is -- if you look at Plaintiff

11    Jackson, Plaintiff Jackson bought in February of '14.  She

12    waited three and a half years to bring her suit.

13           THE COURT:  All right.

14           MR. STEESE:  She is saying that because the Lucas

15    class action was pending during a portion of the time after

16    she purchased her suit, that however long that case was

17    pending, longer than six months, that is time that does not

18    count against the statute of limitations for her being the

19    class representative.

20           What I am saying is that is not true because both

21    Maryland and California say if you bring a separate class

22    action in a different state, there is no cross jurisdictional

23    tolling for many.

24           But the U.S. Supreme Court in China Agritech

25    specifically said that if you look at the American Pipe case

1    which the Plaintiffs relied heavily on, the only claims that

2    are tolled by the filing of a class action is your individual

3    claim.

4              You cannot, as a matter of law, bring a cause of

5    action to act as a class representative using the earlier

6    class as a basis for tolling.  And so they eliminated the

7    potential of Ms. Jackson being a class rep here because she

8    waited too long.

9              The Supreme Court said specifically why.  They said

10   if you are interested in being a class representative, the

11   whole purpose of a class action statute is for all interested

12   class reps to come forward early so the Court can decide who

13   the best class representative or representatives are.

14             And if you sit on your rights and wait, you forego

15   your ability to act as a class representative.  Instead, you

16   can only bring individual claims.

17             So the question is if you look at Ms. Jackson, can

18   Ms. Jackson's claim survive?  Obviously not as class rep.  But

19   her individual claims cannot survive here in Maryland either.

20   Why?  Because there is no cross jurisdictional tolling

21   permitted under Maryland law or California law and so she

22   cannot, as a matter of law, even bring her individual claims

23   here in Maryland.

24             THE COURT:  Was she actually bringing an individual

25   claim on these counts?

1           MR. STEESE:  Well, the question is when you dismiss

2    a lawsuit, do you dismiss the claim or do you dismiss her as a

3    class representative?  I am saying you do both.  Because she

4    is right now bringing claims and then she is later going to

5    ask you to certify a class.  And so her individual claims

6    cannot even survive.

7           THE COURT:  Cannot even survive?

8           MR. STEESE:  Cannot even survive.

9           THE COURT:  Well, because of limitations you are

10   saying there?

11          MR. STEESE:  Exactly.

12          THE COURT:  No cross tolling.  But as far as the

13   class action is concerned, it is not saved by the earlier

14   proceeding under China Agritech?

15          MR. STEESE:  Exactly.  Not only is there no cross

16   jurisdictional tolling, but there is also a specific finding

17   by the U.S. Supreme Court that there cannot be a subsequent

18   class with a late filed class representative.

19          THE COURT:  All right.

20          MR. STEESE:  I am going to add one last thing, Your

21   Honor, and that is if you look at --

22          THE COURT:  Now, which counts are you talking about

23   here?

24          MR. STEESE:  Okay.  Back to my chart.  That applies

25   to Count 6, 7, 8, 9, and 11.  But I thought we were only

1   talking about 6 through 9 at this point in time.  That is what

2   you wanted me to focus on I thought, Your Honor.

3           THE COURT:  Yes.

4           MR. STEESE:  But I am going to add one more thing,

5   Your Honor, and I mentioned this briefly earlier.  There is a

6   separate proposition of law and this is universally held as

7   true.

8           The Circuit Courts across the county are uniform,

9   oddly, in one area of class law and that is you cannot toll

10   the statute of limitations unless the claims, evidence,

11   memories and witnesses are the same.

12           And so when you look, the whole point is are the

13   claims from the Lucas lawsuit the same as the claims for the

14   Jackson lawsuit here?

15           And if you look back at my chart, you can see in the

16   final column on the right it says was the claim asserted in

17   the Lucas action?  And the answer is Claim 6 it was initiated,

18   it was brought but Claim 7 through 11, none of those claims

19   were contained in the original Lucas action and so tolling

20   does not apply to those claims as a matter of law because you

21   cannot toll the statute of limitations on a claim that was not

22   brought.

23           And so here there is three reasons why Counts 7

24   through 9 should be dismissed on statute of limitations

25   grounds.  Specifically, no cross jurisdictional tolling, one.

1    Two, China Agritech and, three, because those claims were not

2    brought and cannot be tolled.

3            THE COURT:  And which were the claims that were not

4    asserted in Lucas?

5            MR. STEESE:  Counts 7 through 11.  And then Count 6

6    cannot be sustained on statute of limitations grounds for two

7    reasons.  One, cross jurisdictional tolling is not available

8    and, two, China Agritech.

9            And so, Your Honor, none of those claims can

10   survive.  And I will add one last point and then I am going to

11   ask if -- I will deal with one other issue briefly separately

12   and that is when you look at Count 11 for common law fraud.

13           THE COURT:  Count 11 is common law fraud?

14           MR. STEESE:  I am sorry.  If I said 11, I meant 9.

15   My apologies.

16           THE COURT:  Okay.

17           MR. STEESE:  Thank you.  You are right.

18           THE COURT:  Go ahead.

19           MR. STEESE:  I look at IX and I saw XI.  My

20   apologies.  If you look at Claim 9 for common law fraud, the

21   Plaintiffs' response to our notice of supplemental authority,

22   I encourage Your Honor to look at that closely because we

23   argue in our notice of supplemental authority -- here is China

24   Agritech.  It has a significant impact on this case.

25           The Plaintiffs say, wait, China Agritech does not

1    impact Counts 3 through 5, the UCL claims which we will get to

2    in a minute and the common law cause of action for fraud under

3    California.  And their argument is because Joseph A. Bank is

4    headquartered in California, they have the right to bring a

5    common law fraud cause of action here on a nationwide basis

6    with Plaintiff Akinmeji from Maryland as their class rep and

7    his claims are timely within three years.

8            So the legal proposition is can Mr. Akinmeji bring

9    the California common law fraud claim or can he not?  As you

10   asked before, has even been to California ever in his life and

11   they do not know.

12           And we dealt with this before in the last argument

13   and that is when you look at Count 9, Count 9 specifically

14   focuses on common law fraud.  And the *lex loci* legal

15   principles, which I have dealt with before, specifically say

16   the substantive law of the place of purchase for tort claims,

17   here this is a tort claim, is the specific law that applies.

18           Mr. Akinmeji cannot, under the *lex loci* principles,

19   utilize California common law fraud because he did not

20   purchase in California.  He must rest on Maryland common law

21   fraud principles because Maryland common law fraud applies and

22   we argued in our first argument in November that under the

23   Camasta, Ohio, Illinois, New Jersey line of cases, that there

24   can be no cause of action for fraud because there are no

25   damages.

1              And California in the _Inayos_ case is the one odd

2    place, the only place, that says that this value proposition

3    that my opposition counsel is arguing about can withstand

4    scrutiny at the motion to dismiss stage.

5              And since he cannot use California law as a matter

6    of law under _lex loci_, he cannot rest upon that odd principle

7    of law.  The principle of law from across the country says no

8    fraud claim.

9              THE COURT:  All right.  Let me hear briefly from

10   Ms. Yakubu on this and then we will go to a few other issues.

11   All right.  Do you, first of all, continue to maintain that

12   Mr. Akinmeji has any standing to assert causes of action under

13   California law, statutory or otherwise?

14             For purposes of this suit we take him as a Maryland

15   resident and you have conceded he was never in California and

16   the _lex loci delicti_ law of Maryland is it is where the harm

17   occurs.  The harm occurs where he made the purchase.

18             So how does he go to California, how do we go to

19   California from Maryland and apply their substantive law?  I

20   mean you need to -- because I know you have gone over that

21   proposition that somehow Akinmeji from Maryland has standing

22   to assert a cause of action under California law presumably

23   because she gets you in under the wire for limitations.

24             I am not sure what your argument is in that regard

25   that would counter his argument.

1              MS. YAKUBU:  No, Your Honor, I --

2              THE COURT:  You do not know?

3              MS. YAKUBU:  No.

4              THE COURT:  All right.  Well, why are we not looking

5    at Plaintiff Jackson as having filed beyond three years of

6    limitations in this case?  There is no cross tolling under

7    Maryland.  We just read that.

8              And there is no tolling by reason of the fact that

9    she has filed a new lawsuit.  She does not get the benefit of

10   tolling under China Agritech.  Where are we with those claims?

11             MS. YAKUBU:  Well, Your Honor, the Plaintiffs are

12   alleging that Plaintiff Jackson's claims in Maryland fall

13   under California law because although the statute of

14   limitations general rule is procedural under Maryland law,

15   there is an exception that if a statute extinguishes the

16   underlying right and not merely the remedy of the forum

17   statute of limitations, it is considered substantive and must

18   be applied by the forum state.

19             So, in other words, when the Plaintiff brings a

20   claim under a forum statute, it is only when that forum

21   statute does not contain its own statute of limitations, that

22   Maryland would borrow those limitations from an analogous

23   state.

24             So, if we are using California law, Plaintiffs' UCL

25   claims, Counts 3 to 5, are governed by the four year statute

1    of limitations which would then -- which would be timely filed

2    by Plaintiff Jackson.

3              THE COURT:  I have not really gotten much into

4    Counts 3, 4 and 5 here.  I was trying to deal with 6, 7 and 8

5    somewhat separately basically on the grounds that they are

6    time barred and there is no tolling with regard to the class

7    action claim in Maryland.

8              There is no tolling by reason of the California

9    action and there is no question that Ms. Jackson filed more

10   than three years from her purchase is there?  Just deal with

11   that proposition first.

12             MS. YAKUBU:  I am sorry, Your Honor, can you repeat

13   that?

14             THE COURT:  Ms. Jackson filed more than three years,

15   filed the suit in Maryland more than three years from the date

16   she made the purchase.  Now, three years is the limitations

17   period for all but -- well, under Counts 6, 7 and 8.  Let's

18   just stay with those for a moment.

19             Three years is the limitations period under those

20   causes of action in California and it is not a matter of what

21   Maryland substantive law is.

22             MS. YAKUBU:  Right.

23             THE COURT:  Maryland does not toll those statutes,

24   cross toll and neither does California.  So if they do not,

25   she has filed more than three years under the law of both

1    states, has she not?  Well, what saves it is what I am asking?

2    You do not have to get into procedure versus substance.  That

3    really deals more with the last cluster of cases we have not

4    talked about yet.  That is 3, 4, and 5.

5         But this is -- that is why I have tried to

6    compartmentalize them.  There are simpler issues if you deal

7    with the cases in certain clusters.  This is one where clearly

8    Plaintiff Jackson has filed more than three years beyond each

9    of the statutes in California apply.

10        You are here in Maryland asking the Maryland court

11   to apply the California statutes but Maryland, even if it did

12   apply the statute, says but we look, for example, whether we

13   toll the time under those statutes and they do not toll.  So

14   when we deal with that --

15        MS. YAKUBU:  You mean cross jurisdictional tolling?

16        THE COURT:  What is that?

17        MS. YAKUBU:  You are saying cross jurisdictional

18   tolling?

19        THE COURT:  Right.

20        MS. YAKUBU:  From California to Maryland?

21        THE COURT:  That is what is not recognized.  It is

22   still more than three years that Ms. Jackson has waited to

23   file her lawsuit here on these particular California causes of

24   action and we do not toll limitations is what Maryland says.

25        So what do you do about that?

1              MS. YAKUBU:  Well, Your Honor, we --

2              THE COURT:  What is your argument?

3              MS. YAKUBU:  My argument is that California law

4    should apply and California law has not definitely spoken on

5    this topic yet but there is a case and it is in my folder, the

6    Hatfield case, where the court states, while there is no

7    California precedent directly on point, we see no reason why

8    California's equitable tolling doctrine would not apply to the

9    claims of --- class members who like Hatfield are California

10   residents.

11             And another case we cite in our brief where the

12   courts have concluded that California would favor cross

13   jurisdictional tolling.  They have not definitely said we do

14   not do cross jurisdictional tolling and we are saying that

15   California law should apply, California's tolling law should

16   apply in this case.

17             THE COURT:  What tolls the California claims in this

18   case though?  These are not the -- class action or otherwise,

19   the question is this woman has filed these particular claims

20   under California law more than three years that California law

21   applies?

22             MS. YAKUBU:  The Lucas action tolls.

23             THE COURT:  That what?

24             MS. YAKUBU:  The Lucas action tolls Plaintiff

25   Jackson's claims.

1              THE COURT:  Well, that is the question.  Does it?  I

2    mean --

3              MS. YAKUBU:  Well, you know, Defendant mentioned the

4    recently decided Supreme Court case, China Agritech and we

5    would just like the Court to recognize that that case was

6    substantively and procedurally different from the case at bar.

7              In that case the classification was denied twice in

8    that case in both of the class actions and the court stated

9    that the question presented is upon denial of classification

10   may a putative class member in lieu of promptly joining an

11   existing suit or promptly filing an individual action,

12   commence a class action anew beyond the time allowed by

13   applicable statute of limitations.

14             There has not been a denial of classification in

15   this case.  That was the inquiry.  We are stating that this

16   case is distinguishable from the Supreme Court case.

17             THE COURT:  Well, let me see if I follow your

18   argument then.  You are saying that -- and let's get the date

19   for her purchase.  She purchases on February 1, 2014.

20             MS. YAKUBU:  Yes.

21             THE COURT:  Then you say ordinarily she would have

22   to file within three years, right, before February 1, 2017?

23             MS. YAKUBU:  Yes.

24             THE COURT:  Okay.  Which she did not do.

25             MS. YAKUBU:  Correct.

55

1                THE COURT:  She filed in June of 2017.

2                MS. YAKUBU:  Correct.

3                THE COURT:  But you are saying there is a period of

4    time in there where all these causes of action were tolled, is

5    that right?

6                MS. YAKUBU:  Yes.

7                THE COURT:  And that would be from when to when?

8                MS. YAKUBU:  That would be --

9                THE COURT:  I would guess it would be from the time

10   that the first suit was filed.

11               MS. YAKUBU:  Yes.  Lucas was filed July 9, 2014 and

12   only five months had gone on Jackson's claims.

13               THE COURT:  July 9, 2014 until the case was

14   dismissed.

15               MS. YAKUBU:  Yes, in October 2016.

16               THE COURT:  In October 2016?

17               MS. YAKUBU:  Yes.

18               THE COURT:  So that is two and a half years roughly

19   that she gets the benefit of you said.

20               MS. YAKUBU:  Correct.

21               THE COURT:  Under the China Agritech case.

22               MS. YAKUBU:  We are distinguishing this case from

23   that case.  That case dealt with a denial after -- a denial of

24   classification.  That has never happened in this case.

25               THE COURT:  Well, it does not matter.  That is not

1   the issue whether you can settle the case or voluntarily

2   dismiss it and then say you can go on indefinitely by

3   voluntarily dismissing cases and get extensions of limitations

4   throughout the country.

5           But let me Mr. Steese on that issue particularly,

6   particularly because that is sort of a question under the

7   China Agritech case, I guess it is called, about what is the

8   effect of the California proceeding on Jackson's entitlement

9   to go forward under this case?

10          To what extent does she benefit or not benefit from

11  the tolling?  Doesn't the case simply hold that the time for

12  filing suit -- well, you tell me what you want to tell me.

13          MR. STEESE:  Fair enough.  And, Your Honor, I am

14  going to turn to Tab 1 and Tab 1 is the China Agritech case

15  and this is the first substantive paragraph and it says that

16  upon denial of class certification may a putative class member

17  in lieu of promptly joining an existing suit commence a class

18  action anew beyond the time allowed by the applicable statute

19  of limitations.  Our answer is no.

20          American Pipe tolls the statute of limitations

21  during the pendency of a putative class action allowing

22  unnamed class members to join the action individually or file

23  individual claims if the class fails.

24          But American Pipe does not permit the maintenance of

25  a follow on class action past expiration of the statute of

1  limitations.  So the whole point of this is while an earlier

2  filed class action is pending, potential class reps are

3  supposed to come forward then and say I am interested in being

4  the class rep and if they wait until after the class is denied

5  or the class action disappears and there is -- and I was

6  looking for this case earlier.

7        There is a California Supreme Court case which

8  specifically says there is no difference between denial of a

9  class action and withdrawal of a class action because the

10  Plaintiff, named Plaintiff, was an inappropriate Plaintiff.

11        So the whole point is during the pendency of a class

12  action, Ms. Jackson cannot use that two and a half years that

13  Lucas was pending as tolling for her to act as a class rep.

14  It only would have allowed her time to tolling -- to bring an

15  individual claim in California, specifically, in California

16  where the case was pending because she is a California

17  resident.

18        Because cross jurisdictional tolling does not apply.

19  She cannot even bring her individual claims here.  She must do

20  it in California.

21        Now, what Plaintiffs' counsel also argues and she

22  said this clearly twice is if the California Supreme Court or

23  the California courts have not definitely decided whether

24  equitable tolling principles separate from China Agritech,

25  separate from American Pipe will allow the pendency of a class

1    action to toll the statute of limitations.  She said that

2    specifically.

3            Now, there are multiple cases -- and I am going to

4    turn to Tab 11 which is the Jolly case and there the

5    California Supreme Court specifically said in the absence of

6    controlling state authority, California courts utilize Rule 23

7    of the Federal Rules to determine class action suits.

8            If you look at Tab 12, this is In Re: Microsoft case

9    from the District of Maryland of all places.  And there they

10   were analyzing, this District was analyzing California law and

11   they say Plaintiffs counter the California, not Federal law

12   applies to the tolling question.  Although that is true, they

13   have not cited any California case on point.

14           To the contrary, the California Supreme Court has

15   approvingly cited Federal precedent under Rule 23 to determine

16   whether a statute of limitations should be tolled in a class

17   action.

18           So, what she is saying is do not look at China

19   Agritech.  Let's look at this 9th Circuit case, the Hatfield

20   case, to decide whether or not to toll if California

21   substantive law applies.

22           But the simple fact is that case itself recognized

23   that the California courts have not ruled, Rule 23 applies.

24   The United States Supreme has just interpreted Rule 23 to say

25   there is no tolling during the pendency of a class action.

```
 1              There is every reason to believe that the California

 2    courts will follow the United States Supreme Court because

 3    they said in the absence of tolling authority, that is what

 4    California courts do.

 5              THE COURT:  I need you to short of wind up but I

 6    want to ask you a quick question.

 7              MR. STEESE:  Sure.

 8              THE COURT:  On this argument that you are making,

 9    which counts does it apply to?

10              MR. STEESE:  I did not hear the name of the --

11              THE COURT:  Which counts does it apply to?  The

12    arguments that you have just made about California law not

13    tolling.

14              MR. STEESE:  Okay.

15              THE COURT:  I have tried to parse this up but I know

16    you are going beyond a little bit talking about counts that

17    are --

18              MR. STEESE:  I have not talked about any of the

19    counts that you have not wanted me to.

20              THE COURT:  Well, 3, 4 and 5 are the ones I wanted

21    to come to last.

22              MR. STEESE:  I have not talked about those.

23              THE COURT:  There is a different rationale I think

24    for that.

25              MR. STEESE:  I agree completely and I have not
```

1    talked about Counts 3 through 5 at all yet.  What they are

2    arguing is Counts 6 and 7 and 8 are statutory California

3    claims not Count 9, which is a common law claim.

4           So, common law they use a procedural statute of

5    limitations so Maryland statute of limitations applies.  But

6    what they are claiming is Count 6, 7 and 8.  The California

7    statute of limitations applies because they are statutory

8    claims not common law claims.

9           And if you look at Counts 7 and 8, Counts 7 and 8

10   are based upon the false advertising law.  Over the right you

11   will see those were not contained in the original Lucas class

12   and as a result, tolling principles cannot apply to them as a

13   matter of law.

14          In addition, under the false advertising claims,

15   they do not even have their own statute of limitations.  They

16   rely upon a California procedural general statute of

17   limitations and there is absolutely no reason to believe that

18   they would not do this -- I mean as a matter of law -- I will

19   put it better -- Maryland statute of limitations applies.  It

20   is just the standard statute of limitations.

21          If you look at their Consumer Legal Remedy Act

22   claim, Count 6, it was in the Lucas case but there are point

23   is numerous.  One, if you look at the fact that there is no

24   cross jurisdictional tolling, therefore, the statute of

25   limitations cannot be tolled from California to Maryland.

1          Second, when you look at Count 6, Count 6 does have

2     an embedded statute of limitations but, as we cited in our

3     papers, that claim codified a common law cause of action.

4          THE COURT:  I need you to wind up.  I am sorry.  I

5     am hearing some repetition and we will sit here for an hour

6     and 45 minutes or more so let's not go on at length.

7          MR. STEESE:  Sure.

8          THE COURT:  I will give you about two more minutes

9     to wind up on this point.

10         MR. STEESE:  You got it.  So, under Count 6, the

11    whole point is whether or not Maryland law applies or

12    California law applies.  Under China Agritech which California

13    follows, there is no equitable tolling that allows that

14    earlier class to toll.

15         Under Maryland law, Maryland law says there is no

16    equitable tolling available either because you had to be

17    deceived in failing to bring the cause of action, you know, I

18    told you don't bring your cause of action because we are going

19    to take care of you or words to that effect and then that led

20    you to rely upon my statement.

21         So under Maryland law or under California law and

22    under China Agritech, there is no tolling for the underlying

23    class action and so under Count 6 there is way that you can

24    toll.

25         THE COURT:  All right.  You need to sit down.

1    Briefly a response, Ms. Yakubu.

2            MS. YAKUBU:  Okay, Your Honor.  As I mentioned

3    earlier, this case is distinguishable from China Agritech.  In

4    that case it dealt with a denial of classification.  The issue

5    was when there is a denial of classification can you toll.

6    But that is not the issue in this case.

7            THE COURT:  So this is not a denial.  It is enough

8    for you to simply withdraw?  Is that it?  And that does not

9    count as -- effectively makes China Agritech inapplicable to

10   this case?

11           MS. YAKUBU:  Well, it is distinguishable.  In that

12   case the classification was denied twice and, furthermore,

13   Your Honor, in that case the class representatives were --

14   well, I guess -- they were given like significant notice.

15           Like it was required under the Act in that case to

16   notify them about becoming Plaintiffs.  In this case, you

17   know, she did not -- Plaintiff Jackson did not know about the

18   Lucas action.

19           THE COURT:  All right.  I just need to hear you in

20   summary again about why particularly as to Counts 6, 7 and 8

21   and 9 more than a three year statute of limitations apply.

22           MS. YAKUBU:  Well, we are alleging the Lucas action

23   tolled, the Lucas action tolled those causes of action and

24   China Agritech does not apply to these counts.

25           THE COURT:  Right.  Well, these are class action

1    suits, are they not?

2              MS. YAKUBU:  Yes.

3              THE COURT:  And you are saying China Agritech does

4    not apply because why again?

5              MS. YAKUBU:  Because the inquiry was regarding a

6    denial -- this denial of classification.  That is not the case

7    here.

8              THE COURT:  And that is not this case?

9              MS. YAKUBU:  No.

10             THE COURT:  Okay.  And you think that denial is

11   different from withdrawal?  I mean this is the problem in part

12   that you can keep these class action cases going on in

13   perpetuity, couldn't you, by simply filing suit, settling it

14   before it -- or dismissing along the way and you can just go

15   on *ad infinitum* keeping the limitations going by dismissing at

16   some point until you are ready to file in a more propitious

17   jurisdiction or you have a better Plaintiff.  I mean you can

18   go on for years, couldn't you?

19             That is why I ask whether there really is, in terms

20   of the real purpose of the holding in China Agritech is there

21   any real distinction between the withdrawal and the denial?

22             MS. YAKUBU:  But, Your Honor -- okay.

23             THE COURT:  You can answer that if you can or if you

24   want to move on to another point, it is up to you.

25             MS. YAKUBU:  We can move on.

1              THE COURT:  All right.  Do you want to say anything

2    more about the three year -- I know you say that as to 6, 7

3    and 8, and 9, I guess, that there is -- that there is tolling

4    of some sort.  I am not sure I see why and I want to be clear

5    from your argument as to why you say that is so.

6              MS. YAKUBU:  Under the Lucas action.  It was tolled

7    during the pendency of that class action suit.

8              THE COURT:  Okay.  And that is the short answer that

9    under American Pipe you are saying it was tolled?  Is that

10   your authority?

11             MS. YAKUBU:  Yes, under American Pipe.

12             THE COURT:  Okay.  Any other reason why it should be

13   tolled?

14             MS. YAKUBU:  Yes, policy considerations.  You know,

15   policy considerations must be met for American Pipe tolling to

16   apply, protection and efficiency in economy and litigation, it

17   protects the class action without it potentially harming class

18   members who would have to file actions to preserve their

19   claims as depriving class actions of their ability to secure

20   efficiency and economy of litigation and effectuation of the

21   purpose of the statute of limitations to protect the Defendant

22   from -- to protect a Defendant from unfair claims.

23             Here, the Defendants are put on notice of the

24   substantive claims brought against them.  The Lucas action

25   involved UCL, CLRA and FAL claims brought on behalf of a class

1    of California consumers and based on Joseph A. Bank's use of

2    deceptive preference pricing in selling its suits.

3          Similar claims, subject matter and similar evidence

4    as the initial class action put Joseph A. Bank on notice of

5    the claims against it.

6          THE COURT:  All right.  We need to take about a 7 or

7    8 minute break and then we will come back.

8          THE CLERK:  All rise.  This Honorable Court now

9    stands in recess.

10        (Whereupon, at 11:54 a recess was taken and at 12:09

11   p.m., the proceeding resumed.)

12         THE CLERK:  All rise.  This Honorable Court now

13   resumes in session.

14         THE COURT:  Please be seated.  All right.  What I

15   want to do in this last block of arguments is to address

16   Counts 3, 4 and 5 and hear from you then, Mr. Steese.

17         MR. STEESE:  Thank you for your patience, Your

18   Honor.  I know it has been a longer argument.

19         So, focusing on Counts 3 through 5, they are all

20   brought under California's Unfair Competition law.  I call it

21   the UCL claim so if I do that, that is what I am talking

22   about.  And this to me is the focus of today's arguments and

23   the UCL has an embedded statute of limitations that says four

24   years and California, excuse me, Maryland's parallel statute

25   of limitations is three years.

1              If the four year statute of limitations applies,

2    then clearly the claims were timely.  If the three year

3    statute of limitations applies, then you have to look -- then

4    you have to look at Maryland's tolling principles to see

5    whether or not there is any basis for tolling under Maryland

6    law.

7              We believe very clearly, as I will get to, that

8    Maryland law applies, that this is a procedural statute of

9    limitations and under Maryland law there is no basis for

10   tolling and I will explain.

11             So, we will focus first in Maryland and I am going

12   to go very quickly through a series of tabs and focus first on

13   Tab 13 which the Maryland Court of Appeals in Turner.

14             And there was a choice of law question in Maryland

15   and they said does the Maryland or Virginia statute of

16   limitations apply and they talk about generally statutes of

17   limitations are procedural and there is an exception under

18   Maryland law when a statute of limitations is a condition

19   precedent to the right to maintain the action.

20             All of those cases that emanates from a Supreme

21   Court case in Harrisburg and all of those cases effectively

22   mean the statute of limitations cannot be tolled.  So it is

23   more akin to a statute of repose.  So, it is substantive if

24   there is a specific statute of repose in effect that applies.

25             And then we look at Tab 14 which is the Maryland

1    Court of Appeals in <u>Ferguson v. Loader</u> and there we see very

2    plainly that they are talking about a three year deadline.  It

3    was not a statute of limitations but a condition precedent to

4    the action and here we see the Court of Appeals has repeatedly

5    held that the statute of limitations tolling principles are

6    inapplicable to conditions precedent.

7            So, in other words, these conditions precedent, this

8    statute of repose would be one instance where what is akin to

9    a statute of limitations, the time for bringing of an action

10   is substantive.

11           Very clearly here the UCL claims can be tolled.  No

12   one disputes that.  So this argument as to why the statute of

13   limitations would be substantive does not apply.  But I do not

14   think that anyone would question that.

15           Now, I am only mentioning this briefly, and this is

16   the <u>Sokolosky v. Flanser</u>* case and it is the 4th Circuit

17   applying Maryland law.  Because I am going to get to the point

18   where I say there is prong 2, a second basis upon which you

19   can find a statute of limitations substantive in all

20   likelihood but when I read this case I question whether that

21   is true.

22           Because it says it is going through very plainly and

23   looking at a choice of law question as to statute of

24   limitations applying Maryland law and the 4th Circuit

25   specifically says Maryland courts have recognized an exception

1    to this maxim, the maxim being that statutes of limitation are

2    procedural in instances where a forum statute of limitations

3    extinguishes the underlying right not merely the remedy.

4          This is exactly what we were looking at before which

5    is statute of repose.  And the Sokolosky case goes through in

6    great detail and talks about the United State Supreme Court

7    case in Harrisburg and how the statutes of limitations which

8    are really statutes of repose are the sole exception to

9    whether or not a statute of limitations is substantive or

10   procedural and at this point in time I am thinking that that

11   is the end of the inquiry because there is no equivalent

12   statute of repose in the UCL.

13         But there is a case 10 years earlier than the

14   Sokolosky case and it is State v. Zitomer and it too is from

15   the -- this one is from the Court of Appeals of Maryland again

16   and it is looking at the wrongful death statute.

17         And the wrongful death statute was a cause of action

18   that did not exist at common law.

19         THE COURT:  Is there a tab you wanted me to be

20   looking at for this?

21         MR. STEESE:  Oh, yes, sir.  This is Tab 16, Your

22   Honor.  I apologize.  And this is a cause of action that did

23   not exist at the common law and the question presented was a

24   statute of limitations in a wrongful death statute was changed

25   to three years from two years and the question was whether or

1    not the new statute of limitations applied retroactively or

2    prospectively only.

3            And the court specifically said prospectively only

4    there is nothing in the legislative history of this particular

5    statute with this amendment that would lead the court to

6    believe that it should be applied retroactively.

7            But in the middle of the case there is this

8    discussion and it talks about in the case of substantive

9    rights in Maryland.  The rule in Maryland is that since the

10   wrongful death statute created a new liability not existing at

11   common law, compliance with that period of limitations is a

12   condition precedent.

13           Now here is the confusing point to me.  When you

14   talk about conditions precedent, conditions precedent are

15   specifically defined in the earlier cases I pointed to as

16   those that cannot be tolled, statutes of repose.

17           On the other hand, in subsequent cases, there is

18   case law that says the statute of limitations in a wrongful

19   death case can be tolled.  So I think the better argument is

20   that the only substantive statutes of limitations are

21   conditions precedent that cannot be tolled in Maryland.

22           And as a result since the UCL, statutes of

23   limitations can be tolled.  It is a traditional statute of

24   limitations.  It is procedural and you use Maryland law.

25           However, there is this language that talks about

1    causes of action that did not exist at common law and so as an

2    alternative, I think there is a reasonable argument that one

3    could make that if there is a statutory claim brought and

4    there clearly is -- I will say this, there clearly is

5    authority for this in states outside of Maryland.  This is

6    clearly true.

7            If there is a statutory claim brought and that

8    statute of limitations that applies to it is embedding.  If

9    those two facts exist, then you have to look to see whether

10   that was simply codifying a common law cause of action or

11   whether it is creating a brand new right to determine whether

12   that statute of limitations is substantive or procedural.

13           If it is codifying a common law right, procedural.

14   If it is something brand new, substantive.  There is that line

15   of cases and --

16           THE COURT:  You do not need to cite them.  Do not

17   cite the cases.  Just go on with your argument.

18           MR. STEESE:  Oh, that is what I am going to do.

19           THE COURT:  Okay.

20           MR. STEESE:  Now, even if this argument applies in

21   Maryland, there is no question and, in fact, there has been no

22   argument to the contrary by Plaintiffs, that this was not

23   codified by the -- was nothing more than a codification of the

24   common law.

25           We actually gathered the legislative history from

1  this particular statute.  They are available in California

2  from --

3            THE COURT:  What is the case you are relying on for

4  that?  Is there a case in my book that you are --

5            MR. STEESE:  No, this is Tab 24 and it is the

6  legislative history for this particular statute, the UCL

7  statute.  And you can see in the highlighted language -- and I

8  am not going to read that whole thing, but it specifically

9  says while there is a statutory definition of unfair

10 competition, it did nothing more than codify the common law.

11           These UCL claims are nothing more than a

12 codification of the common law cause of action of unfair

13 competition in California.  And this is not surprising, Your

14 Honor.

15           If you were to look at California statutes,

16 California statutes have codified virtually every cause of

17 action possible.  That does not make those causes of action

18 with their own statutes of limitations substantive.

19           Let's assume the following, Your Honor, and I will

20 let you finish reading.  I can see you are looking at that.

21           THE COURT:  Well, that statute says -- the language

22 you read reads a little different to me.  What was in common

23 law was an action that extended from one competitor to another

24 and then it was extended to consumers.  And then it says

25 because it was derived at least in part from common law.

1              MR. STEESE:  It says the unfair competition cause of

2      action was not unknown in common law.  In fact, the

3      predecessor to the UCL codified the common law tort of unfair

4      business competition.

5              Subsequent court decisions expanded the scope of the

6      common law rule codified in it from business competitors to

7      consumers.  So the whole point is that this statute -- and

8      remember we are looking at the statute of limitations.

9              The statute of limitations itself when this statute

10     is passed is it a procedural or a substantive statute of

11     limitations and when this statute is codified and passed, the

12     four year statute is doing nothing more than codifying the

13     common law.

14             So the whole point is you have unfair competition

15     claims in California.  You have unfair competition claims in

16     Maryland.  If you decide to bring an action in Maryland, you

17     are bound by Maryland's statute of limitations.  And, in fact,

18     many states have statutes that say --

19             THE COURT:  You are bound by Maryland conflict of

20     laws.

21             MR. STEESE:  Exactly.  And since the statute of

22     limitations is procedural, since it codified the common law,

23     you apply the Maryland statute of limitations to this cause of

24     action and that is exactly the case here.

25             So, irrespective of whether you look at Maryland law

1    as saying statutes of repose are the only basis for creating a

2    substantive functional equivalent of a limitations period or

3    if you look at it from the fact of anything that codified a

4    claim that was not existing in common law.  Under either of

5    those prongs, it is a procedural statute of limitations and,

6    therefore, Maryland applies.

7            THE COURT:  All right.  I understand.

8            MR. STEESE:  Which means that we now get to the

9    second question.  The second question, if Maryland law

10   applies, then Maryland's tolling principles also applies, is

11   there any basis under Maryland law to toll?

12           THE COURT:  And the answer is no.  I understand.

13           MR. STEESE:  Okay.  The answer is no.  I can go into

14   that if you want me to.

15           THE COURT:  You do not need to.  I do not think

16   there is a claim -- is there a claim of tolling under Maryland

17   law that you understand?  I do not think they are claiming

18   tolling under Maryland law.

19           MR. STEESE:  Okay.  So I just heard Plaintiff's

20   counsel say if Maryland law applies, there is no basis for

21   arguing tolling.

22           THE COURT:  No, I think that is conceded.

23           MS. YAKUBU:  Right.

24           THE COURT:  If Maryland law applies, it is three

25   years but they are saying Maryland law does require

1   application of the four year --

2            MR. STEESE:  So, Your Honor, under either argument,

3   then the three year period of limitations applies and those

4   claims cannot survive.

5            THE COURT:  All right.  Let me ask you a question

6   though beyond that because you have only attacked I think

7   these counts on the limitations grounds.

8            You have not argued anything about the kinds of

9   arguments you have made, for example, with regard to the

10  Maryland causes of action that we started talking about in the

11  beginning which is no claimed damages, no cause of action and

12  so on and so forth.

13           I am assuming that if you do not prevail on this

14  point, you come in with another pleading that challenges any

15  ability to recover on the merits.  Am I correct?

16           MR. REESE:  Yes and no, Your Honor.  Remember, there

17  is a whole series of cases that talk about whether or not

18  under unfair competition laws whether this --

19           THE COURT:  Oh, in California?

20           MR. REESE:  In California there is this Inayos which

21  says you get past phase 1, you get past the motion to dismiss

22  phase, so you are right, Your Honor, we are going to come and

23  make this argument but it is going to be at the motion at the

24  motion for summary judgment stage or the class certification

25  stage as opposed to another Rule 12 motion to dismiss.  That

1  is the distinction.

2          Because the Inayos case says in California you get

3  passed the pleading stage to get to discovery on that

4  particular argument that there is no damage.

5          THE COURT:  But, in sum, is it a fair statement to

6  say that it is unfair competition under California Unfair

7  Competition Law to misrepresent the value of the product to

8  say we are actually giving the product which is worth a lot

9  less than we are telling you?  Is that sort of flat out -- is

10  that a misrepresentation which is actionable and if

11  actionable, what remedy?

12          Again, for example, one is concerned with -- I am

13  not asking you to argue this definitively.  I am trying to see

14  where the case is going.  Do you still have to show damages of

15  some sort?

16          MR. STEESE:  Of course you do.

17          THE COURT:  Then the question would be what kind of

18  damages do you foresee that could be proven here assuming you

19  lose to dismiss these counts at this point?

20          MR. STEESE:  The answer is damages have to be

21  established.  The Inayos case which comes from I believe the

22  9th Circuit -- yes, the 9th Circuit, specifically says that

23  making the allegation in the complaint, that there is a delta

24  between the value you received and the value of the goods

25  provided is enough to get past the pleading stage but you are

1   still going to have to establish damage.

2           So, there is no case law that I am familiar with or

3   aware of at this point that says once you get to the damage --

4   you know, past the motion to dismiss stage and you have to

5   actually come forward with an actual damages theory, what that

6   damages theory should look like or what is going to be

7   acceptable, it just says you get passed the Rule 12 stage.

8   That is all it says.

9           And so to me we never have to get there because the

10  statute of limitations is procedural.

11          THE COURT:  I know you say that but I am trying to

12  see where we go if you do not prevail on that point.

13          MR. STEESE:  Understand.

14          THE COURT:  Suppose we determine that in fact the

15  four year term applies and I am not sure I am in sync with the

16  argument that you have to go through full discovery and then

17  file a motion for summary judgment to determine that.

18          The question would simply be, well, what kind of

19  damages are suffered?  The same way we asked at the beginning

20  of this case with regard to the Maryland causes of action.

21  What are the damages?  And if you cannot make the claim, you

22  cannot establish the claim, even project what it might be,

23  then you might go out right away and it might be a summary

24  judgment motion that is final and we will not have discovery.

25          MR. STEESE:  That is very possible.  I would imagine

1   some very focused early interrogatories to understand what

2   their basis for their cause of action is looking at their Rule

3   26(a)(1) disclosures where they articulate their damages

4   theory and using that as a basis but I would get something,

5   some basis point that I could say here is their theory and

6   here is why it does not withstand legal scrutiny.

7           I am not saying you wait until the very end of the

8   case.

9           THE COURT:  All right.  Fair enough.  Okay.  Are you

10  through?  All right.  Ms. Yakubu.

11          MS. YAKUBU:  All right.  Your Honor, there is a

12  statutorily created liability exception to the statute of

13  limitations general rule in Maryland that they are procedural

14  and that is when the statute extinguishes the underlying right

15  and not merely the remedy.  The forum statute of limitations

16  is considered substantive and must be applied by the forum

17  state.

18          In other words, when the Plaintiff brings a claim

19  under forum statute it is only when that forum statute does

20  not contain its own statement of limitations that Maryland

21  will borrow a limitations period from an analogous state.

22          In this case, each claim contained a statute of

23  limitations.  The UCL, four years, CLR, three years, FAL,

24  three years.

25          And compliance is a condition precedent to the right

1    to bring the action and, thus, it makes this substantive and

2    we need to apply California law.

3            The statutes that create Plaintiff Jackson's cause

4    of actions create a right of action that did not exist in

5    common law and include a limitations period specific to those

6    causes of action.

7            And as far as Defendant's point about legislative

8    history, in the legislative history it is stated statutory

9    definitions cannot be equated with the common law definition

10   and it is derived at least in part from the common law.

11           So, I do not believe that that makes it by means

12   defined in common law.  It said in part and it said statutory

13   definition cannot be equated with common law definition so it

14   is not -- it is not equal so I would say that that is

15   inapplicable here.

16           These are statutes.  They contain statutes of

17   limitations and based on Maryland's exception, California law

18   should apply to those claims.

19           THE COURT:  All right.  Anything else?

20           MS. YAKUBU:  No.

21           THE COURT:  Any reply that does not repeat what you

22   have said earlier, Mr. Steese?

23           MR. STEESE:  Unless Your Honor has questions, I

24   addressed everything in my argument earlier.

25           THE COURT:  All right.  Well, have a seat.  I need

1   to -- this case is going in several directions at once and I

2   need to try and tighten it to get to where we want to go.

3          So bear with me as I go through what basically is an

4   opinion regarding the various counts and we see where we come

5   out.

6          And let me start by saying there was a motion for

7   the Court to take judicial in ECF-88 which is just a citation

8   to authority.  I am not going to grant a motion to take

9   judicial notice.  That has a whole other implication but if it

10  is simply authority that is going to be brought to the Court's

11  attention at some point, the Court will certainly pay

12  attention to it but as a matter of judicial notice, I am not

13  sure quite what that imports.

14         Ordinarily, that means the Court takes it as an

15  unalterable fact in the case and somehow is bound by it.  That

16  is sometimes what judicial notice means so I am not granting a

17  motion for judicial notice but we can perhaps just say that it

18  is denied but the Court will, in fact, is aware of the fact

19  that that authority has been cited.

20         Now, what I am going to do is recite the basic fact

21  allegations as I see them and then go through various counts

22  and deal with them as best I can.  And I may, in order to be I

23  am with counsel on both points, stop at some point and say

24  repeat for me now just in summary fashion the 1, 2, or 3

25  arguments basically your outline, Mr. Steese, that gets me

1   into understand exactly what your arguing on each point.

2           So this is a suit brought by Olusola Akinmeji and

3   Raychel Jackson against Joseph A. Bank Clothiers and it

4   proceeds in 11 counts.  I am not going to recite all the

5   counts at this point but as we deal with each of them, I will

6   state what the court is and what it seeks.

7           And, essentially, it is based on claim -- it is a

8   class action suit or purports to be.  And it involves claims

9   on behalf of a Maryland class, a California class and a

10  nationwide class in various counts.

11          And the essential allegations are that the

12  Defendant, Joseph A. Bank Clothiers, uses deceptive and

13  unlawful sales of its product based on inflated, arbitrary and

14  false "regular prices."  That is they enter into promotions

15  that one can buy one suit at full price and get three suits

16  free but that is not actually a sale, it is simply a

17  presentation of what the consumers are actually paying as

18  regular prices for the suits.

19          And the fact is that no suits, according to the

20  Plaintiffs, or virtually none are ever sold at the regular

21  retail price.  It always sold at discount if you will.  And

22  the suggestion that there is a suit that is worth $875 is

23  simply not a true statement and the essential contention is

24  that this is false pricing in violation of various consumer

25  protection laws and so on and so forth.

1           And the first proposed class representative is

2   Mr. Akinmeji who says that on June 29, 2015, he purchased four

3   suits from JAB's online store.  He resided in Greenbelt,

4   Maryland at the time.

5           He bought the suit for the advertised "regular

6   price" of $875 and got three suits free.  He is the named

7   class Plaintiff for the proposed Maryland subclass and also

8   for the national subclass.

9           The second proposed class representative is Raychel

10  Jackson.  She is a resident of Galt, California and she

11  alleges that on February 1, 2014, she purchased a regular suit

12  in Stockton, California from the Defendant at the "regular

13  price" of $995 and she got the three free suits.

14          She also appears as the class Plaintiff for the

15  national subclass but also for the proposed California

16  subclass.

17          And the case is now before the Court.  The case was

18  originally filed in Prince George's County Circuit Court,

19  removed to this Court on May 16, 2017 and on June 27, the

20  Plaintiffs filed an amended complaint and now the Court has

21  essentially motions to dismiss presumably all of the various

22  counts but it was filed in two motions.

23          So that is what we are faced with now.  And, in

24  large part, we confronted the jurisdictional issue in the

25  beginning about whether this Court should entertain the case

1   with the parties stipulate that general jurisdiction obtains

2   in this Court in the suit against Joseph A. Bank which at one

3   point, obviously, did have its national headquarters here in

4   California since.

5           So that issue is one we have resolved.  The question

6   though beyond that is whether, in fact, there is a basis to

7   dismiss various of these claims so let's look at these claims

8   and I want to look at them more in the sequence of how I

9   raised them than that counsel did because it is easier for me

10  to see the commonality of the issues when I do.

11          The first issues that I raised had to do in block 1

12  with Counts 1 and 2 of the amended class action complaint.

13  Count 1 was for violation of the Maryland Consumer Protection

14  Act, Maryland Common Law Article Section 13-101 and Count 2,

15  fraud and fraud by omission under Maryland Common Law, again,

16  on behalf of the Maryland subclass and the nationwide

17  subclass.

18          And the gist of the Defendant's position on the

19  motion to dismiss is that there really is no identifiable

20  loss, which is to say damages, that have been suffered by the

21  Plaintiffs in regard to those particular claims under the

22  Maryland Consumer Protection Act and under Common Law Fraud.

23          So, let's look specifically at these claims.  The

24  essential claim by the Defendant is that there are not any

25  facts that Akinmeji suffered actual damages which is required

1   under the Maryland Consumer Protection Act citing the <u>Ayres</u>

2   case at 129 F. Supp. 3d., 249 at 270 which does indicate that

3   establishing a violation of the Maryland act requires a

4   private claimant to allege and unfair or deceptive practice,

5   provide upon which causes actual injury, the language being

6   actual injury.

7            And then citing a number of cases from other

8   jurisdictions, indeed, involving this particular Defendant

9   where courts have suggested that similar claims have been

10  dismissed for lack of damages.

11           And, again, as the Court said, Maryland courts do

12  ordinarily require a demonstration of actual damages and

13  conclusory language is not enough just to say that, for

14  example, Akinmeji did not get the discounts that were

15  promised, that he did not receive the products which had the

16  value that was promised, that he would have made the purchases

17  elsewhere, does not make the grade.

18           Now, contrary to that, Akinmeji has argued that the

19  Consumer Act must be construed liberally to affect its

20  protective purposes and that he has alleged actual damages.

21  He has not really shown objectively identifiable injuries

22  other than the Court has just cited but the Defendant returns

23  to the argument that there still are no facts showing actual

24  damages and that the emotional type injuries, if you will,

25  that Akinmeji asserts are not sufficient under the law and so

1    on and so forth.

2           And even if there is authority to the contrary, the

3    Court concludes that the Defendant's position is well taken.

4    That the Maryland courts do require a showing of damages.

5    That has not been even the properly alleged here.  There are

6    no objectively identifiable damages.

7           Simply suggesting that a language should be read

8    broadly, we really do not suggest that this is particularly

9    the kind of case that is compensable.

10           And so the Court will grant the motion to dismiss as

11    to Counts 1 and 2.

12           Now, the second block of cases that the Court dealt

13    with, the second cases together, were cases of breach of

14    express warranty filed on behalf of the nationwide class and

15    Count 11, unjust enrichment.  First being Count 10, Count 11

16    being unjust enrichment on behalf of the nationwide class and

17    I gathered both Plaintiffs are asserting those claims.

18           I gather one is -- Mr. Akinmeji appears to be making

19    it under Maryland law and Ms. Jackson under California law and

20    first we will deal with the issue under Maryland law first

21    since Mr. Akinmeji is mentioned first and the question is

22    whether he has stated a claim for breach of express warranty.

23           Now, the Maryland law does provide under the

24    Commercial Law Article Section 23132 that an affirmation

25    merely of the value of goods or a statement purporting to be

1   merely the seller's opinion or commendation of the goods does

2   not create a warranty and that is Maryland law to that effect

3   and the Court accepts that proposition that there is no

4   warranty that is assigned to that.

5          And there is a Maryland case that the Court has also

6   come upon in terms of unjust enrichment that it will refer to

7   in a minute.

8          California law also, as the Court reads it, does

9   provide that although there may be warranties created in given

10  situations, that the statute in question -- and if I can turn

11  to it very quickly -- well, I do not have the language

12  immediately in front of me but the language under the

13  California statute was clearly to the effect that, again, a

14  mere affirmation of value would not -- here, I have got the

15  statute.

16         This is at Section 2313 of West's Annotated

17  California Code and it does provides an express warranty by

18  the seller are created, generally, with regard to affirmations

19  of fact or promises made by a seller to the buyer relating to

20  goods and a description of the goods, which is made part of

21  the basis of the bargain creates an express warranty that the

22  goods will conform and so on.

23         But in sub (2) it says it is not necessary to the

24  creation of an express warranty that the seller use formal

25  words such as warrant or guarantee or that he have a specific

1   intention to make such a warranty but an affirmation merely of

2   the value of the goods and a statement purporting to be merely

3   the seller's opinion or commendation of the goods does not

4   create a warranty.

5          And although there does appear to be a California

6   case that is contra to that, that would be the Munning case at

7   2016 Westlaw 6393550.  The Court does not accept the rationale

8   of the Munning case.  I do not think it fairly represents what

9   the law says.

10         This is an affirmation of the value which Plaintiff

11  says is false.  It is what the Defendant says.  Whatever the

12  cause of action it may occasion, it is not one for breach of

13  express warranty.

14         So both under Maryland and California laws there is

15  no express warranty that can be brought in this case given the

16  nature of the allegations on the amended complaint.

17         The Court will grant the motion to dismiss as to

18  Count 10.

19         Now, the Court reaches a similar conclusion with

20  regard to Count 11, the unjust enrichment claim.  Again,

21  starting with the Maryland law, it is a correct statement that

22  generally -- and this is something and unjust enrichment is

23  obviously a common law cause of action but rather than when

24  you look at the statute, there is a case of County

25  Commissioners of Caroline County v. Roland Dashiell & Sons,

1  <u>Inc.</u> at 358 Md. 383, a 2000 case from the Maryland Court of

2  Appeals and basically it goes at length into the proposition

3  that the general rules that no quasi-contract claim can arise

4  when a contract exists between the parties concerning the same

5  subject matter on which the quasi-contractual claim rests.

6         And this is obvious according to the Court and not

7  difficult to discern.  The parties often assume certain risks

8  with an expectation of a return.  Sometimes the realizations

9  are not realized or the expectations are not realized but

10  there is the risk that the expectations may be refuted and

11  there may be no remedy under the contract for restoring the

12  expectations and so there is a turn for quasi-contract or

13  something like that which is really what unjust enrichment is.

14         Unjust enrichment really is an idea of trying to

15  recover monies paid by way of restitution that were unjustly

16  retained by one of the parties to the bargain and it is

17  settled law in Maryland according to the citation of a

18  District Court case from the United States.  That a claim for

19  unjust enrichment may not be brought where the subject matter

20  is covered by an express contract between the parties.

21         And, of course, the express contract in this case is

22  simply that we are buying a suit, this is what we say its

23  value is and you say, well, I will buy it.  Whether you feel

24  misled or not, that is the deal and if you feel misled, you

25  may have a basis for filing some other cause of action but

1    unjust enrichment is not that cause of action.  It is not

2    available in the State of Maryland.

3           Likewise, when one looks at the law of California,

4    the majority of cases simply hold, notwithstanding some other

5    authority to the contrary, that there is no cause of action

6    for unjust enrichment in California.

7           One case cited is Apple v. AT&T IPad Unlimited Data

8    Plan Litigation at 802 F. Supp. 2d 1070 at 1077 from the

9    Northern District of California (2011) which says, Courts have

10   repeatedly held that there is no cause of action in California

11   for unjust enrichment.

12          "Moreover, Plaintiffs cannot assert unjust

13   enrichment claims that are merely duplicative of statutory or

14   tort claims."

15          And again, of course, there are statutory claims

16   that are made in this case under California law which are

17   duplicative of an unjust enrichment claim.

18          So no unjust enrichment claim survives in this case.

19   The Court will grant the motion to dismiss as to Count 11,

20   unjust enrichment.

21          Now let me turn to the next block of cases that we

22   have talked about and there I know -- there are limitation

23   arguments I guess that are made with regard to some of those

24   claims as well.  The Court does not really need to get into

25   it.  Apparently, the Defendant's position is that limitations

1    also have expired with regard to it at least Count -- well, it

2    was Counts 10 and 11.  Am I correct, Mr. Steese?

3               MR. STEESE:  On Count 10 there is no statute of

4    limitations arguments.

5               THE COURT:  Okay.  On Count 11 though there would

6    be?

7               MR. STEESE:  On Count 11 there is.

8               THE COURT:  There was.  And then the Court does, as

9    a secondary theory then, as to Count 11, accept the three year

10   limitations was dismissed.  And, again, the limitations in

11   this case, so they would have a base date, Jackson purchased

12   her claim from Defendant on February 1st, 2014 and she filed

13   suit on June 27, 2017 which was well beyond that period of

14   time.

15              In any event, we come to the issue in that case

16   about whether Akinmeji, who is in Maryland, has any standing

17   to bring suit under California law.  That is an issue that

18   cuts across a lot of it.  It seems to the Court that he does

19   not in the Court's view.

20              All states would accept this *lex loci delicti*

21   wherein the harm is inflicted, if you will, that one suffers a

22   tortious injury and that is Maryland law which is the law or

23   the forum that determines that and there is no injury to

24   Akinmeji in California.

25              At most it would be injury to Akinmeji here so

1   insofar as there were claims to his asserting under California

2   law, he cannot do so.

3          Let me move to block 3 of the claims which involve

4   Counts 6, 7, 8 and 9 and those are essentially limitations

5   arguments.

6          The arguments as to each of those claims, again, we

7   have limitations expiring on each of those claims insofar as

8   the Plaintiff Jackson is concerned on February 1, 2017 and she

9   did not file until June 27, 2017.

10         But it is the Plaintiffs' position that some of that

11  time was tolled, t-o-l-l-e-d, by reason of litigation, class

12  action litigation against the Defendant in California of which

13  he was not a part.  And that that litigation took place

14  between 2014 and was dismissed I think in October of 2016.

15         And she is claiming that because she was potentially

16  a Plaintiff in that case, that anytime for her to have filed

17  her cause of action would be tolled and, therefore, if that is

18  true, it was some two and a half years that extended her time

19  to file whereas she was only about five months late in filing

20  in this court.

21         The main argument that the Defendant makes in this

22  case is based on a recent decision in the U.S. Supreme Court,

23  China Agritech, Inc. v. Resh, et al.  I only have the slip

24  opinion cite because it was just decided last month.

25         But the Defendant argues essentially that there is

1    no benefit to a subsequent purported class Plaintiff to toll

2    the statute because of the pending California litigation and

3    we have a cite, a specific quote that was given from the --

4         In that case the Defendant invites the Court's

5    attention to language that appears at page 2 of the opinion.

6    "The question presented in the case now before us upon denial

7    of class certification may a putative class member in lieu of

8    promptly joining an existing suit or promptly filing an

9    individual action commence a class action anew beyond the time

10   allowed by the applicable statute of limitations?  Our answer

11   is no.

12        American Pipe tolls the statute of limitations

13   during the pendency of the putative class action allowing

14   unnamed class members to join the action individually or file

15   individual claims if the class fails.  But American Pipe does

16   not permit the maintenance and the problem on class action as

17   to the expiration of the statute of limitations.

18        Well, --- agrees that this does not affect Jackson's

19   suit.  She does not get the benefit of tolling.  I suppose

20   individually she could have gone out to California and filed

21   the claim if she so desired individually.

22        But in this case what happened in California is the

23   suit was apparently withdrawn as of approximately October 2016

24   and the Plaintiffs in this case argue that the withdrawal is

25   different from the denial of certification.  The Court does

1    not read the case that way because the same issue about

2    perpetual class action limitations problems would exist

3    whether the case is withdrawn or whether the case results in a

4    denial of certification.

5          You have got a situation where any number of cases

6    could be filed and on end and withdrawn and each time the

7    argument would be the statute of limitations has been tolled

8    for as many times as a putative class Plaintiff or class

9    Plaintiffs would want to continue the cases.  It could go on

10   *ad infinitum* but cannot be consistent with the rationale of

11   China Agritech.

12         And so on that basis the Court concludes that there

13   was no tolling as far as Plaintiff Jackson is concerned and

14   she is stuck with the fact that she filed some four months I

15   guess -- it is from February, March, April, May, June, five

16   months beyond limitations.  And so that really is a

17   dispositive answer to Counts 6, 7 and 8.

18         With regard to any further arguments, there is a

19   further argument that the California case, among other things,

20   that the --- causes of action or several of the causes of

21   action were not pled.  Is that right?  Which are the causes of

22   action that were not pled there?

23         MR. STEESE:  That is correct, Your Honor.  It is

24   Counts 7 through 11.

25         THE COURT:  Well, let's just start with 6, 7 and 8

1  at this point.

2          MR. STEESE:  Six was pled, 7 and 8 were not pled.

3          THE COURT:  Okay.  Six was pled or 7 and 8 are out

4  in part because you cannot, in any event, have any tolling for

5  causes of action that were not filed and then with regard to

6  6 -- well, 9 was common law fraud.  The argument there is

7  essentially as well that there was no tolling as to the common

8  law fraud claim either.

9          But with regard to 6, this is where I need to sort

10  of take a pause in my own recitation, Mr. Steese, and ask you,

11  again, what was the secondary reason as to Count 6 which was

12  the Consumer Legal Remedies Act.

13          MR. STEESE:  There is no cross jurisdictional

14  tolling applicable.

15          THE COURT:  Right.  No tolling of any sort.

16          MR. STEESE:  No tolling when you move from one

17  jurisdiction to another.

18          THE COURT:  All right.  Well, that would be -- and

19  Maryland law has rather clearly I think made that a point that

20  Maryland does not recognize cross jurisdiction tolling so

21  that, again, the three year statute of limitations does not

22  apply, not before, so on that basis, the Court will, as well,

23  find that with regard to Counts 6, 7, 8 and I guess I am going

24  to add 9 here that limitations were three years and the filing

25  came late in this case.  Is that a fair statement, Mr. Steese?

1            MR. STEESE:  Yes, Your Honor.

2            THE COURT:  All right.  Now, that is block 3 and

3    that takes us to block 4 which is kind of the remainder of the

4    cases.  And here this is a more difficult argument and this is

5    a somewhat more nuanced argument as the Court sees it.

6            But the essential claim here, and these are claims

7    and let me recite for the record, Count 3 is for violation of

8    the Unfair Competition Law of California at the Business and

9    Professional Code, Section 17200, et seq.  In fact all three

10   of those counts that I am going to recite pertain to that law.

11           One argues that the actions were unfair, the other

12   that they were fraudulent, the third that they were unlawful.

13   Several prongs of the same statute.  And there are limitations

14   arguably could extend the four years under California law

15   which is the contention of the Plaintiffs in this case.

16           Defendant's contention is that, indeed, in these

17   cases Maryland would, given the nature of the claim, if it is

18   procedural, Maryland would say that three years applies as we

19   are the forum state and that three years, again, would have

20   been surpassed by some five months by Plaintiffs filing in

21   this case.

22           Whereas the Plaintiffs argue that it is the four

23   year statute that applies because this is essentially a

24   substantive statute that does more than simply incorporate a

25   common law.  In fact it makes the limitations an integral part

1   of the claim that is sought here.

2          There is an argument to be made both ways.  There

3   are some cases that the Defendant has cited suggesting that at

4   least in part the California laws were derived from the common

5   law and, therefore, it was not a statute that created a new

6   cause of action that would import under Maryland law adoption

7   of the four year limitations period.

8          The Court is going to reserve on those counts.  I am

9   not prepared at this point to make a decision so I will write

10  an opinion with regard to Counts 3, 4 and 5 to see the extent

11  to which limitations is either for four years under Maryland

12  law because it is a substantive right newly created or three

13  years because it is viewed as a procedural law under Maryland

14  law.

15         And as I said, this is a little more complex, this

16  issue, and I do not want to try and dispose of it.  I do not

17  think it goes out as easily as some of the others.

18         That said, I come back to a question that I asked

19  you, Mr. Steese, which was simply while you are awaiting the

20  opinion, is there some way in which the Court could see as

21  well what, assuming you do not prevail on this, give me some

22  idea of where we would go in the case if you do not prevail.

23         In other words, if the Court does decide that four

24  years are the appropriate limitation, period, is there

25  something that will be filed in the interim or, again, are you

1    prepared to wait?  And can you give me the same kind of

2    argument that I already embraced in connection with some of

3    the Maryland causes of action?

4            MR. STEESE:  Your Honor, the California law does

5    require -- I will back up.

6            THE COURT:  You have said some of this but repeat

7    for me.

8            MR. STEESE:  Sure.  When you look at a case like

9    this where in this case the way I am interpreting this is the

10   only theoretical portion that is left is a California cause of

11   action under the UCL, so there is no nationwide class because

12   this is California specific.

13           THE COURT:  Right.

14           MR. STEESE:  So in that regard --

15           THE COURT:  And it is the one where this particular

16   Plaintiff would get through the gate, so to speak, because she

17   would be timely filed.

18           MR. STEESE:  Right.

19           THE COURT:  If four years apply.

20           MR. STEESE:  If that is the case, Your Honor, there

21   is still this question -- I am a firm believer, as it sounds

22   like you are, in seeing if there is a way that we can get some

23   facts to the table very quickly that will allow us to evaluate

24   whether there is some basis to move forward through very

25   expensive and timely discovery?

1              And Your Honor has asked numerous questions about

2      whether or not there is some real basis for the Plaintiff to

3      actually claim damages and, if so, what the basis of that is.

4      And my request would be if you look at 26(a)(1), I think it is

5      subpart (3), the Plaintiffs in their initial disclosures are

6      required to articulate the basis of their damages.

7              Instead of going through witnesses and categories of

8      documents or anything of that kind, if the Court could simply

9      require Plaintiffs to define what the basis of their

10     theoretical damages are, how they would calculate them, so

11     that way we could discern whether or not there is some

12     additional --

13             THE COURT:  Which?  Are we talking about a Federal

14     rule?

15             MR. STEESE:  Rule 26(a)(1).

16             THE COURT:  All right.

17             MR. STEESE:  (a)(1) and prong 1 is witnesses, prong

18     2 is documents, prong 3 is categorization of damages and prong

19     4 is whether insurance applies.  I am looking at prong 3.  To

20     require them to articulate with some specificity the basis of

21     what their damages are.  That should be relatively focused and

22     easy.

23             THE COURT:  Let me see where we are now.

24             MR. STEESE:  Sorry, Judge, I do not have my rule

25     book with me.

1              THE COURT:  I got Rule 26(a).

2              MR. STEESE:  (a)(1).

3              THE COURT:  Right, (a)(1) and then prong 3 is it?

4              MR. STEESE:  Prong 3 is simply their damages

5    calculations.

6              THE COURT:  All right.

7              MR. STEESE:  Require them to -- I mean this should

8    truly be something they have thought about.  How would they

9    calculate their damages?  Just the methodology so that way we

10   could look to see if their -- if the Court does disagree with

11   us and say that this is timely filed, then we can look quickly

12   to see if there is some basis to come forward on a Rule 56

13   motion without going into full blown discovery.

14             THE COURT:  All right.  Fair enough.  Do you want to

15   respond to that, Ms. Yakubu?  Do you understand his proposal

16   about you being required under the disclosure rules to set

17   forth very specifically what your damages are, how you compute

18   and so on?

19             MS. YAKUBU:  Yes, Your Honor, I do understand.

20             THE COURT:  All right.  I am going to order that.  I

21   think that is the way to do it.  Obviously, you have seen my

22   drift on some of these other issues.  I have some concerns

23   candidly because I have already held once under Maryland law

24   that I do not see what your damages are, quite candidly.

25             And I do not know how you do it but even limited to

1    the California Unfair Competition law, and you have got to

2    come up with something.  I made my finding insofar as I read

3    the Maryland Consumer Law that you have not shown damages.

4          Maybe there is something under California law that

5    says otherwise and I think that is the way you have got to

6    compute damages, not under Maryland but future damages

7    consistent with California law so that what you would be doing

8    in effect is -- and the --- in the beginning would be with

9    you.

10         Set forth what you think California would

11   acknowledge as viable damages and then put your numbers

12   together because I have no doubt that in the end, there has

13   got to be some sort of numbers that have to be shown here.

14   Some sort of numbers that can be worked up.

15         Incidentally, there also was a request for

16   injunctive relief.  You did not address that although I think

17   Defendant's view was that there should not be or wasn't

18   standing to file for injunctive relief.  What is your

19   position?

20         MR. STEESE:  Your Honor, all of the cases have said

21   that once the Plaintiffs are aware of this pricing

22   methodology, they can no longer be tricked so there is no need

23   for a purported injunction.  And so the cases are very uniform

24   on that point.

25         THE COURT:  I think that is right, Ms. Yakubu.  I do

1  not know whether you are insisting on pursuing your injunctive

2  relief here or not but as long as I am about it, I do not find

3  any basis to do that.

4          MS. YAKUBU:  Okay.  Well, Your Honor, there are also

5  cases that state that injunctive relief would be useless if

6  that was always the proposition that if you know about, you

7  are one person, you cannot -- and you represent the class, if

8  you are not going to be harmed by it again --

9          THE COURT:  Well, it may be moot depending on where

10  we come out on damages so let's defer on that then.

11          MS. YAKUBU:  Okay.

12          THE COURT:  We will defer on whether you are

13  entitled to injunctive relief.

14          MS. YAKUBU:  Okay.

15          THE COURT:  All right.  What I will do is enter an

16  order then today summarizing our decisions and look to you --

17  how much time do you think you need to come forth under -- let

18  me be specific, Federal Rule of Civil Procedure 26(a)(1)(iii).

19          MS. YAKUBU:  Your Honor, I have a question.  In

20  regards to the numbers, do we need like some sort of discovery

21  to get any numbers or do you just mean like a generalized

22  calculation of damages?

23          THE COURT:  Well, this says a computation of each

24  category.  These are initial disclosures under the rule so

25  they really are intended to precede discovery.  That is the

1    idea.

2            MS. YAKUBU:   Okay.

3            THE COURT:   When you file a suit, you are supposed

4    to indicate what -- let's read it.  The computation of each

5    category of damages claimed by the disclosing party.  You must

6    make available for inspection a copy of documents and other

7    evidentiary material unless privileged on which each

8    competition is based including materials bearing on the nature

9    and extent of injuries suffered.

10           I am not sure what more you would want from the

11   Defendants regarding their pricing.  You want to respond to

12   that?  It does indicate in the rule, Mr. Steese, that the

13   party must make available for inspection documents at copying.

14   Oh, on which each competition is based.

15           Well, I guess that refers to you at this stage.  You

16   have to show where you are getting your numbers from.  These

17   are claims.  It does not bind you necessarily to proof of

18   damages at the trial but you do need to give an indication to

19   a Defendant being sued as to where your numbers are coming

20   from.

21           That is the purpose of the pretrial disclosure.  And

22   I am not sure whether you are really doing anything more

23   than -- you will be doing anything more than articulating the

24   simple mathematics that you have said already.  That maybe

25   where you come out.

1          In which case then I think they ought to be able to

2     say it still does not make a case for damages.  Unless you

3     have got a California law that says something different, then

4     I might be able to make my finding based on your -- his motion

5     subsequent to your disclosure.

6          I think that is all I am trying to do.  I mean when

7     you talk about going all the way to full discovery on this, I

8     am not even sure how much more you propose to discover in this

9     case based on other than what you have said.

10         So, let me give you let's say 45 days to make that

11    disclosure.  I will give you a lengthy period to think through

12    how you want to do this.

13         And then from that, Mr. Steese, you should advise

14    the Court right away whether you are prepared to file a --

15    well, I think you should file a responsive pleading because

16    otherwise we do not have a scheduling order in effect here.

17         And ordinarily we enter a scheduling order after

18    ruling on a motion to dismiss where we set everything out but

19    we are still having a motion to dismiss pending as to those

20    three counts.

21         So I would suggest that you -- I cannot tell you

22    exactly what form the motion should take, whether it is a

23    supplemental motion to dismiss or whether it is a summary

24    judgment filed then and there.  You have to decide how you

25    come at it.

dmh                                                                                         103

1                    MR. STEESE:  One question, Your Honor.  And I

2      apologize I do not recall off the top of my head.  Some courts

3      have a limitation on --- motion for summary judgment during

4      the pendency of the case.  In this unique circumstance, I

5      would assume that --

6                    THE COURT:  Yes, I would permit a subsequent motion

7      for summary judgment.

8                    MR. STEESE:  Then we are fine.  I understand.

9                    THE COURT:  I am trying to get this particular issue

10     in sharp focus early rather than to spin it out over a lot of

11     discovery that may not be needed here.

12                   So I would think that -- and you can decide the

13     nature of the pleading that you want to file, whether you want

14     to file a supplemental motion to dismiss which I will give you

15     say 30 days from the 45 days to file the motion to dismiss or

16     however you want to do it.  A motion for summary judgment as

17     well with the understanding that you could file a subsequent

18     motion for summary judgment if, as and when.

19                   MR. STEESE:  If necessary.

20                   THE COURT:  If necessary.

21                   MR. STEESE:  Understand, Your Honor.  Thank you.

22                   THE COURT:  All right.  So I will give you 30 days

23     from her 45 days, 45 days or sooner and then 30 days

24     thereafter.  All right, counsel, is there anything else?

25                   MS. YAKUBU:  No, thank you.

dmh                                                                                      104

1                     THE COURT:  All right.  Thank you, counsel.

2                     THE CLERK:  All rise.

3                     MR. STEESE:  Thank you, Your Honor.

4                     THE CLERK:  This Honorable Court now stands in

5       recess.

6            (Whereupon, at 1:13 p.m., the proceeding concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

I certify that the foregoing is a correct transcript from the
duplicated electronic sound recording of the proceedings in
the above-entitled matter.


*Doreen Hodder*    08-16-18
_____
Doreen M. Hodder         Date
Transcriber