# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **OLUSOLA AKINMEJI**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. **PJM 17-1349** |
| **JOS A. BANK CLOTHIERS, INC.**, | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

This is one more lawsuit against Jos. A. Bank Clothiers, Inc. ("JAB") for allegedly deceptive promotional practices. To date, none of the preceding lawsuits has been successful.[1]

In the present case, Plaintiffs Olusola Akinmeji and Raychel Jackson, on behalf of themselves and a putative nationwide class and sub-classes, allege that JAB has violated several Maryland and California unfair competition and consumer protection statutes. Amended Complaint ("AC"), ECF No. 45. Plaintiffs also assert a number of common law torts. *Id.* The Court previously dismissed all of Plaintiffs' claims, except the alleged violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* JAB now moves for summary judgment as to Plaintiffs' California Unfair Competition Law claims. ECF No. 99. For the reasons that follow, the Court **GRANTS** JAB's Motion.

---

[1] *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) (affirming district court dismissal of plaintiffs' claims against JAB); *Lucas v. Jos. A. Bank Clothiers, Inc.*, 217 F. Supp. 3d 1200 (S.D. Cal. 2016) (imposing sanctions on plaintiff after his counsel voluntarily dismissed their claims with prejudice and withdrew from case after it emerged that plaintiff had lied about purchasing suits from JAB); *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014) (dismissing plaintiffs' class allegations, breach of contract claims, and claims for statutory injunctive relief under Ohio state consumer protection law, but allowing plaintiffs' claims for individual damages to stand; plaintiffs eventually dismissed their action without prejudice); *Waldron v. Jos. A. Bank Clothiers, Inc.*, No. 12-cv-2060, 2013 WL 12131719 (D.N.J. Jan. 28, 2013) (dismissing all of plaintiffs' claims without prejudice).

## I. Factual and Procedural Background

JAB is a clothing retailer chain that has made sales pitches to consumers to the effect that, if they purchase one item—such as a suit, sport coat, or dress shirt—at a "regular" price, they will also receive one or more additional items for "free." Plaintiffs allege that JAB has misrepresented and continues to misrepresent the nature and amount of its price discounts by offering misleading dollar and percentage discounts off its "regular" prices. AC at ¶ 3. These "free" apparel promotions and discount offers are said to be false because the so-called "regular" price is actually fabricated and inflated; consequently, at best only a minimal percentage of consumers pay JAB's "regular" prices for its apparel. *Id.* Essentially, Plaintiffs contend that JAB is advertising normal retail prices as temporary price reductions, which gives consumers a false impression as to the value of JAB's products and the bargains they believe they will receive if they purchase the products. *Id.* at ¶ 7. Plaintiffs allege they have suffered damages measured by the difference between the temporary price reduction they paid (which they believed was the normal retail price) and the value of the suits actually received. They are now, however, at the point where they must plead <u>cognizable</u> damages as a result of JAB's purported false misrepresentations.

Olusola Akinmeji is currently a resident of Evanston, Illinois. *Id.* at ¶ 19. He alleges that on or around June 22, 2015, when he was a resident of Greenbelt, Maryland, he viewed a JAB pop-up ad online that advertised a "buy one suit at 'regular' price get 3 suits free" promotion. *Id.* On June 29, 2015, Akinmeji purchased four suits from JAB's online store. *Id.* He paid a total of $969.00 to JAB, $875.00 of which was for merchandise, $54.90 in sales tax, and $40.00 in shipping costs. Akinmeji Purchase Receipt, ECF No. 45-1. The receipt from Akinmeji's purchase states that he paid $875.00 for his first suit and $0.00 for his second, third, and fourth suits. *Id.*

Raychel Jackson is a resident of Galt, California. AC at ¶ 20. In or around January 2014, she alleges she viewed a JAB television commercial that advertised a "buy one suit at 'regular'

and price get 3 suits free" promotion. *Id.* On February 1, 2014, Jackson purchased four suits from JAB's store in Stockton, California. *Id.* JAB charged Jackson $995.00 for her first suit and $0.00 for her second, third, and fourth suits. Jackson Purchase Receipt, ECF No. 45-2. Both Akinmeji and Jackson say they would not have purchased their suits from JAB but for the "buy one, get three free" promotion. AC at ¶¶ 19–20.

Akinmeji sued JAB on behalf of himself and a putative class of Maryland residents who purchased apparel from JAB pursuant to its advertising. Suit was originally filed in the Circuit Court for Prince George's County, Maryland on January 25, 2017. ECF No. 2. After its registered agent received a copy of the Complaint, on May 16, 2017, JAB timely removed the case to this Court on the basis of diversity of citizenship and the Class Action Fairness Act of 2005 ("CAFA"). ECF No. 1. On June 27, 2017, Akinmeji amended his Complaint to add (a) Jackson as a co-Plaintiff, (b) California statutory claims, (c) a putative nationwide class of JAB consumers, and (d) a putative sub-class of California residents who were JAB consumers. ECF No. 45.

After initially challenging, then conceding, that this Court could exercise personal jurisdiction over it, JAB moved to dismiss Plaintiffs' Amended Complaint for failure to state a claim. ECF Nos. 49, 76. At the end of a hearing on JAB's Motion on July 17, 2018, the Court orally dismissed all the Counts in Plaintiffs' Amended Complaint,[2] except for three Counts

---

[2] The Court dismissed the various Counts in Plaintiffs' Amended Complaint, pertaining to both Akinmeji and Jackson, on several grounds:

Counts I and II, alleging violations of the Maryland Consumer Protection Act and common law fraud and fraud by omission, were dismissed because Plaintiffs failed to show that they had suffered actual damages as a result of JAB's conduct. ECF No. 96 (July 17, 2018 Motion Hearing Transcript) at 82–84.

Count X, alleging breach of express warranty, was dismissed on the grounds that a mere affirmation of the value of goods does not create a warranty. *Id.* at 84–86.

Count XI, alleging unjust enrichment, was dismissed on the grounds that (1) quasi-contractual remedies are unavailable where a contract for the sale of goods has been formed and (2) Plaintiffs' claim was barred by the statute of limitations. *Id.* at 86–89.

3

alleging that JAB violated California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200, *et seq.* ECF No. 94. In short, Akinmeji was dismissed from the case entirely and only Jackson, the California resident, remained as Plaintiff. The Court then ordered Jackson to submit preliminary damages calculations on behalf of herself and the putative California sub-class. *Id.* After Jackson outlined her preliminary damages calculations by way of Initial Disclosures, JAB moved for summary judgment on the remaining California statutory claims. ECF No. 99. Jackson filed an Opposition, ECF No. 104, and JAB filed its Reply. ECF No. 105. The Court then heard further oral argument on JAB's Motion. ECF No. 108.

## II. Legal Standard

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "some alleged factual dispute between the parties" necessarily defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no genuine issue of material fact." Id. (emphasis in original).

In reviewing a motion for summary judgment, the court views the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The court must also "refrain from 'weigh[ing] the evidence or mak[ing] credibility determinations'" when evaluating motions for summary judgment. *Lee*, 863 F.3d at 327 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)).

---

Counts VI–IX, alleging various California statutory and common law claims, were dismissed because they were barred by the statute of limitations, and equitable tolling was held not to apply. *Id.* at 90–92.

### III. Analysis

#### A. Applicable Interpretation of the UCL

The only remaining Plaintiff, Jackson, is a citizen of California, who alleges violations of California law against a Defendant incorporated in Delaware with its principal place of business in California. The case is in federal court on the basis of the diversity of citizenship of the parties. As such, the Court applies the relevant substantive state law to reach its decision. *See Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d 757, 761 (D. Md. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)).

Courts in this district have directly applied California courts' interpretations of the UCL when adjudicating alleged California UCL violations on behalf of a purported class. *See, e.g.*, *Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457, 464 (D. Md. 2015); *Beyond Sys. Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748, 768–69 (D. Md. 2013). This Court will do the same.

#### B. Statute of Limitations

Maryland's general statute of limitations for civil claims is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. The UCL has a four-year limitations period. *See* Cal. Bus. & Prof. Code § 17208. If a federal district court sitting in a diversity case is dealing with a question of law that is procedural in nature, the forum state's law applies, but if the question of law is substantive, the law of the state where the wrong occurred applies. *Sokolowski v. Flanzer*, 769 F.2d 975, 978 (4th Cir. 1985) (applying Maryland law).

In this choice of law context, Maryland courts almost universally view issues pertaining to the statute of limitations as procedural, not substantive. *Turner v. Yamaha Motor Corp., U.S.A.*, 591 A.2d 886, 887 (Md. Ct. Spec. App. 1991); *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959). The only exception to this rule under Maryland law is when the expiration of the statute of

limitations period contained in the law of a forum state would terminate a plaintiff's right to maintain an action initiated pursuant to a foreign statute. *Turner*, 591 A.2d at 888. In such cases, Maryland courts apply the statute of limitations period of the foreign state's law. *See id.* In that case, the statute of limitations is deemed to be substantive. In order for the statute of limitations for a law to be considered "substantive," the law must (a) contain a specific statute of limitations; and (b) create a new liability that does not exist at common law. See *Slate v. Zitomer*, 275 Md. 534, 542 (1975).

It appears that the UCL created new liabilities that did not exist at common law. Generally, liabilities regarding unfair competition and misleading business practice arose to protect competitors, not consumers. *See* § 5:9. Common law false advertising, 2 Callmann on Unfair Comp., Tr. & Mono. § 5:9 (4th Ed.) ("The common law never developed a robust false advertising tort,"); *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 883 (Cal. 2011) (stating that the purpose of the UCL is to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services") (internal citations and quotation marks omitted); *Barquis v. Merchants Collection Assn.,* 7 Cal. 3d 94, 109 (Cal. 1972) ("[T]he Legislature, by adopting [the precursor to the UCL], broadened the scope of legal protection against wrongful business practices generally, and in so doing extended to the entire consuming public the protection once afforded only to business competitors."). Although JAB correctly states that the UCL codified some aspects of common law, the statute also unquestionably added new liabilities that did not exist at common law.

Because the California UCL created a substantive right for consumers to seek redress from the courts for unfair competitive practices, the Court will apply the UCL's statute of limitations, not Maryland's general statute of limitations. Since Jackson allegedly bought her suits from JAB

on February 1, 2014 and joined the case as a Plaintiff in the Amended Complaint filed on June 27, 2017, well within the four-year statute of limitations period of the UCL, her UCL claims are timely.

C. *Appropriate Measure of Restitution*

JAB next argues that Jackson has failed to put forth an appropriate measure for calculating restitution, nor indeed, it says, has she proffered any evidence to support her claim to restitution under the UCL. ECF No. 99-1 at 7–8. Jackson counters that her proposed measure of restitution has been accepted in other cases and that it creates a genuine dispute of material fact, when set against JAB's proposed measure. ECF No. 104 at 18–26. The Court agrees with JAB.

1. Calculation of Restitution for UCL Claims under California Law

California's Unfair Competition Law ("UCL"), Bus. & Prof. Code, § 17200, *et seq*, "is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29, 63 P.3d 937, 943 (Cal. 2003). Remedies are "generally limited to injunctive relief and restitution." *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 539 (Cal. 1999)).

First, as to restitution:

The prevailing calculation of restitution in UCL claims is the difference between the price a plaintiff paid for a good or service and the value plaintiff actually received. *See Chowning v. Kohl's Dep't Stores, Inc.*, 733 Fed. App'x 404, 405 (9th Cir. 2018) (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009)). While the difference between price paid and value received is not the only potential measure of restitution, a plaintiff bears the burden of proving entitlement to an alternative measure. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 192 Cal. Rptr. 3d 881, 893 (Cal. Ct. App. 2015).

7

For example, a UCL claimant may seek rescission of the underlying transaction and a full refund of the purchase price in restitution where the claimant can show that she received no value at all from the good or service. *See id.* at 192 Cal. Rptr. 3d at 894 ("A full refund *may* be available in a UCL case when the plaintiffs prove the product had *no* value to them."). Conversely, some courts have held that a full refund is unavailable to UCL claimants seeking restitution after being deceived by misleading marketing practices, if the purchased product had at least some value to consumers, notwithstanding the deceptive advertising scheme that induced claimants to purchase it. *See, e.g.*, *In re POM Wonderful LLC*, No. ML 10–02199 DDP (RZx), 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (holding that "[t]he Full Refund model [of restitution] depends upon the assumption that not a single consumer received a single benefit" from the defendant's product); *see also Brazil v. Dole Packaged Foods, LLC*, 660 Fed App'x 531, 534 (9th Cir. 2016) (stating that "a plaintiff cannot be awarded a full refund unless the product she purchased was worthless").

In her Initial Disclosures, ECF No. 99-6 at 4–5, Jackson argues that the proper measure for calculating restitution under the UCL is "the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (citing *Kwikset*, 246 P.3d at 889–90). This is not quite what *Pulaski* says, however, which defined "restitution" as "'the return of the excess of what the plaintiff gave the defendant over the *value* of what the plaintiff received.'" *Pulaski*, 802 F.3d at 988 (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 713 (Cal. 2000)) (emphasis added).

Ultimately, then, in the present case the proper measure of restitution is the difference between the total price paid and the value of goods received. ECF No. 99-1 at 12; ECF No. 99-6 at 5. The parties agree that Jackson visited JAB's store in Stockton, California, paid $995.00, and

8

received four suits in exchange. *See* ECF No. 99-1 at 3, ¶3. Thus, the primary dispute regarding restitution is how to determine the total value of the four suits she received from JAB.

        2. <u>Determining the Value of the Suits Jackson Received</u>

The key areas of dispute between the parties regarding the value of the suits Jackson received are (1) whether to calculate the value of the four suits Jackson received individually or in the aggregate, and (2) whether Jackson derived any value from the three "free" suits she received.

        *a. Value Individually or in the Aggregate*

Jackson argues that the value of each suit she received should be evaluated individually, depending on whether it was the one suit for which she paid or the three suits she received for "free" as part of JAB's promotion. She claims that other courts interpreting UCL claims pertaining to purportedly false discounting have evaluated the discounts applied to each individual item purchased by a plaintiff. *See Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *10 (C.D. Cal. Mar. 15, 2016), *aff'd*, 733 Fed App'x 404 (9th Cir. 2018). However, while the court in *Chowning* did evaluate the advertised discounts for each individual item the plaintiff purchased, the plaintiff there had obtained those items in three separate transactions and did not receive any of those items purportedly for "free" as a complement to paying for a separate item. *See id.* at *1.

Similar cases in federal court challenging JAB's sales promotion of giving customers multiple "free" items with the purchase of a full-price item have held that the "value" of all items received must be accounted for in calculations of restitution, suggesting that even items for which a customer pays no price contain some inherent value. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739–40 (7th Cir. 2014); *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014). As have other courts that have evaluated

claims that JAB's sales promotions violate state consumer protection laws, for the purpose of calculating restitution the Court will consider the value of all items the plaintiff received in the aggregate.

### b. *Specific Value of JAB Suits Received by Jackson*

Jackson asserts that the value of the one suit for which she paid is the "regular price" of the suit, based on the lowest price at which any substantial sales of the item were made by JAB in the thirty days preceding Jackson's purchase. *See* 16 C.F.R. §§ 251.1(b)(1)-(2). Further, she argues she derived *no* value from the three suits she received for "free" and is entitled to a full refund on them because she understood she was paying nothing for the three suits at the time of purchase. *See* 16 C.F.R. § 251.1(b)(1) ("[W]hen the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other"). Jackson relies on the same authority for both of her definitions of "value," which is to say, non-binding FTC guidance on the meaning of the word "free" as a promotional device. 16 C.F.R. § 251.1.

When determining value for the purposes of calculating restitution in a UCL claim, courts look to "what Plaintiff *actually received* given the price she paid, not . . . the bargain Plaintiff *thought she was receiving*." *Chowning*, 2016 WL 1072129, at *10 (emphasis in original). "Restitutive recovery requires evidence of the actual value of what the plaintiff received." *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (citing *In re Vioxx*, 103 Cal. Rptr. 3d at 96). Evidence that California courts have accepted to show actual value in UCL claims for restitution include prices charged by a defendant's competitors for comparable products, *see, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2,

2014), and expert witness testimony. *See, e.g.*, *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014).

Jackson nevertheless argues that the Court should look to 16 C.F.R. § 251.1 to determine the value of the suits she received, citing recent case law. *See, e.g.*, *Rubenstein v. Neiman Marcus Group, LLC*, 687 Fed. App'x 564, 567 (9th Cir. 2017); *People v. Overstock.com, Inc.*, 219 Cal. Rptr. 3d 65, 80–84 (Cal. Ct. App. 2017). Those cases, however, can be distinguished on two grounds. First, they concerned a different FTC Guide: 16 C.F.R. §§ 233.1, 233.2(c).[3] *See Rubenstein*, 687 Fed. App'x at 566; *Overstock.com*, 219 Cal. Rptr. 3d at 80. Second, the cases considering that FTC Guide did so for the purpose of determining if defendant had deceptively discounted the prices of its goods relative to prices offered by defendant's competitors—not to determine the value of some goods as "free" when separate goods were acquired simultaneously. *See Rubenstein*, 687 Fed. App'x at 566–67; *Overstock.com*, 219 Cal. Rptr. 3d at 80–81. In other words, the case law cited by Jackson examined a nonbinding FTC Guide to determine whether defendants had violated the UCL in the first place, not to determine the measure of loss that plaintiffs had suffered for purposes of restitution.[4]

Moreover, while California courts have looked to the FTC for clarification "for determining what is unfair under the unfair competition law," they have typically looked to FTC actions that have the binding force of law, not to advisory guidelines. *See, e.g.*, *Cel-Tech*, 973 P.2d at 543 (relying on Section 5 of the FTC Act, which authorizes the agency to commence

---

[3] For example, 16 C.F.R. § 233.2(c) addresses "comparable value comparison," a bargain promotional strategy entailing "a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality—in other words, comparable or competing merchandise—to that being advertised."

[4] Jackson cites no case law to support her claim that the Court should look to 16 C.F.R. § 251.1 to determine the value of the suits she received from JAB, asking the Court instead to adopt a "novel legal theory." ECF No. 104 at 23 (citing *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)). That Jackson asks the Court to accept a "novel legal theory" obviously underscores the lack of precedential support for her method of valuation.

enforcement actions against entities that have committed unfair practices). FTC Guides, such as the one Jackson cites for her definitions of "value," are advisory in nature, not binding. *See* 16 C.F.R. § 240.1 ("The Guides are what their name implies—guidelines for compliance with the law. They do not have the force of law. They do not confer any rights on any person and do not operate to bind the FTC or the public.").

Further, even if the FTC Guide cited by Jackson were deemed binding on the Court, it appears to concern the *cost* that consumers might expect to incur for "free" items, not the *value* they might expect to receive from them. Jackson cites the Guide to the effect that "when the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that *he is paying nothing for that article* and no more than the regular price for the other." 16 C.F.R. § 251.1(b)(1) (emphasis added). Jackson appears to be arguing that she could only derive value from items for which she paid, contending that "the moment the Court includes the value of any one of the 'Free' items" in its calculation of value, "it indicates [she] paid something for those suits," which she says she did not do. ECF No. 104 at 31. The Court believes this argument conflates the concepts of cost and value, ignoring the possibility that goods received at allegedly no cost could still contain some inherent value to the consumer.

Nor can Jackson rely on the non-binding FTC Guide, 16 C.F.R. § 251.1, to establish "value" based on the "regular price" at which JAB sold the suits she obtained during the thirty-day period prior to her purchase. The only evidence she has provided with her Initial Disclosures for the purpose of establishing suit value consists of more than one hundred pages of public JAB advertisements of the price of those suits during the thirty days prior to Jackson's purchase. *See* ECF No. 99-3. But this evidence seeks to demonstrate the value of the suits she obtained by comparing it to JAB's own prior sales prices as suggested by 16 C.F.R. § 251.1, a measure, as

indicated, that courts interpreting proper methods of calculating restitution for UCL claims have not recognized. The Court declines to use this method to calculate the value of Jackson's suits.

        3. <u>Proposed Alternative Measures of Restitution</u>

Jackson proposes three alternative methods of calculating restitution relative to the price-value differential: (1) rescission of the purchase price and complete restitution, (2) restitution based on "the false transaction value promised by the defendant, i.e., a refund of the excess amount that plaintiff paid as a result of the defendant's deceptive practice," and (3) restitution based on defendant's net profits as a result of the allegedly deceptive advertisements. ECF No. 99-6 at 6. The Court finds none of these proposed alternative measures to be appropriate for the purposes of calculating restitution in the present case.

Jackson cannot argue for full restitution because the inescapable fact is she has failed to provide sufficient evidence that she received *no value* from the "free" suits she obtained—a necessary condition to receiving full restitution in a UCL claim. *See Chowning*, 733 Fed. App'x at 406 (quoting *In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 895 ("A full refund *may* be available in a UCL case when the plaintiffs prove the product had *no* value to them.") (emphasis in original)). California courts assume that unless a UCL claimant specifically alleges that a product conferred no benefit on consumers, that the product contained at least some inherent value that would preclude the claimant from obtaining full restitution. *See, e.g.*, *In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 901 ("While a full refund may be proper when a product confers *no* benefit on consumers, such is not the scenario here . . . Indeed, it appears inherently implausible to show a class of smokers received *no* value from a particular type of cigarette.") (emphasis in original). Likewise, it seems "inherently implausible" that Jackson derived no value from the "free" suits,

13

which she initially acquired from JAB in 2014 and ostensibly used at some point before joining the present action as a plaintiff in 2017. Full restitution is unavailable to Jackson.

Nor is "false transaction value" an acceptable measure of UCL restitution. Courts have interpreted "false transaction value" as the difference between the discount the purchaser thought she was receiving and the discount the purchaser actually received. *See Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063, at *11 (N.D. Cal. May 11, 2017); *Chowning*, 2016 WL 1072129, at *9–10; *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 U.S. Dist. LEXIS 42545, at *18–22 (C.D. Cal. Mar. 23, 2015). Essentially, "false transaction value" represents the discount that a plaintiff *expected to receive* based on a defendant's allegedly deceptive marketing. However, because the purpose of UCL restitution is to restore the victim to the *status quo ante*, *see Cortez*, 999 P.2d at 715, it is the purchaser's actual loss, not the value of the benefit she expected to receive, that is the proper measure of restitution. *See Stathakos*, 2017 WL 1957063, at *11; *Chowning*, 2016 WL 1072129, at *10. Although a purchaser of goods may have an "expectation interest" in receiving the benefit of her bargain, *see Spann*, 2015 U.S. Dist. LEXIS 42545, at *19–20, a restitutionary model that does not account for the purchaser's actual loss is unacceptable.

Finally, Jackson is not entitled to disgorgement of any portion of JAB's net profits. The UCL allows plaintiffs to obtain restitutionary disgorgement, which is defined as "profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Korea Supply Co.*, 63 P.3d at 947. Put another way, restitutionary disgorgement is the amount a plaintiff actually lost to the defendant as a result of the defendant's deceptive practices. Nonrestitutionary disgorgement, which focuses on a defendant's unjust enrichment as a result of allegedly deceptive practices, is not available as a remedy in UCL

14

claims. *See In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 899 (citing *Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 225–27 (Cal. Ct. App. 2005)).

Restitution is only available to UCL claimants if they can show that they suffered a loss as a result of the allegedly deceptive advertising. *See In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 899 (citing *Meister v. Mensinger*, 178 Cal. Rptr. 3d 604, 617–18 (Cal. Ct. App. 2014)). Accordingly, if the plaintiff derived some value—any value—from a purchased product, the plaintiff has not suffered a loss sufficient to justify disgorgement of profits as restitution for the plaintiff's injury. *See In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 900 (holding that disgorgement of profits made by defendant as a result of allegedly deceptive advertising practices for cigarettes was not a proper remedy under the UCL when plaintiffs obtained some value from the cigarettes because "restitution without proof of any loss to any plaintiff cannot be characterized as *restitutionary*") (emphasis in original). Because there is at least some inherent value in all four suits that Jackson obtained from JAB, and because Jackson has not demonstrated that she suffered an actual loss, she is not entitled to any portion of JAB's profits as restitution for her UCL claims.

*D. Appropriateness of Additional Discovery*

Jackson urges that granting summary judgment at this point in the case is premature because she has not been able to conduct sufficient discovery with respect to her claims for restitution. ECF No. 104 at 3–9.

If a nonmovant demonstrates "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, a court may defer considering the motion to allow the nonmovant to gather additional evidence. Fed. R. Civ. P. 56(d). Jackson seeks additional discovery from JAB pertaining to internal sales and financial data related to JAB's "buy one, get three free" promotion, advertisements containing the

"buy one, get three free" promotion, market research on the effects of the "buy one, get three free" promotion, and internal JAB communications regarding the "buy one, get three free" promotion. ECF No. 104-2 at 3–4. Normally, a district court should decline to grant summary judgment and allow an opposing party additional time to complete discovery and properly respond to the motion. *See Sillah v. Burwell*, 244 F. Supp. 3d 499, 518 (D. Md. 2017). However, where the nonmoving party has not demonstrated that proposed additional discovery would establish a genuine dispute of material fact, the court may grant summary judgment before the close of discovery without violating Rule 56(d). *See Rogers v. Deane*, 594 Fed. App'x 768, 770 (4th Cir. 2014) (citing *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).

Jackson's proposed additional discovery topics relate to information on internal JAB sales figures, marketing strategy, and research. But any information to be gained from such discovery would at most be an attempt to determine the "value" of the suits Jackson received based on the "regular price" at which JAB at one time or another sold the same suits. Once again, this would embrace the measure established in 16 C.F.R. § 251.1, which, as the Court has held, is an unacceptable method for establishing value for the purposes of calculating restitution. In short, in the Court's view, discovery on these topics would not lead to the creation of a genuine dispute of material fact as to the value of the suits Jackson obtained from JAB. As such, granting summary judgment at this stage would be neither premature nor improper.

*E. Injunctive Relief*

As a threshold matter, Jackson may well have sufficient Article III standing to seek injunctive relief against JAB. Because she has alleged that she would like to purchase additional products from JAB in the future, her inability to rely on the validity of JAB's allegedly deceptive sales promotions may be deemed a sufficiently imminent or actual threat of harm to support

standing. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970–72 (9th Cir. 2018) (holding that plaintiff had established an imminent or actual threat of harm sufficient to support standing when she alleged that she desired to purchase defendant's products but was unable to because she could not verify the accuracy of defendant's allegedly deceptive packaging).

On the other hand, JAB has attached an affidavit to its Motion for Summary Judgment stating that it discontinued the "Buy 1 Get 3" suits sales promotion on October 25, 2015 and did not plan to reintroduce it in the future. ECF No. 99-2 at ¶¶ 5–6. Under the UCL, "[i]njunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct." *In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 901) ("[T]here must be a threat that the wrongful conduct will continue"); *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d at 96 ("Injunctive relief is not available when there is no threat that the misconduct to be enjoined is likely to be repeated in the future."); *Madrid*, 30 Cal. Rptr. 3d at 228 ("[T]he general rule is that an injunction may not issue unless the alleged misconduct is ongoing or likely to recur."). Because there is no evidence that JAB has in fact reintroduced the "Buy 1 Get 3" suits sales promotion in more than three years since the date of its discontinuance, it is only fair to conclude that the allegedly deceptive sales practice is not likely to recur. Therefore, injunctive relief is not available to Jackson at this time.

## IV.    Conclusion

Jackson has failed to propose a legally cognizable measure of restitution in support of her UCL claims. Accordingly, the Court will **GRANT** Defendant JAB's Motion for Summary Judgment.

The Clerk is directed to **CLOSE** this case.

A separate Order will **ISSUE**.

                                                                 /s/
                                             **PETER J. MESSITTE**
                                  **UNITED STATES DISTRICT JUDGE**

**July 31, 2019**